UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 18 Cr. 333 (JGK) |
| v. | : | |
| AKSHAY AIYER, | : | |
| Defendant. | : | |

-------------------------------------------------------x

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S STANDING MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF COORDINATED INTERDEALER TRADING AND COORDINATED RUBLE TRADING

WILLKIE FARR & GALLAGHER LLP
Martin Klotz
Joseph T. Baio
Jocelyn M. Sher
Samuel M. Kalar
787 Seventh Avenue
New York, New York 10019
T: (212) 728-8000

*Attorneys for Defendant Akshay Aiyer*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................3

I. At the Appropriate Time, the Court Should Exclude Under Rule 402 Evidence and Argument Regarding Coordinated Interdealer Trading and Coordinated Ruble Trading ...................................................................................................................3

    A. The Relevant Conduct Did Not Constitute Per Se Offenses ...................................3

    B. The Relevant Conduct Did Not Constitute a Means or Method for Accomplishing a Per Se Offense ...........................................................................5

II. The Court Should Also Exclude Evidence and Argument of Coordinated Interdealer Trading and Ruble Trading Under Rule 403 .......................................................6

CONCLUSION ................................................................................................................................8

# **TABLE OF AUTHORITIES**

Case                                                                                                                        Page(s)

*Apex Oil Co. v. DiMauro*,
    713 F. Supp. 587 (S.D.N.Y. 1989)..........................................................................................4

*Broadcast Music, Inc., v. Columbia Broadcasting Systems, Inc.* ("BMI")
    441 U.S. 1 (1979)..................................................................................................................4

*Granite Partners, L.P. v. Bear, Stearns & Co.*,
    58 F. Supp. 2d 228 (S.D.N.Y. 1999)......................................................................................4

*Leegin Creative Leather Prods., Inc., v. PSKS, Inc.*,
    551 U.S. 877 (2007)..............................................................................................................4

*Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*,
    875 F.2d 1369 (9th Cir. 1989) ...............................................................................................7

*United States v. Apple, Inc.*,
    791 F.3d 290 (2d Cir. 2015)..................................................................................................5


Statues, Rules and Regulations

Fed. R. Evid. 401(a)...........................................................................................................................3

Fed. R. Evid. 402 ..............................................................................................................................3

Fed. R. Evid. 403 ..............................................................................................................................6

Fed. R. Evid. 403, Advis. Comm. Notes............................................................................................7

Defendant Akshay Aiyer respectfully submits this memorandum of law in support of his standing motion *in limine* to exclude evidence of, and to prohibit argument regarding, two types of conduct that constitute neither per se illegal conduct nor means or methods by which such conduct could be carried out.  Mr. Aiyer requests the Court's permission to maintain the standing motion and asks that the Court grant the motion when its factual basis has been established at trial.

## PRELIMINARY STATEMENT

The Government's charge in this criminal antitrust proceeding consists of one count of a conspiracy, the object of which was "to suppress and eliminate competition by fixing prices of, and rigging bids and offers for, CEEMEA currencies traded in the United States and elsewhere," in violation of Section 1 of the Sherman Act.  (Indictment ¶¶ 20-21; *see also* ECF No. 76, Motion to Dismiss Hearing Tr. ("Hearing Tr."), at 30:25-31:1, dated June 3, 2019 ("the object of that conspiracy was price fixing and bid rigging") (Calle, K.))  In short, the Government has charged Mr. Aiyer with participation in an agreement to fix prices and rig bids—a single per se and criminal offense.

At the argument on Mr. Aiyer's motion to dismiss, the Government contended that all conduct at issue properly relates to a per se conspiracy, as either "direct evidence" of per se conduct or "means and methods" by which such conduct was achieved.  (Hearing Tr., at 30:11-31:6; *see also* Indictment ¶ 22 (itemizing the "Means and Methods of the Conspiracy").)  To date, the Government has declined to clarify which "means and methods" constituted price fixing and bid rigging and which were otherwise lawful means and methods by which price fixing and bid rigging were accomplished.

The Government's preliminary exhibit list discloses its intention to present evidence of at least two types of trading behaviors that lack of any connection to per se illegality and that

should be assessed only under the rule of reason (on which criminal liability cannot be based): (1) trading in the interdealer market among Mr. Aiyer and the alleged coconspirators, Jason Katz, Christopher Cummins, and Nicholas Williams (*see* Indictment ¶¶ 22(b) and (c)); and (2) trading between Mr. Aiyer and Mr. Katz concerning the ruble[1] (*see id*. ¶¶ (e) and (f)).

Mr. Aiyer submits that the evidence at trial will confirm that those two categories of conduct constituted neither a per se offense nor a means or method by which such an offense was accomplished. Coordinated trading in the interdealer market had no necessary or demonstrable impact on trading volume or customer prices and had an efficiency-enhancing purpose and effect: it promoted the exchange of information and direct trading, both of which facilitated risk management and reduced transaction costs. The ruble coordination constituted classic vertical collaboration, expanded trading volume, and did not resemble the hub-and-spoke conspiracy in *United States v. Apple*.

As such, coordinated interdealer trading and coordinated ruble trading could not constitute or facilitate a per se offense. When the Court hears sufficient evidence to determine that Mr. Aiyer's assessment of those categories of conduct is correct, Mr. Aiyer requests the Court to grant his standing motion to exclude evidence of, and argument about, such conduct under Federal Rules of Evidence 401, 402, and 403.

---

[1] All of the ruble transactions that the Government has identified as problematic involve Mr. Katz and Mr. Aiyer, except for one transaction involving Mr. Cummins and Mr. Aiyer. This single episode should be discounted because Mr. Cummins generally was not responsible for trading the ruble and the corresponding transaction does not appear in Mr. Cummins' book. *See* ECF No. 50, Memorandum of Law in Support of Defendant's Motion to Dismiss for Failure to Allege a Crime ("Antitrust Motion"), at 24, n. 5.

# ARGUMENT

**I.  At the Appropriate Time, the Court Should Exclude Under Rule 402 Evidence and Argument Regarding Coordinated Interdealer Trading and Coordinated Ruble Trading.**

Evidence is relevant only when it has "any tendency to make a fact [of consequence] more or less probable than it would be without the evidence." Fed. R. Evid. 401(a). "Irrelevant evidence is not admissible." Fed. R. Evid. 402.

The issue here is whether Mr. Aiyer participated in a conspiracy to fix prices and rig bids. Evidence of conduct that is not price fixing or bid rigging, or an instrument that effectuated price fixing or bid rigging, is irrelevant to the Government's case and should be excluded.

Mr. Aiyer described in his motions to dismiss both the legal and factual reasons that coordinated interdealer trading and coordinating ruble trading cannot constitute per se illegal conduct. The Government did not address these arguments in its response, but rested instead on the fact that the Indictment alleges that the conduct at issue is either itself per se illegal or is a means or method of carrying out an agreement that is per se illegal. Mr. Aiyer submits that the evidence at trial will support neither contention.

    A.    <u>The Relevant Conduct Did Not Constitute Per Se Offenses.</u>

The coordinated interdealer trading did not relate to any price paid by any customer and did not reduce the volume of currency trading. Indeed, the Government has not disputed this argument. (*See* ECF No. 55, Government's Omnibus Memorandum of Law in Opposition to Defendant's Motions to Dismiss the Indictment, at 12 (declining to dispute Mr. Aiyer's distinction between the alleged behaviors that are customer-facing from those that are not and arguing instead that alleging "a tendency to affect the price quoted to a customer" is not required).) The evidence will confirm that coordinated interdealer trading had no necessary or demonstrable impact on customer prices or currency trading volume (output). (*See* ECF No. 52,

Affidavit of Richard Kent Lyons ("Lyons Aff.") ¶ 37). Conduct whose effect is limited to counterparties is not price fixing or bid rigging. *See Granite Partners, L.P. v. Bear, Stearns & Co.*, 58 F. Supp. 2d 228, 246 (S.D.N.Y. 1999); *Apex Oil Co. v. DiMauro*, 713 F. Supp. 587, 595 (S.D.N.Y. 1989). Such conduct is properly subject only to the rule of reason. *Id.*

Those behaviors will also be shown to have promoted "matching off," risk management, and informational efficiencies, all of which lower customer prices and expand trading volume. The evidence will establish that the Rand Chat Room operated as a venue for the exchange of important information in an otherwise opaque market and facilitated market-makers' direct trading and risk-management, which yielded significant cost-savings for customers. (*See* Antitrust Motion at 10-11 (citing Lyons Aff. ¶¶ 22-29; Indictment ¶ 22(a)).) Such cooperation had a procompetitive purpose and likely effect and cannot be, as a matter of law, per se illegal. *Broadcast Music, Inc., v. Columbia Broadcasting Systems, Inc*. ("BMI"), 441 U.S. 1, 9 (1979).

Likewise, the ruble trading between Mr. Aiyer and Mr. Katz will be shown to have been a classic vertical arrangement. (*See* Lyons Aff. ¶¶ 38-40.) Mr. Aiyer was an upstream, risk-taking wholesaler of rubles, and Mr. Katz was a downstream distributor of rubles who did not want to assume ruble risk and had little knowledge of competitive ruble pricing. Mr. Katz had customer relationships that Mr. Aiyer wished to supply through Mr. Katz.

The coordination between Mr. Aiyer and Mr. Katz allowed Mr. Katz to serve customers with volumes of ruble trading that he otherwise could not have served and allowed Mr. Aiyer to reach customers that he otherwise could not have reached. That increased the output of both traders and benefited customers. Once the verticality of the ruble relationship is established, the law forecloses per se (and criminal) liability. *Leegin Creative Leather Prods., Inc.*, *v. PSKS, Inc.*, 551 U.S. 877, 882 (2007).

B.  **The Relevant Conduct Did Not Constitute a Means or Method for Accomplishing a Per Se Offense.**

Although the means or methods by which a conspiracy is accomplished need not themselves be illegal, the means or methods must serve a role in accomplishing the illegal object of the conspiracy.  The Court identified *United States v. Apple, Inc.,* 791 F.3d 290 (2d Cir. 2015), as a case in which the means or methods of the conspiracy, in isolation, were lawful but, in context, became instruments of per se illegality.  (*See* Hearing Tr. 43:7-10.)  In *Apple*, similarly constructed principal-agent contracts between major publishers and Apple became the spokes that were joined to form a rim (a horizontal conspiracy) and that were coordinated by Apple as the hub.  *Apple*, 791 F.3d at 325.  Individually, the vertical, principal-agent contracts would be subject to the rule of reason or even insulated from Sherman Act scrutiny.  Through the coordination of Apple and direct communications among the publishers, the contracts became the instruments by which Apple implemented the publishers' horizontal agreement.  *Id*.

Here, context demonstrates legitimacy, not illegality.  The coordinated interdealer trading occurred in the interdealer market, not the customer market, and promoted the benefits of matching off, risk management, and informational exchange, all of which lowered customer prices.  The coordinated ruble trading expanded output by allowing Mr. Katz to trade in volumes of rubles for which he was not willing to assume the risk and allowing Mr. Aiyer to serve customers with which he had no direct customer relationship.  Nothing nefarious accompanied either coordination to make it a means or method of accomplishing a per se illegal result.

In sum, evidence of behaviors that are neither price fixing or bid rigging nor the means and methods of accomplishing that conduct is irrelevant to this case.  Once the Court confirms that coordinated interdealer trading and coordinated ruble trading were not price fixing, bid

rigging, or a means to accomplish either, evidence of those behaviors should be excluded under Rules 401 and 402 and argument that they support the alleged conspiracy should be prohibited.

## II. The Court Should Also Exclude Evidence and Argument of Coordinated Interdealer Trading and Ruble Trading Under Rule 403.

The Court may exclude evidence whose probative value is substantially outweighed by prejudicial danger. Fed. R. Evid. 403. Even if evidence of the conduct discussed above has any limited probative value—because, for example, it illustrates the relationship between the parties—its prejudicial danger substantially outweighs that value because the evidence would confuse the issues and mislead the jury.

The Government will present the Rand Chat Room participants as competitors and argue that coordination among them constitutes a criminally illegal agreement that restrains competition. The operation of the FX market is complex even for professionals, and the difference between criminally illegal conduct and legitimate coordination among competitors can be confusing and obscure.

The Government is obliged to prove beyond a reasonable doubt that Mr. Aiyer participated in a plainly anticompetitive agreement with no redeeming benefit, the object of which, plainly and simply, was to fix prices and rig bids. The Government also has to prove that the agreement was of the type that, of necessity, would harm *customer prices*. Allowing the Government to submit evidence of supposed criminal liability that had no impact on customer prices, that had a legitimate purpose and efficiency benefits, and that expanded output would confuse jurors and prejudice Mr. Aiyer.

Allowing such evidence would also present the danger that the jury would mistakenly consider such conduct as the basis for criminal liability, and, for that reason alone, the evidence should be excluded and related argument should be prohibited. *See, e.g., Thurman Indus., Inc. v.*

*Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1380 (9th Cir. 1989) (excluding evidence of conduct that was "ambiguously anticompetitive" under Rule 403 because the jury may have been "strongly influenced" by that evidence when forming its conclusion on another element of an antitrust claim).

The admission of such evidence also poses the risk of tainting the jury's reaction to Mr. Aiyer and the alleged conspiracy. Permitting evidence of trading behaviors that cannot be per se illegal and were not designed to accomplish such illegality would amplify the perceived breadth of the alleged conspiracy and, consequently, the jury's "sense" of Mr. Aiyer's guilt. *See* Fed. R. Evid. 403, Advis. Comm. Notes (contemplating the risk of "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one").

At the very least, allowing the presentation of voluminous evidence of the non-per se trading behaviors, beyond that which establishes its legitimacy, would be cumulative, unduly delay the proceedings, and needlessly expend judicial resources.


**CONCLUSION**

For the foregoing reasons, the Court should allow Mr. Aiyer's standing motion *in limine* and, after the requisite factual basis has been established, grant the motion to preclude the Government from proffering evidence and argument of coordinated interdealer trading and coordinated ruble trading.

Dated: July 26, 2019
      New York, New York

By:   /s/ Martin Klotz
WILLKIE FARR & GALLAGHER LLP
Martin Klotz
Joseph T. Baio
Jocelyn M. Sher
Samuel M. Kalar
787 Seventh Avenue
New York, New York 10019
T: (212) 728-8000

*Attorneys for Defendant Akshay Aiyer*