UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                                          |

UNITED STATES OF AMERICA               |

                                                           |

    v.                                                        |

                                                           | Case No. 1:18-cr-00333 (JGK)

AKSHAY AIYER,                             |

                                                          |

    Defendant.                              |

                                                          |
---------------------------------------------------------------x


**THE UNITED STATES' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OR ARGUMENT CONCERNING "SPOOFING" OR CANCELLED TRADES**

# TABLE OF CONTENTS

Introduction .............................................................................................................................. 1

Background ............................................................................................................................. 1

Argument ................................................................................................................................. 2

    I.    Applicable Law ............................................................................................................ 2

    II.   The challenged conduct is intrinsic to the conspiracy. ............................................... 3

    III.  The challenged conduct is relevant to intent, motive, and absence of mistake and is, therefore, permissible under Rule 404(b). ........................................................... 7

    IV.  The challenged conduct is admissible under Rule 403. ............................................. 9

Conclusion ............................................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Am. Tobacco Co. v. United States*,
   328 U.S. 781 (1946) ............................................................................................. 2

*Nye & Nissen v. United States*,
   168 F.2d 846 (9th Cir. 1948) ................................................................................ 3

*Old Chief v. United States*,
   519 U.S. 172 (1997) ............................................................................................. 3

*Richardson v. Marsh*,
   481 U.S. 200 (1987) ........................................................................................... 10

*United States v. Carboni*,
   204 F.3d 39 (2d Cir. 2000) ............................................................................. 3, 9

*United States v. Carlton*,
   534 F.3d 97 (2d Cir. 2008) ................................................................................. 8

*United States v. Chang An-Lo*,
   851 F.2d 547 (2d Cir. 1988) ............................................................................... 2

*United States v. Coonan,*
   938 F.2d 1553 (2d Cir. 1991) ............................................................................. 4

*United States v. Garelle*,
   438 F.2d 366 (2d Cir. 1970) ............................................................................... 3

*United States v. Gonzalez,*
   110 F.3d 936 (2d Cir. 1997) ............................................................................... 3

*United States v. U.S. Gypsum Co.*,
   438 U.S. 422 (1978) ............................................................................................. 2

*United States v. Kaiser*,
   609 F.3d 556 (2d Cir. 2010) ............................................................................... 9

*United States v. Koppers Co.*,
   652 F.2d 290 (2d Cir. 1981) ............................................................................... 2

*United States v. Pascarella*,
   84 F.3d 61 (2d Cir. 1996) ................................................................................... 8

*United States v. Provenzano*,
   615 F.2d 37 (2d Cir. 1980) ............................................................................................. 2

*United States v. Usher*,
   No. 17 CR 19 (RMB) (S.D.N.Y. Sept. 28, 2018) ........................................................... 7

*Zafiro v. United States*,
   506 U.S. 534 (1993) ...................................................................................................... 10

**Rules**

Fed. R. Evid. 401 ................................................................................................................ 1, 3

Fed. R. Evid. 402 ................................................................................................................ 1, 8

Fed. R. Evid. 403 ............................................................................................................. 1, 8, 9

Fed. R. Evid. 404 .......................................................................................................... 1, 7, 8, 9

**INTRODUCTION**

The Court should deny Defendant's Motion *in Limine* to Exclude Evidence or Argument Concerning "Spoofing" or Cancelled Trades (ECF No. 96). Defendant is charged with a conspiracy to suppress and eliminate competition by fixing prices of, and rigging bids and offers for, CEEMEA currencies—a *per se* violation of the Sherman Act. The conduct Defendant characterizes as "spoofing" and "cancelled trades" is admissible as intrinsic to the charged offense. As such, it is not subject to Federal Rule of Evidence 404(b). Even if the Court were to find that Rule 404(b) applies, however, the evidence is properly admissible under Rule 404(b)(2) because it demonstrates Defendant's intent, motive, and lack of mistake. The challenged evidence is relevant and its probative value is not substantially outweighed by any danger of confusion or unfair prejudice. It is therefore admissible under Rules 401, 402, and 403.

**BACKGROUND**

The indictment against Defendant alleges a "single overarching conspiracy" to violate Section 1 of the Sherman Act. (June 3, 2019 Hr'g Tr. 42:9–13). Specifically, it alleges that Defendant "knowingly entered into and participated in a combination and conspiracy to suppress and eliminate competition by fixing prices of, and rigging bids and offers for, CEEMEA currencies." (Indictment ¶ 20, ECF No. 1.) In the instant motion, Defendant takes issue with two types of conduct, which he characterizes as "spoofing" and "cancelled trades," because Defendant contends that this conduct is not a violation of the Sherman Act or anti-spoofing laws.

An example of this so-called "spoofing" conduct is as follows: a trader needing to buy sequentially places sell orders (offers) to make it look as if there is selling interest in the market. He hopes that this will drive the price down so that he is able to buy more cheaply. He places these offers with no intent to execute them and may cancel them soon after he places them. On many occasions, members of the charged conspiracy do this in tandem to increase the

appearance of selling interest. The members of the conspiracy often described this conduct as "walking down" the price (or "walking up" the price if they are trading to increase the price), so the government will do so here as well. An example of the conduct Defendant characterizes as "cancelled trades" is as follows: a member of the conspiracy needs to buy dollars. He asks another member of the conspiracy to place a buy order at a price below the best available selling price. He then accepts the buy order, signaling to the market that there is selling interest at lower prices. The traders then "cancel" this trade by entering into an offsetting trade (on or off the electronic trading platform) or by cancelling the trade.

## ARGUMENT

### I. Applicable Law

The indictment charges Defendant with "knowingly enter[ing] into and participat[ing] in a combination and conspiracy to suppress and eliminate competition by fixing prices of, and rigging bids and offers for, CEEMEA currencies." (Indictment ¶ 20, ECF No. 1.) To prove the charged conspiracy, the Government must establish, *inter alia*, that: (1) the conspiracy described in the indictment existed at or about the time alleged; and (2) Defendant knowingly—meaning voluntarily and intentionally—joined the conspiracy. *See United States v. U.S. Gypsum Co.*, 438 U.S. 422, 443 n.20 (1978); *United States v. Koppers Co.*, 652 F.2d 290, 295 & n.6 (2d Cir. 1981). "Since 'conspiracy by its very nature is a secretive operation,' the elements of a conspiracy may be established through circumstantial evidence." *United States v. Chang An-Lo*, 851 F.2d 547, 554 (2d Cir. 1988) (quoting *United States v. Provenzano*, 615 F.2d 37, 45 (2d Cir. 1980)); *see also Am. Tobacco Co. v. United States*, 328 U.S. 781, 809–10 (1946) ("The essential combination or conspiracy in violation of the Sherman Act may be found in a course of dealings or other circumstances as well as in any exchange of words."). For the same reason, "[i]n a conspiracy case, wide latitude is allowed (the government) in presenting evidence, and it is

within the discretion of the trial court to admit evidence which even remotely tends to establish the conspiracy charged." *United States v. Garelle*, 438 F.2d 366, 370 n.9 (2d Cir. 1970) (quoting *Nye & Nissen v. United States*, 168 F.2d 846, 857 (9th Cir. 1948)).

**II.     The challenged conduct is intrinsic to the conspiracy.**

Defendant incorrectly argues that evidence of walking up/down prices and cancelled trades is irrelevant to the charged conspiracy because such conduct, standing alone, is not illegal, and because such conduct was not specifically identified as a means or method of the conspiracy. (*See* Mem. Supp. of Def.'s Mot. in Lim. to Exclude Evid. or Arg. Concerning "Spoofing" or Cancelled Trades ("Def.'s Mem.") at 3, ECF No. 97.) But that is not the test for relevance; "[e]vidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action." Fed. R. Evid. 401. To be "of consequence," a fact need not be an "ultimate fact"; it need only be "a step on one evidentiary route to the ultimate fact." *Old Chief v. United States*, 519 U.S. 172, 179 (1997).

The conduct at issue is relevant, regardless of whether or not it is a Sherman Act violation (or any violation) standing alone, because it is intrinsic to the charged conspiracy. Evidence is intrinsic to a crime "if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (quoting *United States v. Gonzalez,* 110 F.3d 936, 942 (2d Cir. 1997)); *Gonzalez,* 110 F.3d at 941–42 ("[T]he trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment. Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or

intent with which certain acts were performed." (quoting *United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991))).

The challenged evidence is intrinsic to the conspiracy because it arose from the same series of transactions, is inextricably intertwined with other evidence of the conspiracy, and is necessary to complete the story of the charge crime. The indictment alleges that, in furtherance of the charged crime—an agreement to suppress and eliminate competition through price fixing and bid rigging—Defendant and his co-conspirators, *inter alia*, coordinated their bidding, offering, and trading of CEEMEA currencies in the interdealer market in order to increase, decrease, or stabilize the price or fix price of CEEMEA currencies. (Indictment ¶ 22 (b)–(d).) At trial, the government will show, through co-conspirator testimony and corroborating evidence, the multiple ways in which they coordinated their trading in the interdealer market to accomplish the object of the conspiracy. For example, the government will show that Defendant and his co-conspirators regularly revealed their confidential real-time trading positions to one another. The government will show that, often, if two or more co-conspirators were the same direction (i.e., both needed to buy or both needed to sell), the co-conspirator with the smaller position (i.e., the one needing to buy or sell the smaller quantity) would withhold his orders (i.e., refrain from submitting competing orders) to avoid moving the price against his co-conspirator with the larger position (who thus had a greater potential to make or lose money).

An example of coordinated trading from August 25, 2011 is illustrative. This conduct involves Defendant and co-conspirator Christopher Cummins. The government expects that Cummins will testify that he and Defendant revealed that they were both short in the U.S. dollar/Turkish lira (USD/TRY) currency pair, i.e., they both had a need to buy dollars in the interdealer market in exchange for Turkish lira. The government expects that Cummins will

testify that after revealing their trading positions to one another, Cummins told Defendant that Defendant should "go ahead" and trade; Cummins would withhold his buy orders (bids) so as not to push the price higher against Defendant. In other words, Cummins, a competing trader, agreed to refrain from competing against Defendant by withholding competing bids.

The government expects that Cummins will further testify that during this period that he was withholding bids to assist Defendant, Defendant also noticed that algorithmic trading programs ("algos") were active in the market and that Defendant saw an opportunity to induce these programs to place offers, thereby moving the price lower. The government will seek to introduce evidence of the following chat communication:

> AIYER: put up a 60
> AIYER: in 1
> AIYER: i ll hit you
> . . .
> CUMMINS: okok
> AIYER: then I do at 59
> AIYER: u hit me back
> AIYER: we make it offers
> AIYER: I think

The government expects that Cummins will testify that he understood Defendant to be suggesting that Cummins place a bid of 1.7560 on the interdealer platform. Defendant would then hit that bid, signaling to the market that there was selling interest. Then Defendant would place a bid at the lower price of 1.7559 and Cummins would then hit that bid, again signaling to the market that there was selling interest at a lower price. Defendant hoped that the algos would then enter lower offers, which would hopefully have the effect of moving the price down so he could buy dollars at a lower price. The trading data confirms that Defendant and Cummins traded as discussed.

As this conduct demonstrates, the evidence challenged by Defendant arose out of the same transaction or series of transactions resulting from the charged offense, is inextricably intertwined with the evidence regarding the charged offense, and is necessary to complete the story of the crime. Both types of trading behavior involved in the August 25, 2011 conduct (refraining from placing buy orders and walking down the price) occurred simultaneously to effectuate the same object—to move price in a favorable direction for one of the conspirators. Not only did Cummins suppress his bids, but he went even further to help Defendant by entering into transactions that he had no interest in and that could cause him to lose money (i.e., buying at 1.7560 and selling at 1.7559). Accordingly, evidence of this conduct not only is necessary to complete the story of the Sherman Act conspiracy, but it also demonstrates the amount of trust and confidence that Defendant and his co-conspirator, Cummins, had in one another.

Even on occasions when the challenged conduct does not occur simultaneously with other conduct, the challenged conduct remains intrinsic to the charged conspiracy. For example, on January 26, 2012, Defendant was again short and needed to buy dollars. Cummins did not appear to have a particular need to buy or sell. Nonetheless, he offered to help Defendant "walk down" the algos, saying "let's see what we can do." Defendant thanked Cummins, to which Cummins replied, "always willing to play games." Even though Cummins did not appear to need to buy dollars, as Defendant did, and did not explicitly withhold his bids, as in the August 25, 2011 example, this conduct is part of completing the story of the conspiracy and illustrates the nature of the relationship between the co-conspirators—they repeatedly worked together to influence the price of CEEMEA currencies by refraining from bidding against each other and through other methods.

In addition, the evidence also shows that Defendant trusted Cummins and Katz enough to reveal his confidential real-time trading position to them, information that could be used against him but for the conspiracy. It shows their willingness to help one another, even at risk to themselves; how they developed confidence in their relationship and strengthened their agreement; and the common intent of all their coordinated conduct—to affect price in a manner that was favorable to one or more of the co-conspirators. These instances of conduct took place throughout the charged period, demonstrating the continuous, uninterrupted existence of the conspiracy. In sum, it is immaterial whether the challenged conduct constitutes a Sherman Act or other violation standing alone because it is intrinsic to the charged conspiracy.

In *United States v. Usher*, the defendants moved to exclude evidence of similar trading conduct, which the government opposed on the grounds that the evidence was intrinsic to the charged Sherman Act conspiracy and, alternatively, was admissible under Federal Rule of Evidence 404(b). The court denied the defendants' motion on the grounds that such evidence was "integral to explaining the offense alleged . . . [and] inextricably intertwined . . . with the charged offense." Tr. of Oral Arg. at 87:3–5, *United States v. Usher*, No. 17 CR 19 (RMB) (S.D.N.Y. Sept. 28, 2018), ECF No. 158 (attached as Ex. A). The Court should do likewise here.

III. **The challenged conduct is relevant to intent, motive, and absence of mistake and is, therefore, permissible under Rule 404(b).**

Even if the Court finds that the challenged conduct is a separate, uncharged act within the meaning of Rule 404(b), this evidence is admissible under Rule 404(b)(2) because it may be offered to show Defendant's knowledge and intent—that is, that Defendant joined the conspiracy knowingly, intending to advance the purpose of the conspiracy, i.e., to affect the price of CEEMEA currencies—as well as his motive and lack of mistake. Rule 404(b) provides that while "[e]vidence of a crime, wrong, or other act is not admissible" to show a defendant's

7

propensity for crime, it may be admissible "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The Second Circuit "follows the 'inclusionary' approach to 'other crimes, wrongs, or acts' evidence, under which such evidence is admissible unless it is introduced for the sole purpose of showing the defendant's bad character or unless it is overly prejudicial under Fed. R. Evid. 403 or not relevant under Fed. R. Evid. 402." *United States v. Carlton*, 534 F.3d 97, 101 (2d Cir. 2008) (quoting *United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir. 1996)).

The government will not seek to introduce the challenged conduct for the "sole purpose of showing Defendant's bad character." Rather, the government will seek to introduce this evidence to show that when Defendant and his co-conspirators coordinated their trading pursuant to the conspiracy, they did so with the intent to accomplish the object of the conspiracy: to affect the price of CEEMEA currencies. For each instance of walking up or walking down the price and each instance of cancelled trades, the evidence at trial will show that this conduct was intended to increase, decrease, or stabilize the price of CEEMEA currencies. For example, in the above August 25, 2011 example, Defendant was short and needed to buy dollars. It would be advantageous for him to buy at a low price, so he and Cummins coordinated their trading to try to drive the price downward. Similarly, on January 26, 2012, Defendant again needed to buy dollars, and it would be advantageous to do so at a lower price. So, Cummins again worked to "walk down" the algos, hoping to drive the price downward.

Additionally, the government will show at trial that Defendant and his co-conspirators repeatedly engaged in this type of conduct to move the price in a particular direction to their advantage. The content of their communications and the repeated nature of this conduct with

8

members of the conspiracy is probative of Defendant's lack of mistake; he was well aware of the purpose and nature of his conduct and the object of the conspiracy to fix prices and rig bids.

Finally, not only does this evidence show the intent of the members of the conspiracy to affect price, but the government will demonstrate that the members of the conspiracy worked together to move the price in their favor because they believed doing so would allow them to increase their profits and minimize their losses. Accordingly, this evidence is relevant to Defendant's motive as well.

In sum, the government intends to offer this evidence for these permissible purposes and will not make any argument as to the legality of such conduct or Defendant's propensity for crime.[1] Such conduct is therefore admissible under Rule 404(b).

### IV. The challenged conduct is admissible under Rule 403.

Contrary to Defendant's assertion, any risk of unfair prejudice that may derive from the concept of "spoofing" or cancelled trades does not substantially outweigh the probative value of the evidence, and thus Rule 403 does not bar its admission. Defendant argues that such evidence may confuse or inflame the jury, in part because spoofing is considered a crime in the securities context. He argues that a jury may be inclined to convict on the basis of this conduct alone, as

---

[1] Pursuant to the Court's December 17, 2018, scheduling order, the government was to provide Defendant notice of any 404(b) evidence on July 22, 2019. (Scheduling Order, ECF No. 40.) The government did not make such a disclosure because it considers the challenged evidence to be intrinsic to the charged conspiracy and, therefore, not subject to Rule 404(b). *See Carboni*, 204 F.3d at 44 (acknowledging that intrinsic evidence is not 404(b) evidence). Nonetheless, if the Court were to conclude that this evidence is subject to Rule 404(b), the notice requirement is satisfied because Defendant has been on notice of this evidence for quite some time. *United States v. Kaiser*, 609 F.3d 556, 571 n.3 (2d Cir. 2010) (holding that defendant was adequately on notice of potential 404(b) notice in light of the details contained in the indictment and pre-trial discovery). Prior to indictment, Defendant prepared a white paper addressing this specific type of conduct and this conduct was contained on the government's list of 100 dates, 60 dates, and 30 dates. Moreover, Defendant specifically raised this conduct in his arguments supporting his motions to dismiss. (*See* Mem. Supp. Def.'s Mot. Dismiss Indictment at 22–23, ECF No. 50.)

opposed to the "charged antitrust crime." (Def.'s Mem. at 5.) However, because the evidence completes the story of the crime and is proof of both the existence of the charged conspiracy and Defendant's knowing participation in it, it is highly probative.

On the other hand, any risk of unfair prejudice arising from this evidence is minimal and can be mitigated. First, the government does not intend to introduce any evidence or argue as to the legality of spoofing, standing alone. Accordingly, it is very unlikely that the jury will incorrectly assume that the challenged conduct is, standing alone, illegal. Additionally, potential unfair prejudice "can be cured with proper instructions, and 'juries are presumed to follow their instructions.'" *Zafiro v. United States*, 506 U.S. 534, 540 (1993) (quoting *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)). To address Defendant's concerns, the government agrees to a limiting instruction stating:

> "Spoofing" conduct or cancelled trades do not, by themselves, constitute the charged criminal conspiracy. Such evidence is admitted solely to complete the story of the charged conspiracy—to demonstrate the relationship between Defendant and his co-conspirators, his motive for joining the conspiracy, and his knowledge of, and intent to advance, its purpose.

Finally, in conversations with the government, Defendant's counsel has expressed concerns about potential testimony by government expert Dr. David DeRosa regarding the purpose of fictitious or wash trades (i.e., cancelled trades). The government was willing to agree not to elicit such testimony from Dr. DeRosa, as long as Defendant's experts also did not testify about the purpose of fictitious or wash trades. Defendant was unwilling to agree; he apparently wishes to present unrebutted testimony about the purpose of fictitious or wash trades. The government continues to be willing to agree to preclude experts from testifying about the purpose of fictitious or wash trades to eliminate any potential unfair prejudice resulting from testimony regarding the propriety of such trades. (*See* Gov't's Mem. in Opp. at 8, ECF No. 101.)

10

If Defendant, however, intends to elicit expert testimony about the purpose of these trades, the government reserves the right to also offer such expert opinions.

**CONCLUSION**

For the foregoing reasons, the Court should deny Defendant's Motion *in Limine* to Exclude Evidence or Argument Concerning "Spoofing" or Cancelled Trades (ECF No. 96).

Dated: August 16, 2019
       New York, New York

                                            Respectfully submitted,

                                            /s/ Katherine Calle

                                            Kevin Hart
                                            Katherine Calle
                                            David Chu
                                            Eric Hoffmann

                                            U.S. Department of Justice, Antitrust Division
                                            New York Office
                                            26 Federal Plaza, Room 3630
                                            New York, NY 10278
                                            212-335-8000