UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 18 Cr. 333 (JGK) |
| v. | : | |
| AKSHAY AIYER, | : | |
| Defendant. | : | |

-------------------------------------------------------x

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO THE UNITED STATES' MOTION IN LIMINE NO. 1 TO ADMIT EVIDENCE OF MOTIVE**

WILLKIE FARR & GALLAGHER LLP
Martin Klotz
Joseph T. Baio
Jocelyn M. Sher
Samuel M. Kalar
787 Seventh Avenue
New York, New York 10019
T: (212) 728-8000

*Attorneys for Defendant Akshay Aiyer*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................1
ARGUMENT...................................................................................................................................1
    I.    Evidence Of The Dollar Value Of Mr. Aiyer's Compensation Is Not Relevant. ............1
    II.   Admission Of The Dollar Value Of Mr. Aiyer's Compensation Would Be Unduly Prejudicial. ..................................................................................................................5
CONCLUSION................................................................................................................................7

# TABLE OF AUTHORITIES

**Cases**                                                                                                   **Page(s)**

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*,
    No. 04 Civ. 10014 PKL, 2009 WL 3111766 (S.D.N.Y. Sept. 28, 2009) .............................5

*United States v. Cassese*,
    290 F. Supp. 2d 443 (S.D.N.Y. 2003)..............................................................................7

*United States v. Logan*,
    250 F. 3d 350 (6th Cir. 2001) ...........................................................................................3

*United States v. Peake*,
    143 F. Supp. 3d 1 (D.P.R. 2013).......................................................................................4

*United States v. Quattrone*,
    441 F. 3d 153 (2d Cir. 2006)........................................................................................4, 6

*United States v. Stahl*,
    616 F. 2d 30 (2d Cir. 1980)...............................................................................................6

**Statutes, Rules and Regulations**

Fed. R. Evid. 401(a)....................................................................................................................2
Fed. R. Evid. 403 .......................................................................................................................6

Defendant Akshay Aiyer respectfully submits this Memorandum of Law in Opposition to the United States' Motion in Limine No. 1 to Admit Evidence of Motive.

## PRELIMINARY STATEMENT

As a foreign exchange trader at J.P. Morgan Chase, Mr. Aiyer received compensation in the form of an annual base salary and a bonus, which consisted of both a cash component and an award of restricted stock units. Mr. Aiyer's performance was one of the factors that was taken into consideration in determining the size of his bonus, although no specific formula linked performance to bonus size.

In its Motion in Limine No. 1 to Admit Evidence of Motive (ECF No. 93 (the "Motion")), the Government moves to admit evidence of Mr. Aiyer's total compensation, arguing that such evidence is relevant to Mr. Aiyer's motive to enter into the alleged price fixing and bid rigging conspiracy. The Government also states that it intends to offer evidence of the compensation received by Mr. Aiyer's alleged coconspirators. Compensation records for each of the alleged coconspirators appear on the Government's June 28, 2019 preliminary exhibit list.

Mr. Aiyer opposes the Motion insofar as it seeks the admission of evidence regarding the total dollar value of the compensation he received.[1] Such evidence is not relevant to Mr. Aiyer's motive to engage in the charged offense, and its admission would be unduly prejudicial.

## ARGUMENT

**I.    Evidence Of The Dollar Value Of Mr. Aiyer's Compensation Is Not Relevant.**

Mr. Aiyer acknowledges that the fact that a portion of his compensation was based in part on his performance may have some relevance to his motive to engage in the conduct at issue in this case. However, the specific amount of Mr. Aiyer's total compensation, or even the bonus

---

[1] Mr. Aiyer objects to the admission of the dollar value of his alleged coconspirators' compensation for the same reasons stated herein.

component of it, is not relevant.  The Government does not need to refer to the dollar amount of Mr. Aiyer's compensation to argue that a desire to increase his compensation may have influenced his decision to engage in the trading behavior at issue here.  While the fact that Mr. Aiyer's compensation was partially performance-based may be relevant to this argument, information regarding the amount that he was paid is not.  Put simply, evidence of the dollar amount of Mr. Aiyer's compensation has no "tendency to make a fact" regarding the potential connection between compensation and motive either "more or less probable than it would be without the evidence." Fed. R. Evid. 401(a).  As a result, evidence that reveals the value of Mr. Aiyer's compensation is inadmissible.

The irrelevance of this evidence is underscored by the fact that the Government does not plan to quantify either the amount of profit Mr. Aiyer earned for his bank through allegedly improper trading or the amount by which his compensation increased as a result.  The Government reasons that the size of Mr. Aiyer's compensation is relevant to the strength of his motive because "if a defendant stands to earn a $100 bonus, he might be less motivated to enter into a conspiracy than if he stands to earn a $1 million bonus." (Motion at 3 n.2.)  However, this argument is both unpersuasive and misleading if the Government does not offer evidence concerning the amount of Mr. Aiyer's bonus that can be tied to his allegedly illicit trading.

In fact, the trading behavior at issue in this case involved only a tiny portion of Mr. Aiyer's total trading activity.  Mr. Aiyer's total trading volume was $3.59 trillion and his net income for the bank was about $64 million during the relevant period.  In contrast, the trading episodes challenged by the Government were unlikely to have involved more than a few million dollars per trade or more than a few thousand dollars in net income for the bank.  Accordingly, the impact of the challenged trading on the performance-based component of Mr. Aiyer's

compensation would have been minimal in dollar terms.[2]  Any argument connecting the dollar value of Mr. Aiyer's compensation to his motive to participate in the alleged misconduct creates the false impression that he stood to profit significantly from the transactions at issue.

Several of the cases cited by the Government involve a much closer connection between a defendant's compensation and the conduct at issue than exists here.  For example, in *United States v. Logan*, two controlling officers of an issuer of government-insured loans and securities were convicted of numerous crimes including conspiracy to defraud the United States and making false entries in reports to government agencies.  250 F. 3d 350, 356-57 (6th Cir. 2001).  The false entries at issue concerned defendant-appellants' inaccurate reporting of loan delinquencies to the government.  *Id.* at 359.  The court determined that evidence of defendants-appellants' income was relevant to demonstrate their motive for committing the crimes charged because their income was "necessarily dependent" on the government's continuation of their loan commitment authority.  *Id.* at 369.  If the government had become aware of the actual number of loan delinquencies, it might have revoked defendant-appellants' entire loan commitment authority.  "[T]he result would have had a profound financial effect on Appellants . . . in that they would cease to gain profits from the issuance of mortgage-backed securities."  *Id.*  As a result, income evidence "demonstrated what Appellants stood to lose" if they did not commit the crimes charged.  *Id.*  Here, the Government makes no effort to show a "profound financial effect" or otherwise quantify what Mr. Aiyer "stood to lose" if he did not participate in the conduct at issue, and it cannot in good faith argue that the compensation evidence it seeks to

---

[2] Mr. Aiyer's total compensation, including his bonuses, over time bears no apparent connection to alleged conspiratorial activity.  Mr. Aiyer earned more than $1 million in 2009, before the conspiracy allegedly began, and again in 2010, which included only limited interaction with only one alleged coconspirator (Mr. Katz), and then only at the end of the year.  Mr. Aiyer's compensation declined in 2012 and again in 2013.

admit is an accurate representation of what he would have lost were it not for his involvement in the alleged conspiracy.

Similarly, in *United States v. Quattrone*, the link between compensation and motive was far more clear than it is here. Defendant was charged with witness tampering and obstruction of justice in connection with an investigation of the group that he headed at an investment bank. 441 F. 3d 153, 161 (2d Cir. 2006). The Second Circuit concluded that the district court did not "act[] so far outside the range of reasonable decision making in admitting this evidence that it abused its discretion" in admitting evidence of defendant's compensation. *Id.* at 187. This was because the compensation evidence could plausibly explain why defendant committed the crimes charged. Defendant may have engaged in witness tampering and obstruction of justice in order to "protect his reputation and that of [his] group." *Id.* There was a closer connection between what defendant stood to lose if he had allowed the investigation to proceed unimpeded than there is here.

Finally, *United States v. Peake* is also distinguishable. In that case, the court found that evidence of defendant's compensation was relevant where defendant was President and CEO of a company that was involved in an antitrust conspiracy. 143 F. Supp. 3d 1, 18 (D.P.R. 2013). The fact that an increase in defendant's compensation over the period of the conspiracy was the plausible result of his participation in that conspiracy was a key factor in the court's analysis. Defendant's company ran a deficit before the conspiracy began, but, once the conspiracy commenced, the company's financials "drastically" improved, and it started turning a profit. *Id.* Defendant's compensation then increased as a result of his company's increased profitability. *Id.* The Government does not—and cannot—offer evidence that similarly connects an increase in

Mr. Aiyer's compensation over time to his activities during the charged conspiracy: Mr. Aiyer was highly successful, and highly compensated, before the alleged conspiracy began.

Courts within the Second Circuit have taken the approach that Mr. Aiyer urges the Court to take here, admitting some compensation-related evidence that is arguably relevant while excluding other evidence of compensation that is irrelevant to the charges against the defendant. For example, in *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, the court granted a motion to exclude all compensation evidence other than evidence of the method of calculating compensation after concluding that "serious doubts" existed regarding "the relevance of the actual dollar figure of the… compensation." No. 04 Civ. 10014 PKL, 2009 WL 3111766, at *6 (S.D.N.Y. Sept. 28, 2009).

A similar approach to compensation evidence is warranted here. Because the Government has provided no indication that it can or will demonstrate how the dollar value of Mr. Aiyer's compensation was affected by the conduct at issue here, the amount of his compensation is irrelevant to his motive to engage in that conduct. The Court should exclude evidence regarding the specific amount of Mr. Aiyer's compensation even if it allows the Government to introduce evidence regarding the fact that a component of Mr. Aiyer's compensation was tied to his performance, albeit not in any formulaic way.

## II. Admission Of The Dollar Value Of Mr. Aiyer's Compensation Would Be Unduly Prejudicial.

Not only is evidence regarding the specific amount of Mr. Aiyer's compensation irrelevant, its introduction would also be unduly prejudicial. Rule 403 permits the Court to exclude evidence "if its probative value is substantially outweighed by a danger of … unfair prejudice." Fed. R. Evid. 403. Information regarding the dollar value of Mr. Aiyer's

compensation should be excluded not only because it has no probative value, but also because there is a significant danger that introduction of such evidence would be highly prejudicial.

The Second Circuit has acknowledged that "evidence of compensation [or] wealth … can unduly prejudice jury deliberations." *Quattrone*, 441 F.3d at 187. The specific facts of Mr. Aiyer's case heighten the likely prejudicial impact of the evidence he seeks to exclude. First, because anti-Wall Street sentiment is widespread, the fact that Mr. Aiyer worked in finance may exacerbate the resentment some jurors might feel if evidence regarding the dollar value of his compensation were admitted. Additionally, Mr. Aiyer was highly paid at a very young age. He was only twenty-seven years old at the beginning of the alleged conspiracy and thirty years old at the time the alleged conspiracy ended. Some jurors might feel even greater resentment upon learning that Mr. Aiyer was paid more than one million dollars per year while he was still in his twenties. As a result, if the Court were to allow the introduction of evidence regarding the value of Mr. Aiyer's compensation, the overwhelming effect would be to unfairly prejudice the jury against Mr. Aiyer.

When evidence of wealth or compensation is unduly prejudicial, as it is here, it should not be admitted. *United States v. Stahl*, 616 F. 2d 30, 33 (2d Cir. 1980) (reversing conviction where prosecution made prejudicial references to defendant's wealth); *United States v. Cassese*, 290 F. Supp. 2d 443, 457 (S.D.N.Y. 2003) (conditionally granting new trial pursuant to Rule 29(d)(1) because the government introduced "irrelevant and highly prejudicial evidence" of defendant's "wealth, salary, and stock holdings" which "played into a bias against people of wealth"). Accordingly, Mr. Aiyer asks the Court to exclude evidence that reveals the dollar amount of Mr. Aiyer's compensation.

- 7 -

Mr. Aiyer submits that a limiting instruction would not be sufficient to alleviate the undue prejudice that would result from the unnecessary introduction of information regarding the dollar value of his compensation, as the damage caused by any bias against Mr. Aiyer would already be done.

## CONCLUSION

For the foregoing reasons, the Court should deny the United States' Motion in Limine No. 1 to Admit Evidence of Motive.

Dated: August 16, 2019
      New York, New York

                          By:    /s/ Martin Klotz
                                   WILLKIE FARR & GALLAGHER LLP
                                   Martin Klotz
                                   Joseph T. Baio
                                   Jocelyn M. Sher
                                   Samuel M. Kalar
                                   787 Seventh Avenue
                                   New York, New York 10019
                                   T: (212) 728-8000

                                   *Attorneys for Defendant Akshay Aiyer*