UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

UNITED STATES OF AMERICA     :     18 Cr. 333 (JGK)

            v.            :

AKSHAY AIYER,           :

          Defendant.     :

-------------------------------------------------------x


**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION
TO THE UNITED STATES' MOTION IN LIMINE NO. 9 TO EXCLUDE
EXPERT TESTIMONY THAT TRANSMITS HEARSAY OR IMPROPERLY
<u>INTERPRETS TRADER COMMUNICATIONS</u>**


WILLKIE FARR & GALLAGHER LLP
Martin Klotz
Joseph T. Baio
Jocelyn M. Sher
Samuel M. Kalar
787 Seventh Avenue
New York, New York 10019
T: (212) 728-8000

*Attorneys for Defendant Akshay Aiyer*

## <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT .............................................................................................................................2

    I.      Mr. Aiyer's Experts' Testimony Will Not "Circumvent The Hearsay Rule." ................2

    II.     Prof. Lyons And Prof. Carlton Are Qualified To Interpret Trader Communications ......4

    III.    Mr. Aiyer's Experts Will Not Offer Improper Testimony On The Motivations Or Intentions Of The Parties. ............................................................................................7

    IV.    The Proposed Testimony Of Prof. Lyons And Prof. Carlton Is Not Redundant. ...........9

CONCLUSION ..........................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Abbott Point of Care, Inc. v. Epocal, Inc.*,
    868 F. Supp. 2d 1310 (N.D. Ala. 2012) ................................................................9

*City of Tuscaloosa v. Harcros Chemicals, Inc.,*
    158 F.3d 548 (11th Cir. 1998) ...............................................................................5, 6

*Jamsports and Entertainment, LLC v. Paradama Productions, Inc.*,
    No. 02 C 2298, 2005 WL 14917 (N.D. Ill. Jan. 3, 2005) ....................................8

*In re LIBOR-Based Financial Instruments Antitrust Litigation*,
    299 F. Supp. 3d 430 (S.D.N.Y. 2018) ...............................................................5, 8

*Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*,
    97 F. Supp. 3d 485 (S.D.N.Y. 2015) .....................................................................6

*Macaluso v. Herman Miller, Inc.*,
    No. 01–Civ–11496 (JGK), 2005 WL 563169 (S.D.N.Y. Mar. 10, 2005) ........4, 5

*Marvel Characters, Inc. v. Kirby*,
    726 F.3d 119 (2d Cir. 2013) ....................................................................................9

*Mid-State Fertilizer Co. v. Exchange National Bank of Chicago*,
    877 F.2d 1333 (7th Cir. 1989) ................................................................................6

*Mink Mart, Inc. v. Reliance Ins. Co.*,
    65 F. Supp. 2d 176 (S.D.N.Y. 1999), *aff'd*, 12 F. App'x 23 (2d Cir. 2000) .......4

*Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.*,
    No. 10-21511-CIV, 2010 WL 4225947 (S.D. Fla. Oct. 21, 2010) ......................9

*SEC v. Tourre*,
    950 F. Supp. 2d 666 (S.D.N.Y. 2013) ...................................................................7

*Trout v. Milton S. Hershey Med. Ctr.*,
    No. 1:07-CV-0431, 2008 WL 3978060 (M.D. Pa. Aug. 26, 2008) ......................9

**Statutes, Rules and Regulations**

Fed. R. Evid. 702(b)-(d) ..............................................................................................4

Defendant Akshay Aiyer respectfully submits this Memorandum of Law in Opposition to the United States' Motion in Limine No. 9 to Exclude Expert Testimony that Transmits Hearsay or Improperly Interprets Trader Communications.

## PRELIMINARY STATEMENT

The Government seeks to exclude certain testimony that it assumes Mr. Aiyer's expert witnesses, Professor Richard Lyons and Professor Dennis Carlton, will offer.  (ECF No. 93, Government's Motion in Limine No. 9 to Exclude Expert Testimony that Transmits Hearsay or Improperly Interprets Trader Communications (the "Motion").)  Specifically, the Government seeks to exclude expert testimony that (1) "transmits hearsay" or (2) "interprets trader communications."  (*Id.* at 35.)  To the extent the Government's Motion seeks to merely reiterate uncontested limits on expert testimony—such as preventing "simply transmit[ting] hearsay to the jury" or improperly "ascrib[ing] motivations to parties"— it should be denied as moot.  To the extent it seeks to impose broad, preemptive constraints on testimony that is relevant and within the proposed witnesses' area of expertise, the Motion should be denied as improper.

Neither Prof. Lyons nor Prof. Carlton will offer testimony for the purpose of "circumvent[ing] the hearsay rule"  (*id.* at 36), and their expert disclosures do not contain any indication that they will do so.  The Government's vague fear is completely unfounded and does not provide any basis for the relief sought in the Motion.

With respect to their general ability to discuss the evidence at issue in this case, the Government concludes, without explanation, that Prof. Lyons and Prof. Carlton are not "qualified to interpret trader communications."  (*Id.* at 37.)  Although both Prof. Lyons and Prof. Carlton are familiar with the record of this case, including the trader communications that make up much of this record, neither is expected to opine on the meaning of ambiguous or disputed comments in those communications.  This does not preclude either expert from testifying about

the general behaviors disclosed in those communications, or from relying on non-controversial interpretations of what speakers are saying.  Moreover, each expert is in fact fully qualified to understand the substance of the communications at issue.  The Government's plainly overbroad premise that "economists have no expertise in interpreting documents" misuses case law in order to justify a blanket ban on expert testimony that is in fact both relevant and proper.  (*Id.*)

The Government's final argument, that the only "permissible" portions of the experts' testimony are duplicative of each other and should be excluded, again either ignores or mischaracterizes the substance of Prof. Lyons' and Prof. Carlton's anticipated testimony.  (*Id.* at 38-39.)

The Motion should be denied.

## ARGUMENT

### I.    Mr. Aiyer's Experts' Testimony Will Not "Circumvent The Hearsay Rule."

The Government believes that Mr. Aiyer will attempt to use Prof. Lyons and Prof. Carlton as "conduit[s] for hearsay."  (*Id.* at 36.)  They reach this conclusion because Mr. Aiyer allegedly included "inadmissible hearsay trader communications"[1] on his preliminary exhibit list.  (*Id.* at 35-36.)  The Government complains that Mr. Aiyer "has not identified competent fact witnesses" relevant to these communications, and that Prof. Lyons' and Prof. Carlton's

---

[1] As explained in the Defendant's Memorandum of Law in Opposition to the Government's Motion in Limine No. 8 to Exclude Hearsay Trader Communications, filed herewith, these communications are either not, in fact, hearsay, because they are not offered for the truth of matters asserted in them, or they are admissible under recognized exceptions to the hearsay rule.  (*Id.* at 33-35.)

disclosures indicate that they "rely on trader communications for their expected testimony."[2]  (*Id.* at 35.)

As a preliminary matter, Prof. Carlton, although fully competent to do so, is not expected to testify on direct examination about specific trader communications other than to illustrate the conduct at issue and conduct that he may address.  As described in Prof. Carlton's expert disclosure, his testimony will pertain to the general structure and characteristics of the FX market—including its participants and their common business practices, such as FX traders' use of interbank Bloomberg chat rooms—and whether the types of questioned trading conduct at issue in this case can reduce or enhance economic efficiency.  (Carlton Expert Disclosure at 3-4.) The Government concedes that such testimony is appropriate.  (Motion at 38 (stating that it is "permissible" for Prof. Carlton to "discuss general market dynamics").)

As to Prof. Lyons, there is no basis for the Government's belief that he will attempt to introduce through his testimony any of the "inadmissible hearsay trader communications" challenged by the Government.  (*Id.* at 35.)  Prof. Lyons' testimony is expected to include his analysis of a sample of chats from the 30 dates provided by the Government (*see* Lyons Expert Disclosure at 4), which, by the time of his testimony, will have been properly introduced into evidence.  He will not "simply transmit hearsay to the jury," as the Government fears.  (Motion at 36.)  To the extent Prof. Lyons discusses or summarizes other chats, some of which may not be in evidence, it will be for a limited purpose, such as illustrating the conduct that Prof. Lyons is

---

[2] The Government cites the first page of each expert disclosure as evidence of this supposed reliance, presumably referring to the statement in the disclosures that the experts' opinions are based in part on their "review of relevant Bloomberg chats and other communications among Mr. Aiyer and his alleged coconspirators," along with six other bases for their opinions.  (Ex. 1, Expert Disclosure of Dennis Carlton ("Carlton Expert Disclosure") at 1; Ex. 2, Expert Disclosure of Richard Lyons ("Lyons Expert Disclosure") at 1.)  The Government has no reason to believe that this statement in the disclosures indicates that the experts relied on the specific "inadmissible hearsay trader communications" with which the Government takes issue.  Even if the experts did rely on hearsay in forming their opinions, the Government itself admits that they are entitled to do so.  (*See* Motion at 35.)

addressing or comparing what participants in the Rand Chat Room said to each other (*e.g.*, "I will refrain from selling rand"), with what they did (*e.g.*, sell rand).  Such an analysis does not improperly introduce hearsay, nor does it involve the interpretation of ambiguous or disputed statements.

## II.     Prof. Lyons And Prof. Carlton Are Qualified To Interpret Trader Communications.

The Government argues that Prof. Lyons and Prof. Carlton do not have the expertise or methodology to interpret communications, and states that both experts are "economists, and nothing in their experience suggests that their expertise encompasses trader communications." (*Id.*)  This assessment of the experts' experience is inaccurate.  Prof. Lyons, for example, has interacted with traders extensively through his prior work as the Chief Learning Officer at Goldman Sachs, as well as in the course of his extensive academic work on currency trading dynamics.  He has ample experience interpreting trader communications, and therefore has the requisite expertise to offer testimony based in part on those communications.  Similarly, Prof. Carlton has extensive experience analyzing and explaining business practices in a wide range of different businesses and industries.

Furthermore, Federal Rule of Evidence 702 states that an expert witness's testimony must be "based on sufficient facts or data" and "the product of reliable principles and methods," and that the expert must have "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d).  Expert witnesses must therefore familiarize themselves with the facts of the case to which they are applying their expertise, as opinion testimony that is deemed insufficiently grounded in case facts may be excluded.  *See Mink Mart, Inc. v. Reliance Ins. Co.*, 65 F. Supp. 2d 176, 180–81 (S.D.N.Y. 1999), *aff'd*, 12 F. App'x 23 (2d Cir. 2000) (excluding an expert opinion as speculative because it was inadequately connected to the facts of the case, and

stating that "[i]n order for an expert's opinion to be reliable and thus admissible, it must be

grounded on verifiable propositions of fact."); *Macaluso v. Herman Miller, Inc.*, No. 01–Civ–

11496 (JGK), 2005 WL 563169, at *8 (S.D.N.Y. Mar. 10, 2005) (excluding testimony of expert

who did not inspect the actual item in question and whose analysis was based on "incorrect

factual assumptions" that rendered all of his subsequent conclusions "purely speculative").

     The Government argues that "[c]ourts are particularly wary of economists interpreting

documents," but the cases it cites are plainly distinguishable from any anticipated testimony

here.  (Motion at 37.)  *In re LIBOR-Based Financial Instruments Antitrust Litigation*, 299 F.

Supp. 3d 430 (S.D.N.Y. 2018), for example, actually demonstrates just the opposite of the

Government's argument.  In assessing the testimony of the plaintiffs' expert witness—an

economist who specialized in "antitrust economics"—the court in that case noted that the expert

offered "a number of opinions derived from her review of communications between traders,"

among other opinions.  *Id*. at 489.  The court concluded, based on the expert's credentials as an

economist, that the expert was "generally qualified to offer opinions of this type."  *Id.*

     The *In re LIBOR* court went on to exclude portions of the expert's testimony that were

based on her interpretation of trader communications.  It did so, however, because the expert

impermissibly opined that the challenged conduct in that case had in fact occurred and that the

defendants in that case had "manipulated their LIBOR submissions," among other challenged

behaviors.  *Id.* at 490.  Prof. Lyons and Prof. Carlton, on the other hand, will not give such broad,

conclusory testimony about the ultimate issue in the case.

     The Government's reliance on *City of Tuscaloosa v. Harcros Chemicals, Inc.,* 158 F.3d

548 (11th Cir. 1998), is equally misplaced.  The *City of Tuscaloosa* court excluded portions of a

statistician expert witness's testimony regarding "documentary evidence" because the expert

improperly opined that the evidence was "reflective of collusion." *Id.* at 565. The court found

that the expert's testimony was not within his competence as a statistician and that the "trier of

fact is entirely capable of determining whether or not to draw such conclusions without any

technical assistance from [experts]." *Id*. at 564-65. It agreed with the district court's assessment

that "[the expert]'s methodology to determine the existence of a conspiracy [was] his subjective

judgment." *Id*. However, as previously explained, neither Prof. Lyons nor Prof. Carlton will

offer any such sweeping testimony.

*Mid-State Fertilizer Co. v. Exchange National Bank of Chicago*, 877 F.2d 1333 (7th Cir.

1989), is also inapplicable. There, the economist expert's affidavit contained "nothing but

conclusions," such as his conclusory statement that a certain instance of the defendant's behavior

was "contrary to good faith and fair dealing." *Id*. at 1339-40. This conclusion did not "draw[]

on the skills of an economist," but rather comprised "legal rather than [] economic opinion[s]."

*Id*. at 1340. It was the expert's use of "legal rather than economic terms" and the fact that his

testimony "supplie[d] nothing but a bottom line" that the court rejected, not the fact that the

expert interpreted documents. *Id*. at 1339-40.

The Government also broadly asserts that economists have "no expertise in interpreting

documents" and have "no reliable methodology to apply to documents." (Motion at 37.) This is

categorically untrue, as evidenced by the fact that courts regularly permit economist experts to

offer opinions based on their interpretation of relevant documents and testimony. *See, e.g., Louis

Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 505 (S.D.N.Y. 2015)

(rejecting defendants' argument that the testimony of plaintiff's economist expert about the

effect of certain sales on plaintiff's brand value should be excluded because the expert relied on

"articles about brand value and deposition testimony," concluding that "[s]uch sources … are clearly within the universe of those on which [the expert] could permissibly rely").[3]

## III.   Mr. Aiyer's Experts Will Not Offer Improper Testimony On The Motivations Or Intentions Of The Parties.

The Government asserts that "[a]n economist's interpretation of communications is especially problematic when he ascribes motivations to parties."  (Motion at 38.)  The Government's inclusion of this argument is puzzling, as the Government has no reason to believe that Prof. Lyons or Prof. Carlton will "ascribe motivations or intentions to the parties," and nothing in their disclosures suggests that they would do so.  (*Id.*)  The only part of either disclosure that the Government points to as evidence that the experts will testify about the parties' motivations or intentions is one sentence in Prof. Lyons' expert disclosure that states that he may testify about whether Mr. Aiyer and his alleged coconspirators were "truthful" in their chat room communications.[4]  (Motion at 38.)  It is unclear why the Government believes that Prof. Lyons' expected testimony regarding objective fact—*i.e.*, whether the representations made by Mr. Aiyer and other chat room participants with respect to their trading activity or risk positions reflected reality and therefore were "truthful"—is equivalent to "ascribing motivations" to those individuals.  Although Prof. Lyons will offer testimony pertaining to whether statements made by Mr. Aiyer or others regarding their trading were accurate (by comparing unambiguous

---

[3] *SEC v. Tourre*, 950 F. Supp. 2d 666 (S.D.N.Y. 2013), does not support the Government's argument that economists have no reliable methodology to apply to documents.  The *Tourre* court excluded an economist expert witness's testimony because he lacked the requisite qualifications, he offered "legal proposition[s]," and his opinion was supported only by *ipse dixit.  Id*. at 678.  The court did not, as the Government asserts, exclude the expert's testimony because economists generally do not have a reliable methodology to apply to documents.

[4] Prof. Lyons' disclosure states: "Prof. Lyons also is expected to analyze circumstances under which Mr. Aiyer and his alleged coconspirators did, or did not, share accurate information about their positions.  He is expected to analyze the circumstances under which Mr. Aiyer and his alleged coconspirators did, or did not, coordinate trading in the interdealer market and were, or were not, truthful in disclosing their actual trading to other chat room participants."  (Lyons Expert Disclosure at 4.)

statements with actual trading records), this anticipated testimony is an objective assessment of facts, not of the traders' motivations or intentions.

Furthermore, the cases cited by the Government for the proposition that experts should not interpret communications as demonstrating motivations or intentions actually demonstrate that expert witnesses *may* opine on certain types of potential motivations.  In *Jamsports and Entertainment, LLC v. Paradama Productions, Inc.*, No. 02 C 2298, 2005 WL 14917, at *7 (N.D. Ill. Jan. 3, 2005), the primary case cited by the Government, the court concluded that neither party's expert witness could testify about the "motivations" of certain parties.  The court, however, *permitted* the testimony of the defense's expert witness—Prof. Carlton—that certain challenged behaviors "may be justified on legitimate business grounds."  *Id*.  The court further stated that an economist expert is competent to testify as to findings that "have a grounding in economics," such as a finding that certain behaviors "lessened competition to the detriment of consumers."  *Id*. at 10.

The concerns expressed by the court in *Jamsports* are inapplicable to the expert testimony that will be offered by Prof. Lyons and Prof. Carlton because, unlike the expert testimony excluded in *Jamsports*, their testimony will not include any impermissible conclusions about the "motivations" of Mr. Aiyer or others.  Prof. Lyons' anticipated testimony about, for instance, the "efficient reasons for and likely foreseeable benefits of the trading activities at issue in this case" (Lyons Expert Disclosure at 4) is analogous to the testimony about potential "legitimate business grounds" for conduct that the *Jamsports* court—and others—have specifically stated is permissible.  *Jamsports*, 2005 WL 14917, at *7; s*ee also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 490 (S.D.N.Y. 2018) (stating that

experts are permitted to "opine on traders and LIBOR submitters' economic incentives as a general matter," though such opinions "may not extend to the traders and submitters' specific states of mind").[5]

## IV.    The Proposed Testimony Of Prof. Lyons And Prof. Carlton Is Not Redundant.

Finally, the Government concludes that the "only permissible role" for Prof. Carlton and Prof. Lyons is "to discuss general market dynamics" and that their testimony is "redundant on this point," and therefore their "duplicative testimony" should be excluded.  (Motion at 38.) Even if the remainder of Prof. Lyons' and Prof. Carlton's testimony were excluded and they could only testify about general market dynamics, however, their testimony would not be redundant because they offer different perspectives.  Prof. Lyons' testimony comes from the perspective of an expert in currency trading, and Prof. Carlton testifies from the perspective of an expert in industrial organization.  *See Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.,* No. 10-21511-CIV, 2010 WL 4225947, at *2 (S.D. Fla. Oct. 21, 2010) ("Testimony on the same topic by different experts … is not needlessly cumulative where the experts will testify from different professional perspectives."); *Abbott Point of Care, Inc. v. Epocal, Inc.*, 868 F. Supp. 2d 1310, 1331 (N.D. Ala. 2012) (holding that testimony from two expert witnesses would not be cumulative even though both experts came to the same conclusion, since there were "significant distinctions in the two experts' relative backgrounds, perspectives, and methodologies"); *Trout v. Milton S. Hershey Med. Ctr.*, No. 1:07-CV-0431, 2008 WL 3978060, at *1 (M.D. Pa. Aug. 26,

---

[5] *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013), expressed disapproval of experts whose testimony is "undergirded by hearsay statements" that the experts use to "speculate as to the motivations and intentions of certain parties."  This case is similarly inapplicable to Prof. Lyons' testimony.  The "speculat[ion]" as to motivations and intentions that the experts in that case expressed, such as the expert's testimony that he "do[es] not believe that [certain parties] … thought that the material they created was 'work made for hire,'" clearly constituted a subjective belief on the part of the expert as to those parties' specific thought processes and states of mind.  *Id.*  As explained above, however, Prof. Lyons' testimony does not include any such impermissible assessment of the traders' actual motivations, thought processes, or states of mind.

2008) (allowing the testimony of multiple experts where each "possesses a specialty … distinct from that of plaintiff's other experts").

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny the United States' Motion in Limine No. 9 to Exclude Expert Testimony that Transmits Hearsay or Improperly Interprets Trader Communications.

Dated: August 16, 2019
      New York, New York

By:   /s/ Martin Klotz           
      WILLKIE FARR & GALLAGHER LLP
      Martin Klotz
      Joseph T. Baio
      Jocelyn M. Sher
      Samuel M. Kalar
      787 Seventh Avenue
      New York, New York 10019
      T: (212) 728-8000

      *Attorneys for Defendant Akshay Aiyer*