UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

UNITED STATES OF AMERICA      :      18 Cr. 333 (JGK)

           v.                    :

AKSHAY AIYER,             :

           Defendant.        :

-------------------------------------------------------x

## DEFENDANT'S OBJECTIONS TO THE UNITED STATES' PROPOSED JURY INSTRUCTIONS

WILLKIE FARR & GALLAGHER LLP
Martin Klotz
Joseph T. Baio
Jocelyn M. Sher
Samuel M. Kalar
787 Seventh Avenue
New York, New York 10019
T: (212) 728-8000

*Attorneys for Defendant Akshay Aiyer*

## <u>INTRODUCTION</u>

Defendant has set forth his objections to the Government's Proposed Jury Instructions in the following document. Defendant's objections appear above the text of the relevant request. Suggested modifications to the Government's requests are reflected in the text of the requests in redline track changes. If the Government's requests are selected instead of Defendant's, Defendant believes that the suggested modifications are required for accuracy and fairness and to better conform those requests to the cited models from which they were adapted.

**Defendant's Objections To Request No. 1**

To the extent that the Court's "usual instructions" do not differ materially from the instructions given in *United States v. Stern*, Defendant does not object to the Government's general requests.

Defendant also requests that a *falsus in uno* charge be given as part of the general instruction on witness credibility.  Defendant included such a charge in the last paragraph of Defense Proposed Jury Instruction No. 23 (Witness Credibility).

Below, Defendant has correlated the General Requests in Request No. 1 to the Defense Proposed Jury Instructions, noting the sources of the latter.

## REQUEST NO. 1.

### General Requests

The government respectfully requests that the Court give its usual instructions to the jury on the following matters:

a.      Function of Court and Jury – ***See Defense Proposed Jury Instructions Nos. 1 (Role Of The Jury) and 2 (Role Of The Court), which are taken from the instructions given in United States v. Stern.***

b.      Improper Considerations: Race, Ethnicity, Religion, National Origin, Age, Sex – ***See Defense Proposed Jury Instruction No. 3 (Improper Considerations – Matters The Jury May Not Consider), which is taken from the instruction given in United States v. Stern.***

c.      Government Treated Like Any Other Party – ***See Defense Proposed Jury Instruction No. 3 (Improper Considerations – Matters The Jury May Not Consider), which is taken from the instruction given in United States v. Stern.***

d.      Statements of Court and Counsel Not Evidence – ***See Defense Proposed Jury Instruction No. 4 (Evidence And Inferences), which is taken from the instruction given in United States v. Stern.***

e.      Indictment Not Evidence – ***See Defense Proposed Jury Instructions Nos. 5 (Presumption Of Innocence And Burden Of Proof) and 9 (Summary Of Indictment), which are taken from the instructions given in United States v. Stern.***

2

f.      Definitions and Examples of Direct and Circumstantial Evidence – ***See Defense Proposed Jury Instruction No. 4 (Evidence And Inferences), which is taken from the instruction given in United States v. Stern.***

g.      Inferences – ***See Defense Proposed Jury Instruction No. 4 (Evidence And Inferences), which is taken from the instruction given in United States v. Stern.***

h.      Rulings on Objections and Evidence – ***See Defense Proposed Jury Instruction No. 4 (Evidence And Inferences), which is taken from the instruction given in United States v. Stern.***

i.      Credibility of Witnesses – ***See Defense Proposed Jury Instruction No. 23 (Witness Credibility), which is taken from the instruction given in United States v. Stern with the addition of a falsus in uno charge in the last paragraph.***

j.      Burden of Proof and Presumption of Innocence – ***See Defense Proposed Jury Instruction No. 5 (Presumption Of Innocence And Burden Of Proof), which is taken from the instruction given in United States v. Stern.***

k.      Jury's Recollection Governs – ***See Defense Proposed Jury Instruction No. 4 (Evidence And Inferences), which is taken from the instruction given in United States v. Stern.***

l.      Duty to Base Verdict on Evidence – ***See Defense Proposed Jury Instruction No. 1 (Role Of The Jury), which is taken from the instruction given in United States v. Stern.***

m.      Note-Taking by Jurors – ***Defendant did not specifically request an instruction on this topic but has no objection to this proposed instruction.***

n.      Right to See Exhibits and Have Testimony Read During Deliberations – ***See Defense Proposed Jury Instruction No. 36 (Concluding Instructions: Punishment, Duty To Deliberate, Communications With Court, And Unanimous Verdict), which is taken from the instruction given in United States v. Stern.***

o.      Verdict of Guilt or Innocence Must be Unanimous – ***See Defense Proposed Jury Instruction No. 36 (Concluding Instructions: Punishment, Duty To Deliberate, Communications With Court, And Unanimous Verdict), which is taken from the instruction given in United States v. Stern.***

p.      Duty of Foreperson and Return of Verdict Form – ***Defendant did not specifically request an instruction on this topic but has no objection to this proposed instruction.***

---

**Defendant's Objections To Request No. 2**

Defendant objects to Request No. 2 in its entirety and requests that the Court adopt Defense Proposed Jury Instruction Nos. 8 and 9 instead of Request No. 2.  Request No. 2 merges the purpose of the Sherman Act and the summary of the Indictment, which are separate subjects and deserve separate instructions.  In addition, Defense Proposed Jury Instruction Nos. 8 and 9 rely on instructions provided by Sand and used in *United States v. Stern*.

To the extent, however, that the Court adopts Request No. 2, Defendant requests that Request No. 2 be amended as follows for clarity and to conform more closely to the model instruction used by the Government.

---

## REQUEST NO. 2.

### Summary of the Indictment

The indictment charges a violation of a federal law known as the Sherman Act.  The purpose of the Sherman Act is to preserve free and unfettered competition in the marketplace by prohibiting certain types of agreements between competitors, so that the ~~marketplace~~ consuming public[1] may receive better products and services at lower cost.

The indictment in this case is not evidence.  It merely describes the charge made against the defendant.  It is an accusation.  It may not be considered by you as any evidence of the guilt of the defendant.

In reaching your determination of whether the government has proved the defendant guilty beyond a reasonable doubt, you may only consider the evidence introduced or the lack of evidence.

---

[1] ABA Section of Antitrust Law, Model Jury Instructions in Criminal Antitrust Cases, 45, Instr. 3-B (2009).

The defendant is not charged with committing any crime other than the single offense contained in the indictment, and the defendant has denied that he is guilty of this offense.[2]

The indictment contains a single count.[3]

The indictment alleges a single, continuing conspiracy that from at least as early as October 2010 until at least July 2013, in which the defendant, Akshay Aiyer, and his co-conspirators, violated the Sherman Act by conspiring to fix prices and rig bids for "CEEMEA" currencies, which are currencies from Central and Eastern Europe, the Middle East, and Africa, that were traded in the United States and elsewhere.

The indictment alleges that this conspiracy constituted an unreasonable restraint of trade in violation of Section One of the Sherman Act.[4]

The defendant denies the charge.[5]

---

[2] *United States v. Stern*, Final Jury Instructions at 157:2-16, 1:16-cr-00525-JGK (S.D.N.Y. June 15, 2017), Dkt. 110 (Koeltl, J.) (modified to reflect the single charge in this case).

[3] Indictment, *United States v. Aiyer*, 18-cr-333 (JGK) (S.D.N.Y. May 10, 2018).

[4] Indictment ¶¶ 20-21, *United States v. Aiyer*, No. 18-cr-333 (S.D.N.Y. May 10, 2018).

[5] Adapted from: ABA Section of Antitrust Law, Model Jury Instructions in Criminal Antitrust Cases, 45, Instr. 3-B (2009); see also Jury Instrs. at 16–17, United States v. Tokai Kogyo Co., 16- cr-63 (TSB) (S.D. Ohio Nov. 6, 2017) (Black, J.), ECF No. 235.

**Defendant's Objections To Request No. 3**

Defendant objects to Request No. 3 in its entirety and requests that the Court adopt Defense Proposed Jury Instruction No. 10 instead of Request No. 3.  Request No. 3 omits the third element of a violation of the Sherman Act:  that Defendant knowingly joined the conspiracy *with the intent to fix prices and rig bids*.  *See United States v. U.S. Gypsum Co.*, 438 U.S. 422, 443 n. 20 (1978) ("In a conspiracy, two different types of intent are generally required – the basic intent to agree, which is necessary to establish the existence of the conspiracy, and the more traditional intent to effectuate the object of the conspiracy."); *United States v. Koppers Co., Inc.*, 652 F.2d 290, 295 (2d Cir. 1981) (trial court properly instructed jury "in unequivocal terms that an essential element of the crime was a conscious agreement . . . to submit collusive, rigged bids" and "an intent to rig prices"); *United States v. Bestway Disposal Corp.*, 724 F. Supp. 62, 67 (W.D.N.Y. 1988) ("The Supreme Court has expressly stated that proof of intent is critical to sustain a criminal conviction under the Sherman Act and that this element of intent includes 'the basic intent to agree . . . and the more traditional intent to effectuate the object of the conspiracy.'") (citing *United States v. U.S. Gypsum Co.*, 438 U.S. at 443 n. 20 (1978)).

The third element of a Sherman Act violation is especially important in this case because Defendant and the cooperating witnesses are alleged to have undertaken multiple behaviors relevant to the Indictment.  The charged Sherman Act violation can be satisfied only if Defendant entered into a conspiracy with the intent to fix prices or rig bids.

To the extent, however, that the Court adopts Request No. 3, Defendant requests that Request No. 3 be amended as follows to accord with the law on the third element.

## REQUEST NO. 3.

### Elements of the Sherman Act Offense Charged

As previously stated, the indictment charges the defendant with being a member of a single, continuing conspiracy to suppress and eliminate competition for the purchase and sale of emerging markets currencies by fixing prices of, and rigging bids and offers for, those currencies, in violation of the Sherman Act.[6]

In order to establish the offense of conspiracy to fix prices and rig bids, the government must prove each of these elements beyond a reasonable doubt:

*First*, that the conspiracy described in the indictment existed at or about the time alleged, which is from at least as early as October 2010 and continuing at least through July 2013;

*Second*, that the defendant knowingly became a member of the conspiracy; ~~and~~

*Third*, that the defendant knowingly joined the conspiracy with the intent to fix prices and rig bids; and[7]

~~*Third*~~Fourth, that the conspiracy either affected interstate commerce or occurred within the flow of interstate commerce.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.[8]

---

[6] Indictment ¶¶ 20-21, *United States v. Aiyer*, No. 18-cr-333 (S.D.N.Y. May 10, 2018).

[7] Sand, *Modern Federal Jury Instructions*, Instr. 58-3 (modified to conform to Indictment).

[8] *Adapted from*: ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases*, 47, Instr. 3-C (2009); Jury Instrs. at 19–20, *United States v. Tokai Kogyo Co.*, 16-cr-63 (TSB) (S.D. Ohio Nov. 6, 2017) (Black, J.), ECF No. 235; Jury Instrs. at 20, *United States v. Peake*, No. 11-cr-00512 (DRD) (D.P.R. Jan. 25, 2013) (Domínguez, J.), ECF No. 186; *United States v. Alston*, 974 F.2d 1206, 1210 (9th Cir. 1992).

**Defendant's Objections To Request No. 4**

Defendant objects to Request No. 4 in its entirety and requests that the Court adopt Defense Proposed Jury Instruction No. 11 (First Element: The Conspiracy Charged In The Indictment Existed) instead of Request No. 4.  Request No. 4 provides an inadequate and biased description of the element of conspiracy.

Defendant further requests that Defense Proposed Jury Instruction Nos. 12 (Proof Of The Conspiracy – Proving The Agreement), 13 (Independent Action), 14 (Conscious Parallelism), and 17 (Multiple Conspiracies) be included instead of Request No. 4.  All of those proposed instructions are (or are based on) standard instructions from Sand and contain important points of law (please see the citations contained in those proposed instructions) that are required for the jury to be fully and properly instructed on the element of conspiracy.

Defendant's requested instructions are especially important given that the Government may use circumstantial evidence in its effort to prove the existence of the conspiracy.  *See, e.g.,* *In re Currency Conversion Fee Antitrust Litig.*, 773 F. Supp. 2d 351, 365–66 (S.D.N.Y. 2011) ("While a plaintiff is not required to show the existence of a written agreement to prove a § 1 claim, 'it is generally believed . . . that an express, manifested agreement ... involving actual, verbalized communication, must be proved in order for a price-fixing conspiracy to be actionable under the Sherman Act.' . . . To prove the existence of an express, manifested agreement, the antitrust plaintiff should present direct or circumstantial evidence that reasonably tends to prove that the manufacturer and others had a conscious commitment to a common scheme designed to achieve an unlawful objective.") (citing *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 654 (7th Cir. 2002) (Posner, J.) (collecting cases) (other internal citations and quotation marks omitted)).

Defendant's requested instructions (especially Defense Proposed Jury Instruction No. 17 (Multiple Conspiracies)) are also important because the Government has alleged a single, continuing conspiracy in the context of numerous forms of behaviors that the Government has identified as the subject of its expected proof.

To the extent, however, that the Court adopts Request No. 4, Defendant requests that Request No. 4 be amended as follows to state accurately the substance of the standard instruction that the Government purported to use and the case citation upon which the Government relied.

## REQUEST NO. 4.

## Conspiracy Generally

The first element that the government must prove beyond a reasonable doubt is the existence of the conspiracy, meaning that two or more persons entered into the unlawful agreement charged in the indictment. A conspiracy is a combination, an agreement, or an understanding of two or more persons to accomplish an unlawful or criminal purpose by joint action.

In order for the government to prove that a conspiracy existed, you need not find that the alleged members of the conspiracy entered into any express or formal agreement. Similarly, you need not find that the alleged conspirators stated, orally or writing, what the scheme was, its object or purpose, or every precise detail of the scheme or the means by which its object or purpose was to be accomplished. A conspiracy can be carried out through wholly innocent means.[9] Acts that are by themselves wholly innocent may be part of the sum of the acts that

---

[9] *Adapted from*: ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases*, 50, Instr. 3-D (2009); see *Am. Tobacco Co. v. United States*, 328 U.S. 781, 809 (1946).

make up a conspiracy to restrain trade in violation of the Sherman Act.[10]  What the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other to accomplish an unlawful purpose.

You may, of course, find the existence of an agreement has been established by direct proof. However, since conspiracy is, by its very nature characterized by secrecy, you may also infer its existence from the circumstances of this case and the conduct of the parties involved.

Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together and discussed common aims and interests, does not necessarily establish the existence of a conspiracy.  If actions were taken independently by them, solely as a matter of individual business judgment, without any agreement or mutual understanding among them, then there would be no conspiracy.[11]

In a very real sense, then, in the context of conspiracy cases, actions often speak louder than words. In this regard, you may, in determining whether an agreement existed here, consider whether the actions and statements of all of those you find alleged to be participants as are proof that a common design existed on the part of the conspirators to act together to accomplish an unlawful purpose. In this case, the unlawful purpose charged in the indictment is fixing prices and rigging bids of CEEMEA currencies.

---

[10] ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases*, 50, Instr. 3-D (2009); *see also Am. Tobacco Co. v. United States*, 328 U.S. 781, 809 (1946) ("Acts done to give effect to the conspiracy may be in themselves wholly innocent acts.  Yet, *if they are part of the sum of the acts* which are relied upon to effectuate the conspiracy which the statute forbids, they come within its prohibitions.") (emphasis added).

[11] ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases*, 49, Instr. 3-D (2009).

Proof of the ultimate success of the conspiracy—here, the actual fixing of prices or rigging of bids—is not required. The offense alleged here is simply the single, continuing conspiracy, or the agreement, to fix prices and rig bids of CEEMEA currencies.[12]

A conspiracy ends only when its purposes and objectives have been accomplished or all the parties to the conspiracy abandon or terminate it.[13]

[If the Court adopts Request No. 4 as amended, please insert Defense Proposed Jury Instructions Nos. 12 (Proof Of The Conspiracy – Proving The Agreement), 13 (Independent Action), 14 (Conscious Parallelism), and 17 (Multiple Conspiracies).]

---

[12] *Adapted from*: Trial Tr. at 1266–67, *United States v. Stern*, No. 16-cr-525 (JGK) (S.D.N.Y. May 25, 2017) (Koeltl, J.), ECF. No. 110; Trial Tr. at 466–72, *United States v. Ramirez*, No. 13- cr-947 (JGK) (Koeltl, J.) (S.D.N.Y. Dec. 5, 2014), ECF No. 123.

[13] ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases*, 50, Instr. 3-D (2009); *see also* Trial Tr. at 1282, *United States v. Stern*, No. 16-cr-525 (JGK) (S.D.N.Y. May 25, 2017) (Koeltl, J.), ECF. No. 110.

**Defendant's Objections To Request No. 5**

Defendant objects to Request No. 5 in its entirety and requests that the Court adopt Defense Proposed Jury Instruction No. 15 (Unlawful Object Of The Conspiracy: Price Fixing and Bid Rigging) and, with respect to the description of price fixing, Defense Proposed Jury Instruction No. 19 (Third Element: Intent To Fix Prices And Rig Bids) instead of Request No. 5. Request No. 5 provides an inadequate statement of *per se* and criminally prosecutable price fixing and omits that such a price fixing agreement must be naked and lack any legitimate business purpose. *Broad. Music, Inc. v. Columbia Broad. Sys., Inc. ("BMI")*, 441 U.S. 1, 20 (1979) (indicating that a per se price fixing violation is a "naked restrain[t] of trade with no purpose except stifling of competition") (quoting *White Motor Co. v. United States,* 372 U.S. 253, 263 (1963)); *see* citations in Defense Proposed Jury Instruction Nos. 15 (Unlawful Object Of The Conspiracy: Price Fixing and Bid Rigging) and 16A (Conduct That Is Not Price Fixing Or Bid Rigging).

  Bid rigging objection.

Defendant also objects to Request No. 5 on the ground that it includes an instruction on bid rigging when big rigging did not occur in this case. As described below, the Thomson Reuters Dealing ("Reuters") platform is a continuous marketplace in which prices and quantities are specified by offerors, not an auction in which bid prices are solicited to determine the price at which the relevant product or service will be sold. To the extent that any agreement to eliminate competition with respect to the Reuters platform occurred, such an agreement was not bid-rigging. The label applied by the Government to Defendant's conduct does not control the characterization of that conduct.

As an initial matter, the Government did not charge Mr. Cummins or Mr. Katz with bid rigging.  Information, *United States v. Katz*, No. 17-cr-003 (S.D.N.Y. Jan. 4, 2017); Information, *United States v. Cummins*, No. 17-cr-026 (S.D.N.Y. Jan. 12, 2017).  Of course, Defendant could not have "rigged bids" alone.

The cases that the Government cites in support of Request No. 5 involve a typical auction in which pricing bids were solicited to determine the price at which the proposed transaction would be completed and thus do not apply to the continuous marketplace on the Reuters platform.  *United States v. Marr*, No. 14-cr-00580-PJH, 2017 WL 1540815, at *17 (N.D. Cal. Apr. 28, 2017), and *United States v. Joyce*, 895 F.3d 673, 676 (9th Cir. 2018), involved the rigging of public real estate foreclosure auctions, and *United States v. Reicher*, 983 F.2d 168, 169 (10th Cir. 1992), and *United States v. Portsmouth Paving Corp*, 694 F.2d 312, 316 (4th Cir. 1982), involved schemes to rig the bidding processes for government contracts.

The cases below describe several characteristics of bid rigging, none of which is present in this case.  Defendant thus requests that, if the Court adopts Request No. 5, the bid rigging portion of Request No. 5 be stricken and that the Court instruct the jury that bid rigging does not apply to this case (as indicated in the track changes to Request No. 5).

<u>Bid rigging is a distinct offense.</u>

Bid rigging is a distinct antitrust offense that involves a particular harm and, upon conviction, carries a one-level sentencing enhancement over price fixing. U.S.S.G. 2R1.1(b)(1). Judge Posner (with Judge Easterbrook on the panel) analyzed the meaning of "bid rigging" under the Sherman Act to determine the applicability of the bid rigging

sentencing enhancement to an arrangement in which the prices offered by the defendant were called "bids." *United States v. Heffernan*, 43 F.3d 1144, 1145-50 (7th Cir. 1994).

Judge Posner found that selling "the most common type of [steel] drum at identical prices to two large buyers" did not constitute "bid rigging" even though those prices were labeled "bids." *Id*. at 1145, 1149-50.

Judge Posner reviewed a broad selection of bid rigging cases and concluded that "the vast majority of cases in which the term [bid rigging] has appeared have treated it as a synonym for bid rotation." *United States v. Heffernan*, 43 F.3d 1144, 1146 (7th Cir. 1994) (collecting cases).  In a bid-rotation scheme, "for each job the competitors agree which of them shall be the low bidder, and the others submit higher bids to make sure the designated bidder wins." *Id.*  Such a scheme assumes an auction setting in which pricing bids are solicited to determine the winner of the proposed transaction.

In *State of N.Y. v. Hendrickson Bros.*, 840 F.2d 1065 (2d Cir. 1988), the Second Circuit observed that bid rigging occurs in an auction setting in which pricing bids are solicited from numerous bidders and the conspiracy controls the winner of the auction:  "[B]y its nature, a bid-rigging enterprise normally requires a significant number of participants.  In order to predetermine who will win a given auction it is desirable to coopt virtually all companies that are thought likely to submit low bids." *Id.* at 1074.  *See also United States v. Koppers Co.*, 652 F.2d at 291-93 (reviewing bid rigging conviction in auction setting in which conspirators controlled auction winner).  In *In re London Silver Fixing, Ltd., Antitrust Litig.*, 213 F. Supp. 3d 530 (S.D.N.Y. 2016), the court dismissed a claim for bid rigging because it did not involve "a bidding process for any particular contract, project, or transaction." *Id.* at 564.

Both the Sand and ABA Model Jury Instructions contemplate that bid rigging involves an auction in which a discrete job or contact is awarded on the basis of bids in contrast to a marketplace in which the price is specified by the provider of the product or service:  Bid rigging is "an agreement between two or more persons to eliminate, reduce, or interfere with competition *for a job or contract that is to be awarded on the basis of bids*."  Sand, *Modern Federal Jury Instructions*, Instr. 58-13 (emphasis added); ABA Section of Antitrust Law, *Model Criminal Jury Instructions*, Instr. 3-G ("A conspiracy to rig bids is an agreement between two or more persons to eliminate, reduce, or interfere with competition *for a job or contract that is to be awarded on the basis of bids*.") (emphasis added).  *See also Alpha Sch. Bus Co. v. Wagner*, No. 03 C 5009, 2004 WL 1368804, at *5 (N.D. Ill. June 17, 2004) ("Bid rigging or bid rotation occurs when two or more competitors agree which of them should be the low bidder for a particular job, and the others submit higher bids to make sure the designated bidder wins.")  (citing *Heffernan*, 43 F.3d at 1146).

Professor Hovenkamp distinguishes ordinary price fixing from bid rigging.  As an example of ordinary price fixing, he proposes "three grocers" who "fixed the price of tomatoes" by "post[ing] the fixed price at their stores" for "customers [who] would walk in and purchase or decline to purchase at the fixed price."  12 Herbert Hovenkamp, *Antitrust Law*, § 2005a (3d ed.).  Bid rigging, in contrast, occurs "in auction markets, where the customer solicits a bid from numerous rivals."  *Id.*

In distinguishing bid rigging from ordinary price fixing (or as a distinct form of price fixing), Professor Hovenkamp recognizes that bid rigging is thought to be more harmful than ordinary price fixing because the conspirators control the outcome of the transaction and can detect cheating easily:  "In a bid-rigging scheme, … the *winning bidder is selected by the*

*cartel*, and any *cheating will be detected immediately* because the bid will be won by the cheater rather than the designated winner." *Id.* at § 2005b (emphasis added). Judge Posner similarly observed that the ability of a bid rigging conspiracy to detect cheating easily and promptly "firms up the conspiracy." *Heffernan*, 43 F.3d at 1149.

In light of the above, bid rigging involves a setting in which: (1) prices are solicited in the form of bids, (2) for a particular contract, product, or service, (3) whose price is unspecified and is to be determined by the bidding. Bid rigging also involves a conspiracy in which (1) the participants agree to submit or withhold bids, (2) by which they control and determine the winning bidder, who subsequently compensates the losing bidders.

<u>Bid rigging did not occur in this case.</u>

In this case, the Government contends that bid rigging consists of coordinated conduct in the making of bids and offers on the Reuters platform. *See, e.g.,* Mem. Opp. Def.'s Mot. Dismiss Indictment at 5-6, *United States v. Aiyer* (No. 18-cr-0333 S.D.N.Y. Apr. 19, 2019) ECF No. 55. The Indictment acknowledges that all offers and bids on the Reuters platform are fully specified as to price and quantity. (Indictment ¶¶ 3, 10) As in any marketplace (*e.g.,* a grocer selling tomatoes), a counterparty simply accepts (or declines) the terms offered, and a transaction is consummated (or not). Indeed, prices on the Reuters platform are not subject even to negotiation – the are either accepted or declined as posted. No bidding occurs to determine any unspecified price (or other term) of any transaction, thereby making the Reuters platform a marketplace, not an auction, and antithetical to bid rigging.

The Reuters platform also consists of a *continuous* flow of bids and offers that differs in kind from the discrete and stand-alone job, contract, product, or service as to which bids are

solicited in a procurement auction.  The continuous trading on the Reuters platform also makes bid rigging in the antitrust sense inapplicable.

In addition, the alleged conspiracy lacks the fundamental characteristics of a bid rigging conspiracy.  The alleged conspirators could not control and determine the "winning bidder" (even if that term applied in the setting of the Reuters platform, which it does not), as they constituted only three or four dealers among potentially dozens of dealers that may have had similar buying or selling interests.  Similarly, cheating on the alleged conspiracy would be difficult to detect, as all bids and offers on Reuters are posted anonymously (Indictment ¶ 10).  One member of the conspiracy might never suspect that another member "bid against" him with a similar buying or selling interest.

In short, even if an agreement not to compete occurred with respect to trading on the Reuters platform, the agreement would not be bid rigging.  Given the inapplicability of bid rigging to the alleged conspiracy here at issue, Defendant objects to the provision of an instruction on bid rigging.  Defendant requests that, if the Court adopts Request No. 5, the bid rigging instruction be stricken from Request No. 5, that the Court instruct the jury that bid rigging does not apply to this case, and that the Court otherwise amend Request No. 5 as follows to conform to the law as applied to this case and the proper elements of a violation of Section 1 of the Sherman Act.

## REQUEST NO. 5.

### Price Fixing ~~and Bid Rigging~~

The indictment charges a conspiracy to fix prices and rig bids. If you find the government has proven such a conspiracy beyond a reasonable doubt, then it has satisfied its burden for this element.

Price fixing is a term of art under the Sherman Act.  It consists of a particular type of agreement that must be between competitors and must have no purpose other than eliminating competition in pricing.  A price fixing agreement can relate to any aspect of pricing and is presumed illegal without regard to the reasonableness of the prices fixed.[14]

A price-fixing conspiracy is an agreement or mutual understanding among two or more competitors ~~about the prices for which they will buy or sell products or services~~ to fix, control, raise, lower, maintain, or stabilize the prices charged, or to be charged, for products or services.[15] A price-fixing conspiracy is commonly thought of as an agreement to establish the same price; however, prices may be fixed in other ways. Prices are fixed if the range or level of prices is agreed upon by the conspirators. They are fixed because they are agreed upon. Thus, any agreement to raise or lower a price, to set a maximum price, ~~to eliminate a discount, to use a price list[16]~~, to stabilize prices, to set a price or price range, or to maintain a price, is unlawful.

Bid rigging, as understood under the Sherman Act, does not apply to this case.[17]

---

[14] *See* Defense Proposed Jury Instruction No. 15 (Unlawful Object Of The Conspiracy: Price Fixing and Bid Rigging) and citations therein.

[15] Sand, *Modern Federal Jury Instructions*, Instr. 58-12; ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases*, 57, Instr. 3-F (2009).

[16] Sand, *Modern Federal Jury Instructions*, Instr. 58-12; ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases*, 57, Instr. 3-F (2009).

[17] *See* Defense Proposed Jury Instruction No. 16A (Conduct That Is Not Price Fixing Or Bid Rigging) and citations therein.

~~One type of price fixing is bid rigging. A bid-rigging conspiracy is an agreement among competitors about bids or offers that are to be submitted to or withheld from a third party. Bid rigging may take the form of competitors agreeing on the amount of a bid, who should make the low bid, who should make the high bid, who should make an intentionally losing bid or who should not make any bid at all, or any other agreement that limits competition in the bidding process.~~

If you should find that the defendant entered into an agreement to fix prices ~~or rig bids~~, the fact that the defendant or his co-conspirators did not abide by the agreement, or that one or more of them may not have lived up to some aspect of the agreement, or that they may not have been successful in achieving their objectives, is no defense. The agreement is the crime, even if it is never carried out.

The aim and result of every price-fixing ~~or bid-rigging~~ conspiracy, if successful, is the elimination of one form of competition. If the conspiracy charged in the indictment is proved, it is no defense that the conspirators actually competed with each other in some manner or that they did not conspire to eliminate all competition. Nor is it a defense that the conspirators did not attempt to conspire with all of their competitors. Similarly, the conspiracy is unlawful even if it did not extend to all products traded by the conspirators or did not affect all of their customers.

If you find a price fixing agreement, y~~Y~~ou need not be concerned with whether the agreement was reasonable or unreasonable, the justifications for the agreement, or the harm, if any, done by it. It is not a defense to a price fixing agreement ~~and not relevant~~ that the parties may have acted with good motives, had a business justification, or may have thought that what they were doing was legal, or that the conspiracy may have had some good results. If there was,

in fact, a conspiracy to fix the prices ~~or rig bids~~ for CEEMEA currencies as charged, it was unlawful.

Evidence of similarity of business practices of the defendant and alleged conspirators, or the fact that they may have charged identical prices for the same products or may have made the same or similar bids, does not alone establish an agreement to fix prices, since such activities may be consistent with ordinary and proper competitive behavior in a free and open market.

The defendant and alleged co-conspirators may charge the same or similar prices or make the same or similar bids and such conduct would not violate the Sherman Act, unless you find it was done pursuant to an agreement between two or more conspirators, as alleged in the indictment.

But you may consider such facts and circumstances along with all other evidence in determining first whether the alleged price fixing ~~and bid rigging~~ resulted from the independent acts or business judgment of the defendant and alleged co-conspirators freely competing in the open market, or whether it resulted from an agreement among or between two or more of them[18], and second whether any agreement that you find was an agreement specifically to fix prices.[19]

---

[18] *Adapted from*: Trial Tr. at 2543–44, *United States v. Marr*, No. CR 15-00580 (N.D. Cal. June 2, 2017) (Hamilton, J.), ECF No. 301; *see also United States v. Joyce*, 895 F.3d 673, 676–77 (9th Cir. 2018); *United States v. Reicher*, 983 F.2d 168, 170–72 (10th Cir. 1992); *United States v. Portsmouth Paving Corp.*, 694 F.2d 312, 325 (4th Cir. 1982).

[19] Sand, *Modern Federal Jury Instructions*, Instr. No. 58-12 (modified to conform to Indictment).

**Defendant's Objections To Request No. 6**

Defendant objects to Request No. 6 in its entirety and requests that Request No. 6 not be used.  Request No. 6 is biased and will confuse the jurors, especially in light of the statute of limitations instruction, which states that an overt act within the limitations period is required. *See* Sand, *Modern Federal Jury Instructions*, Instr. No. 58-11 (Statute Of Limitations).  Request No. 6 is also unnecessary and duplicative of Request No. 4 ("Proof of the ultimate success of the conspiracy—here, the actual fixing of prices or rigging of bids—is not required. The offense alleged here is simply the single, continuing conspiracy, or the agreement, to fix prices and rig bids of CEEMEA currencies.") and Request No. 5 ("The agreement is the crime, even if it is never carried out.").

The substance of Request No. 6 is addressed in Defense Proposed Jury Instruction No. 11 (First Element: The Conspiracy Charged In The Indictment Existed) ("The agreement itself is a crime.  Whether the agreement is ever carried out, or whether it succeeds or fails, does not matter.").

To the extent, however, that the Court adopts Request No. 6, Defendant requests that Request No. 6 be amended as follows to avoid bias and confusion.

**REQUEST NO. 6.**

**Proof of Overt Act Unnecessary**

The government does not have to prove that ~~any member of the conspiracy~~the defendant actually took some overt action to further or accomplish the alleged conspiracy or that the ~~conspirators~~ defendant actually fixed prices or rigged bids.[20] The agreement itself is the crime. In

---

[20] ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases*, 69, Instr. 3-J (2009).

other words, the mere agreement or understanding to fix prices or rig bids constitutes the offense, so it is not necessary for the government to prove that the alleged conspiracy was ever actually carried out or that its objective was ever accomplished.[21]

Of course if the defendant never acted in accordance with the agreement, that is evidence that you should consider in determining whether the defendant ever joined the charged conspiracy in the first place.[22]

---

[21] *Adapted from*: ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases*, 69, Instr. 3-J (2009); *see also* Jury Instrs. at 26, *United States v. Swanson*, 06-CR-692 PJH (N.D. Cal. Mar 6, 2008) (Hamilton, J.), ECF No. 337.
[22] Sand, *Modern Federal Jury Instructions*, Instr. No. 58-12.

**<u>Defendant's Objections To Request No. 7</u>**

Defendant objects to Request No. 7 in its entirety and requests that the Court adopt Defense Proposed Jury Instruction No. 18 (Second Element: Knowingly Joining And Participating In The Conspiracy) and Defense Proposed Jury Instruction No. 19 (Third Element: Intent To Fix Prices And Rig Bids) instead of Request No. 7.

Request No. 7 improperly merges two distinct elements in a Sherman Act violation: that a conspiracy was knowingly joined and that Defendant had the intent to fix prices or rig bids. *United States v. U.S. Gypsum Co.*, 438 U.S. at 443 n. 20 ("In a conspiracy, two different types of intent are generally required – the basic intent to agree, which is necessary to establish the existence of the conspiracy, and the more traditional intent to effectuate the object of the conspiracy."); *United States v. Koppers Co*, 652 F.2d at 295 (trial court properly instructed jury "in unequivocal terms that an essential element of the crime was a conscious agreement . . . to submit collusive, rigged bids" and "an intent to rig prices"); *United States v. Bestway Disposal Corp.*, 724 F. Supp. at 67 ("The Supreme Court has expressly stated that proof of intent is critical to sustain a criminal conviction under the Sherman Act and that this element of intent includes 'the basic intent to agree . . . and the more traditional intent to effectuate the object of the conspiracy.'") (citing *United States v. U.S. Gypsum Co.*, 438 U.S. at 443 n. 20)).

Presenting separately the third element of a Sherman Act violation in this case is especially important because Defendant and the cooperating witnesses are alleged to have undertaken multiple behaviors relevant to the Indictment. The charged Sherman Act violation can be satisfied only if Defendant entered into a conspiracy with the intent to fix prices or rig bids.

To the extent, however, that the Court adopts Request No. 7, Defendant requests that Request No. 7 be amended as follows to conform with the law (including on the third element and standard instructions), eliminate bias, and avoid implied references to compensation that have been excluded.

Defendant recognizes that the description of price fixing that Defendant has added to Request No. 7 duplicates in part the description of price fixing in Request No. 5. That duplication may be eliminated by the Court's selection of proposed jury instructions. If the duplication is not eliminated in that manner, it can be stricken from the final compilation of jury instructions.

## REQUEST NO. 7.

### Second And Third Elements: Knowingly Joined With The Intent To Fix Prices

The second element, which the government must prove beyond a reasonable doubt to establish the offense charged, is that the defendant knowingly joined the conspiracy. To act "knowingly" means to act voluntarily and intentionally, and not because of a mistake, accident, or other innocent reason.[23] So, if you are satisfied that the conspiracy charged in the indictment existed, you must ask yourself who the members of the conspiracy were.

To determine whether the defendant was, if in fact, a member of the conspiracy, you must decide whether he knowingly joined the conspiracy. In other words, did he agree to it with knowledge of its purpose – here, price fixing and bid rigging – and with the intent of furthering that purpose?[24]

---

[23] ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases*, 71, Instr. 3-K (2009).

[24] *Salinas v. United States*, 522 U.S. 52, 65 (1997) ("A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor.").

24

~~In that regard, it has been said that in order for a defendant to be deemed a member of a conspiracy, he must have had a stake in the venture or its outcome. You are instructed that, while proof of a financial interest in the outcome of a scheme is not essential, if you find that the defendant had such an interest, that is a factor which you may properly consider in determining whether or not the defendant was a member of the conspiracy.~~

As I explained, before the defendant can be found to have been a conspirator, you must first find that he knowingly joined in the unlawful agreement or plan. The key question, therefore, is whether the defendant joined the conspiracy with an awareness of ~~at least some of~~ its basic aims and purposes.

It is important to note that the defendant's membership in the conspiracy must be established by evidence of his own acts or statements as well as those of the other alleged co-conspirators, and the reasonable inferences which may be drawn from them.

The defendant's knowledge is a matter of inference from the facts proven. In that connection, I instruct you that to become a member of the conspiracy, the defendant need not have known the identities of each and every other member, nor need he have been apprised of all of their activities. Moreover, the defendant need not have been fully informed as to all of the details, or the full scope, of the conspiracy in order to justify an inference of knowledge on his part. Furthermore, the defendant need not have joined in all of the conspiracy's unlawful objectives.

The extent of the defendant's participation has no bearing on the issue of his guilt. A conspirator's liability is not measured by the extent or duration of his participation. Indeed, each member may perform separate and distinct acts and may perform them at different times. Some conspiracy members play major roles, while others play minor parts in the scheme. An equal role

is not what the law requires. In fact, because proof of an overt act is unnecessary, a defendant may join a conspiracy without taking any act in furtherance of it.

I want to caution you, however, that the defendant's mere presence at the scene of an alleged crime does not, by itself, make him a member of the conspiracy. Similarly, mere association with one or more members of the conspiracy does not automatically make the defendant a member. A person may know, or be friendly with, a criminal, without being a criminal himself. Mere similarity of conduct or the fact that they may have assembled together and discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy.

I also want to caution you that mere knowledge of the unlawful plan, without agreement to it, is not sufficient. Moreover, the fact that the acts of the defendant merely happened to further the purposes or objectives of the conspiracy does not make the defendant a member.

More is required under the law. What is necessary is that the defendant must have agreed to at least some of the purposes or objectives of the conspiracy with the intention of aiding in the accomplishment of those unlawful ends. Here, the alleged purpose of the conspiracy was to fix prices and rig bids.[25]

In sum, the defendant, with an understanding of the purpose of the conspiracy, must have agreed with others to accomplish that purpose. The defendant thereby becomes a knowing member in the unlawful agreement—that is to say, a conspirator.

If you find that the defendant joined the conspiracy with the necessary intent, which I am about to explain[26], then the defendant is responsible for all actions taken in furtherance of the

---

[25] Indictment ¶¶ 20-21, *United States v. Aiyer*, No. 18-cr-333 (S.D.N.Y. May 10, 2018).
[26] Sand, *Modern Federal Jury Instructions*, Instr. No. 58-12.

conspiracy until the conspiracy has been completed or abandoned or until the defendant has withdrawn from the conspiracy.[27]

The third element that the government must prove beyond a reasonable doubt is that the defendant joined the conspiracy with the intent to fix prices and rig bids.  I previously noted that bid rigging does not apply to this case. To find the defendant guilty, you must find that he entered the conspiracy with the intent to fix prices.

[If the Court adopts Request No. 5 as amended, please insert:  "I have previously described what a price fixing agreement is."]

[If the Court adopts Defense Proposed Jury Instruction No. 15 instead of Request No. 5, and the Court adopts Request No. 7 as amended above, please proceed to insert the remainder of Defense Proposed Jury Instruction No. 19 as follows:

It is thus important to understand what a price fixing conspiracy is.  A price fixing conspiracy is an agreement or mutual understanding between two or more competitors to fix, control, raise, lower, maintain, or stabilize the prices charged for products or services.  Although a price fixing conspiracy is usually thought of as an agreement among competitors to establish the same price, prices may be fixed in other ways.  Prices are fixed if the range or level of prices is agreed upon or if, by agreement, various formulas are used in computing them.  Put simply, prices are "fixed" when they are agreed upon.  Thus any agreement to fix prices is a price fixing conspiracy.

As I have told you, the goal of every price fixing conspiracy is the elimination of one form of competition – competition over price.  Therefore, if you find that the charged price

---

[27] *Adapted from*: *Adapted from*: Trial Tr. at 1279–1282, *United States v. Stern*, No. 16-cr-525 (JGK) (S.D.N.Y. May 25, 2017) (Koeltl, J.), ECF. No. 110; ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases*, 72, Instr. 3-K (2009).

fixing conspiracy existed, it does not matter whether the prices agreed upon were high, low, reasonable or unreasonable.  What matters is that the prices were fixed.

Moreover, it is no defense that the conspirators actually competed with each other in some manner, or that they did not conspire to eliminate all competitors.  Every conspiracy to fix prices unlawfully and unreasonably restrains trade regardless of the motives of the conspirators or any economic justification they may offer.

Similarly, if you find that the defendant did knowingly and voluntarily enter into the charged agreement to fix prices, you may find the defendant intended to unreasonably restrain trade even if you find that the defendant, or any of the other conspirators, did not observe the agreement.  What is important is that the defendant entered into the agreement charged.  The agreement is the crime, even if it is never carried out.  Of course, if the defendant never acted in accordance with the agreement, that is evidence that you should consider in determining whether the defendant ever joined the charged conspiracy in the first place.

I caution you, however, that the fact that competitors may have charged identical prices, copied each other's price lists, conformed exactly to another's price policies, or exchanged information about prices does not establish a violation of the Sherman Act unless they did any of these things because of an agreement or arrangement or understanding as alleged in the indictment.  Therefore, similarity or identity of prices charged does not alone establish the existence of a price fixing conspiracy.  You should consider all of the evidence, giving it the weight and credibility you think it deserves, when determining whether similarity of pricing resulted from independent acts of traders competing freely in the open market or whether it

resulted from mutual agreement or understanding between two or more conspirators as alleged in the indictment.][28]

---

[28] Sand, *Modern Federal Jury Instructions*, Instr. No. 58-12.

---

**Defendant's Objections To Request No. 8**

*No objection.*

---

### REQUEST NO. 8.

### Interstate Commerce

The ~~third~~ fourth element of a Sherman Act offense is that the alleged unlawful conduct must involve interstate trade or commerce.

The term "trade or commerce" embraces a wide array of economic activity, including, for instance, the production and movement of goods; the provision of services; the transportation of persons and property; the transmission of money; and the purchase and sale of commodities and securities. I will refer "trade or commerce" simply as "commerce."

The term "interstate commerce" includes transactions that move across state lines or that are in a continuous flow of commerce from the commencement of their journey in one state until their final destination in a different state. The conspiracy charged in the indictment occurred in the flow of interstate commerce if at least one defendant or one co-conspirator, in carrying out the charged conspiracy, crossed state lines, if the subject products or funds crossed state lines, or if any of the activities of the charged conspiracy were an essential part of a transaction across state lines. Funds transmitted in interstate commerce are considered in commerce until they reach the point where their movement is intended to end. A temporary pause in their transit does not necessarily mean that the funds are no longer in commerce. Where there is a practical continuity of movement, funds remain in commerce until they reach their final destination. If the conduct challenged in the indictment involves transactions that are in the flow of commerce

across state lines, the interstate commerce element is satisfied and the size of any such transaction is of no significance.

The term "interstate commerce" also includes transactions that occur entirely within a state and are not part of a larger interstate transaction, if the conduct challenged in the indictment had (or had the potential to have) a substantial effect on some other appreciable activity occurring in interstate commerce. A conspiracy may have such an effect even though some or all of the conspirators do not themselves engage in interstate commerce and have confined their activities to a single state. Even where the conspirators' activities may have been completely local in nature, you may find that the conspiracy involved interstate commerce if the restraint imposed, or the conspirators' activities infected by the restraint, affected a not insubstantial amount of commerce among the states.

If the conspiracy did not successfully impose a restraint, you may still find that the conspiracy involved interstate commerce if the conspiracy, had it been successful, would have affected a not insubstantial amount of commerce among the states.

Although the government must prove beyond a reasonable doubt that the conspiracy charged in the indictment occurred within the flow of, or substantially affected, interstate commerce, the government's proof need not quantify or value any adverse impact of the charged conspiracy or show that the charged conspiracy had any anticompetitive effect.

Proof of interstate commerce as to any co-conspirator in the conspiracy charged in the indictment satisfies the interstate-commerce element as to every co-conspirator, including the defendant.[29]

---

[29] *Adapted from:* ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases*, 82–83, Instr. 3-N (2009); *see also McLain v. Real Estate Bd. Of New Orleans*, 444 U.S. 232, 241–45 (1980); *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 787–88 (1975); Final Jury Instrs. at 24, *United States v. Marr*, No. CR 15-00580 (N.D. Cal.

---

**Defendant's Objections To Request No. 9**

Defendant objects to Request No. 9 in its entirety and requests that the Court adopt Defense Proposed Jury Instruction No. 20 (Exchanges Of Information) instead of Request No. 9 on the ground that Request No. 9 is biased and omits a reference to the exchange of customer information.  Defense Proposed Jury Instruction No. 20 is based on Sand, *Modern Federal Jury Instructions*, Instr. 58-12.1 and other established authority.

To the extent, however, that the Court adopts Request No. 9, Defendant requests that Request No. 9 be amended as follows to avoid bias and reference the exchange of customer information.

---

## REQUEST NO. 9.

### Exchanges of Information

Evidence has been introduced concerning the exchange of information between the defendant and alleged co-conspirators. ~~The government claims that such exchanges are part of the evidence establishing that the defendant and co-conspirators entered into an agreement or mutual understanding to fix prices and rig bids, as charged in the indictment.~~

It is not inherently unlawful for a person to obtain information from a competitor or even to exchange information with that competitor about prices unless done pursuant to an agreement or mutual understanding between two or more persons to fix prices and rig bids as charged in the indictment. Nevertheless, you may consider such facts and circumstances, along with other

---

June 2, 2017) (Hamilton, J.) (flow theory), ECF No. 293; Instrs. at 29, *United States v. Peake*, No. 3:11-cr-00512 (D.P.R. Jan. 25, 2013) (J. Domínguez) (flow theory), ECF No. 186.

evidence, in determining whether there was an agreement or mutual understanding between two or more persons to fix prices and rig bids as charged in the indictment.[30]

Evidence has also been introduced concerning the exchange of information among the defendant and alleged coconspirators about certain specific customers and, in some cases, prices offered to those customers.  That exchange of information, by itself, was not unlawful. Moreover, to the extent that a trader used that information unilaterally to refuse to do business with a customer in order to protect his own business interests, that action also was not unlawful.[31]

---

[30] *Adapted from*: Tr. of Record at 2295–96, 2297, *United States v. Swanson*, CR-06-0692-PJH (N.D. Cal. Feb. 22, 2008).

[31] *See* citations to Defense Proposed Jury Instruction No. 20 (Exchanges Of Information).

---

**Defendant's Objections To Request No. 10**

Defendant objects to Request No. 10 in its entirety and requests that Request No. 10 not be used.  Request No. 10 is biased and will confuse the jurors, especially in light of the third element of a Sherman Act violation that requires an intent to fix prices.  Request No. 10 is also unnecessary and duplicative of Request No. 4.

To the extent, however, that the Court adopts Request No. 10, Defendant requests that Request No. 10 be amended as follows to accord with the law and to avoid bias and confusion.

---

## REQUEST NO. 10.

### Ignorance of Antitrust Laws/Good Faith No Defense

It is not necessary for the government to prove that the defendant knew that an agreement, combination, or conspiracy to fix prices and rig bids, as charged in the indictment, is a violation of the law. Thus, if you find beyond a reasonable doubt from the evidence in the case that the defendant knowingly joined the conspiracy with the intent to fix prices and rig bids[32], as charged in the indictment, then the fact that the defendant believed in good faith that what was being done was not unlawful is not a defense.[33]

---

[32] Sand, *Modern Federal Criminal Jury Instructions*, Instr. 58-12 (modified to conform to Indictment).

[33] *Adapted from*: ABA Section of Antitrust Law, *Model Criminal Antitrust Jury Instructions*, 76, Instr. 3-L (2009); *see also* Trial Tr. at 4719, *United States v. AU Optronics Corp.*, No. 09-cr- 00110-SI (N.D. Cal. Feb. 27, 2012) (Illston, J.), ECF No. 822; *United States v. Cont'l Grp., Inc.*, 603 F.2d 444, 464 (3d Cir. 1979).

---

**Defendant's Objections To Request No. 11**

***No objection.***

---

### REQUEST NO. 11.

### Venue

In addition to all of the elements I have described to you, the government must also prove that venue is proper in this judicial district, that is, the Southern District of New York. I instruct you that the Southern District of New York includes Manhattan, the Bronx, Westchester, Duchess, Putnam, Orange, Sullivan and Rockland Counties, the waterways to the east, and all of the bridges that traverse those waterways, including the Verrazano-Narrows Bridge, which traverses the narrows, the body of water separating Staten Island and Brooklyn.

In this regard, the government need not prove that the crime itself was committed in this district or that the defendant himself was present here. It is sufficient to satisfy this element if the government proves by a preponderance of the evidence that any act in furtherance of the crime was committed in the Southern District of New York. With respect to the charged conspiracy, this means that you must decide whether the unlawful agreement, or any act committed to further or promote the conspiracy, occurred within the Southern District of New York. It does not matter whether the act was committed by the defendant or an alleged co- conspirator.

I discussed this issue separately from the elements of the crimes because it requires a different standard of proof. On this issue of venue, and on this issue alone, the government must prove venue by a preponderance of the evidence—that is, that it is more likely than not—and not by proof beyond a reasonable doubt.

If you find that the government has failed to prove this venue requirement, then you must

acquit the defendant.[34]

---

[34] *Adapted from*: Trial Tr. at 1285–87, *United States v. Stern*, No. 16-cr-525 (JGK) (S.D.N.Y. May 25, 2017) (Koeltl, J.), ECF. No. 110; *see also United States v. Gonzalez*, 922 F.2d 1044, 1054–55 (2d Cir. 1991) (affirming that venue is governed by a preponderance standard).

<div style="border:1px solid black">

**<u>Defendant's Objections To Request No. 12</u>**

***No objection.***

</div>

## REQUEST NO. 12.

### <u>Proof of Motive Not Required</u>

Proof of motive is not a necessary element of the crime with which the defendant is charged. Proof of motive does not establish guilt, nor does a lack of proof of motive establish that a defendant is not guilty.

If the guilt of a defendant is shown beyond a reasonable doubt, it is immaterial what the motive for the crime may be, or whether any motive be shown, but the presence or absence of motive is a circumstance that you may consider as bearing on the intent of a defendant.[35]

---

[35] Sand, *Modern Federal Jury Instructions-Criminal* ¶ 6-06, Instr. 6-18 (2019).

**Defendant's Objections To Request No. 13**

Defendant objects to Request No. 13 in its entirety and requests that the Court adopt

Defense Proposed Jury Instruction No. 16A (Conduct That Is Not Price Fixing Or Bid

Rigging) instead of Request No. 13.  Defense Proposed Jury Instruction No. 16A reads (with

footnotes):

"I instruct you that the following conduct is not price fixing or bid rigging[36]:

- Coordinated trading in the interdealer market, including by refraining from trading, or staying out of the way, to let another Rand Chat Room member trade,[37] or by 'spoofing' or cancelling trades on behalf of one another[38]; and

- Coordinated trading in the Russian Ruble."[39]

If the Court does not adopt Defense Proposed Jury Instruction No. 16A (Conduct That

Is Not Price Fixing Or Bid Rigging), then Defendant requests that the Court adopt Defense

---

[36] *Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.* ("*BMI*"), 441 U.S. 1, 9 (1979) (noting that "easy labels do not always supply ready answers" and that "it is necessary to characterize the challenged conduct as falling within or without that category of behavior to which we apply the '*per se* price-fixing.'").

[37] *In re Sulfuric Acid Antitrust Litigation*, 703 F.3d 1004, 1011 (7th Cir. 2012) ("shutdown" non-compete agreements were not per se illegal, as plaintiffs' claimed, because they assisted in introducing Canadian sulfuric acid to the U.S. and were "plausibly argued to increase competition or other economic values on balance."); *Polk Bros., Inc. v. Forest City Enterprises, Inc.*, 776 F.2d 185, 190 (7th Cir. 1985) (holding per se rule inapplicable to non-compete agreement in lease because the non-compete was arguably "part of a cooperative venture with prospects for increasing output."); *Sitkin Smelting & Refining Co., Inc. v. FMC Corp.*, 575 F.2d 440, 446 (3d Cir. 1978) (sham bidding agreement between property owner and preferred bidder was not a per se violation); *Granite Partners, L.P. v. Bear, Stearns & Co.*, 58 F. Supp. 2d 228, 246 (S.D.N.Y. 1999) (scheme among brokers to offer each other low bids was not per se bid rigging given the circumstances); *Branta, LLC v. Newfield Prod. Co.*, 310 F. Supp. 3d 1166 (D. Co. 2018) (finding the evidence did not support the existence of an illegal bid-rigging agreement given that it was industry custom and practice to refrain from bidding and because bidding in these circumstances would have been economically irrational); *Dahl v. Bain Capital Partners, LLC*, 937 F. Supp. 2d 119, 136 (D. Mass. 2013) (evidence that defendants at times engaged in joint bidding or the formation of bidding consortiums did not support inference of overarching per se conspiracy).

[38] *Apex Oil Co. v. DiMauro*, 713 F. Supp. 587, 595 (S.D.N.Y. 1989) ("acts that may be tortious, fraudulent, or violative of contracts between the parties do not, without more, fall within the ken of the antitrust laws.").

[39] *Leegin Creative Leather Prods., Inc., v. PSKS, Inc.*, 551 U.S. 877, 882 (2007) ("[V]ertical price restraints are to be judged by the rule of reason"); *United States v. Apple*, 791 F.3d 290, 314 n.15 (2d Cir. 2015) ("the plaintiff must also prove the existence of a 'rim' to the wheel in the form of an agreement among the horizontal competitors") (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 203-04 (4th Cir. 2002)); *Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, No. 10 CIV. 8 DAB, 2011 WL 1044898, at *2 (S.D.N.Y. Mar. 10, 2011) ("[C]laims alleging a vertical relationship or mixed vertical and horizontal relationships must be evaluated under the rule of reason."), *aff'd on other grounds*, 711 F.3d 68 (2d Cir. 2013).

Proposed Jury Instruction No. 16B (Spoofing And Cancelled Trades) instead of Request No.

13.  Defense Proposed Jury Instruction No. 16B reads:

"'Spoofing'" conduct or cancelled trades do not constitute the charged criminal

conspiracy.  You may not return a verdict of guilty solely because you find the Defendant,

alone or in combination with others, engaged in spoofing or trades that were subsequently

cancelled."[40]

Defendant's proposals reflect the law relevant to Section 1 of the Sherman Act, per the

citations contained in Defense Proposed Jury Instruction No. 16A, and a clearer statement of

the law as applied to "spoofing" and cancelled trades, as conceded by the Government, than

Request No. 13.

Request No. 13 uses such ambiguous terms as "complete the story" and refers to

"motive," "knowledge," and "intent" with regard to actions that the Government concedes do

not constitute the offense charged.  Such references are likely to confuse the jury, are biased in

favor of prosecution, and lack the clarity of the instruction that the jury "may not return a

verdict of guilty solely because you find the Defendant, alone or in combination with others,

engaged in spoofing or trades that were subsequently cancelled."

## REQUEST NO. 13.

## Limiting Instruction: Spoofing

Spoofing conduct or cancelled trades do not, by themselves, constitute the charged

criminal conspiracy. Such evidence is admitted solely to complete the story of the charged

[40] Transcript on Oral Argument for Motions in Limine at 29:22-25, *United States v. Aiyer*, 18-cr-333 (JGK) (S.D.N.Y. Sept. 24, 2019) ("If the defendant wishes, the court will give the limiting instructions suggested by the government at page 10 of its brief *or any reasonable instructions suggested by the defendant.*") (emphasis added).

conspiracy—to demonstrate the relationship between defendant and his co-conspirators, his motive for joining the conspiracy, and his knowledge of, and intent to advance, its purpose.

**Defendant's Objections To Request No. 14**

Defendant objects to Request No. 14 in its entirety and requests that the Court adopt Defense Proposed Jury Instruction No. 21 (Statute of Limitations), which is taken from Sand, instead of Request No. 14.

Request No. 14 omits the legal requirement of evidence of an act in furtherance of the conspiracy within the limitations period.  *United States v. Brown*, 936 F.2d 1042, 1048 (9th Cir. 1991) (finding jurors were properly instructed that they had to find that a member committed an overt act in furtherance of the conspiracy within the limitations period); *United States v. A-A-A Electrical Co.*, 788 F.2d 242, 245 (4th Cir. 1986) (noting that the statute of limitations on a Sherman Act conspiracy "begins to run, not from the date of the legally cognizable harm, but from the date of the last overt act") (citations omitted); *United States v. Inryco, Inc.*, 642 F. 2d 290, 293 (9th Cir. 1981) (The statute of limitations on an antitrust conspiracy "does not run so long as the co-conspirators engage in overt acts designed to accomplish its objectives.") (citation omitted).

The second sentence of the first paragraph of Request No. 14 is inaccurate in the context of an instruction on the statute of limitations.

To the extent, however, that the Court adopts Request No. 14, Defendant requests that Request No. 14 be amended as follows to conform more closely to the model instruction used by the Government and to the law.

## REQUEST NO. 14.

### Statute of Limitations

In regard to the timing of the alleged conspiracy, the indictment charges that the alleged conspiracy began at least as early as October 2010 and continued until at least July 2013.  ~~It is~~

~~not necessary that the government prove that the conspiracy started or ended on a particular date,~~ ~~as long as it proves beyond a reasonable doubt that the conspiracy was formed and existed at~~ ~~some point during the period covering October 2010 until July 2013.~~

The grand jury returned its indictment of the defendant on May 10, 2018. There is a five-year statute of limitations which applies to the offense charged here. This means that the defendant cannot be found guilty unless you find beyond a reasonable doubt that the conspiracy existed at least some point within the statute of limitations, which, for purposes of this case, is the period beginning May 10, 2013 and continuing until May 10, 2018.[41] ~~the government must prove that the conspiracy was in existence for some period from and after May 10, 2013. If the government fails to so prove, you must find the defendant not guilty.~~

You may consider evidence of the defendant's conduct prior to May 10, 2013, insofar as it tends to prove or disprove the existence of the conspiracy and the defendant's acts after that date.[42] ~~In determining whether the alleged conspiracy continued to exist after May 10, 2013, you may consider proof of acts and statements of the defendant and his alleged conspirators both before May 10, 2013 and after May 10, 2013.~~[43]

If you find that the conspiracy charged in the indictment began before May 10, 2013, then, in order to convict the defendant, you must also find that one or more of the members of the conspiracy performed some act in furtherance of the conspiracy after that date. Evidence of acts committed before May 10, 2013 is not evidence that any acts in furtherance of the charged conspiracy were committed after that date.[44]

---

[41] ABA Section of Antitrust Law, *Model Criminal Antitrust Jury Instructions*, 89, Instr. 4-A.2. (2009).
[42] ABA Section of Antitrust Law, *Model Criminal Antitrust Jury Instructions*, 89, Instr. 4-A.2. (2009).
[43] *Adapted from:* Trial Tr. at 2906, *United States v. Connolly*, No. 16-cr-370 (CM) (S.D.N.Y. Oct. 16, 2018) (McMahon, J.), ECF. No. 384; ABA Section of Antitrust Law, *Model Criminal Antitrust Jury Instructions*, 89, Instr. 4-A.2. (2009).
[44] Sand, *Modern Federal Jury Instructions*, Instr. 58-11.

---

**Defendant's Objections To Request No. 15**

Defendant objects to Request No. 15 in its entirety and requests that Request No. 15 not be used.  Request No. 15 is unnecessary and contradicts Request No. 14 (Statute of Limitations) insofar as Request No. 15 states that "It does not matter if the indictment charges that a specific act occurred on or about a certain date, and the evidence indicates that, in fact, it was on another date."

To the extent, however, that the Court adopts Request No. 15, Defendant requests that Request No. 15 be amended as follows to accord with the law and to avoid bias and confusion.

---

### REQUEST NO. 15.

### Variance in Dates

The indictment charges that the alleged conspiracy began "at least as early as October 2010" and continued through "at least July 2013." ~~It does not matter if the indictment charges that a specific act occurred on or about a certain date, and the evidence indicates that, in fact, it was on another date.~~ The law only requires a substantial similarity, between the dates alleged in the indictment and the date established by testimony or exhibits.[45] except that, as I just said, the government must prove that one or more of the members of the conspiracy performed some act in furtherance of the conspiracy after May 10, 2013.[46] Evidence of acts committed before May 10, 2013 is not evidence that any acts in furtherance of the charged conspiracy were performed after that date.[47]

---

[45] *Adapted from:* Trial Tr. at 2906, *United States v. Connolly*, No. 16-cr-370 (CM) (S.D.N.Y. Oct. 16, 2018) (McMahon, J.), ECF. No. 384; ABA Section of Antitrust Law, *Model Criminal Antitrust Jury Instructions*, 89, Instr. 4-A.2. (2009).

[46] Sand, *Modern Federal Jury Instructions*, Instr. No. 58-11.

[47] Sand, *Modern Federal Jury Instructions*, Instr. No. 58-11.

**Defendant's Objections To Request No. 16**

Defendant objects to Request No. 16 in its entirety and requests that the Court adopt Defense Proposed Jury Instruction No. 24 (Plea Agreements), which is adapted from and closely follows the instruction given in *United States v. Stern*, instead of Request No. 16.

Request No. 16 improperly states that jurors have heard testimony from witnesses "who testified that they committed crimes and that they were actually involved in the crime charged in the indictment."  That statement is prejudicial because: (1) Mr. Katz and Mr. Cummins each pleaded guilty to a conspiracy beginning in 2007 and continuing until 2013, and Mr. Aiyer was charged with a conspiracy from 2010 to 2013; (2) Mr. Cummins and Mr. Katz pleaded guilty to a conspiracy only to fix prices, not to rig bids, and Mr. Aiyer was charged with a conspiracy both to fix prices and to rig bids; and (3) Mr. Katz and Mr. Cummins each pleaded guilty to an Information that included as means and methods fictitious trades and triggering their customers' limit orders, and the Indictment charging Mr. Aiyer did not contain either behavior as a means or method.  (*Compare* Information, *United States v. Katz*, No. 17-cr-003 (S.D.N.Y. Jan. 4, 2017) and Information, *United States v. Cummins*, No. 17-cr-026 (S.D.N.Y. Jan. 12, 2017) *with* Indictment, *United States v. Aiyer*, No. 17-cr-333 (S.D.N.Y. May 10, 2018)).

To the extent, however, that the Court adopts Request No. 16, Defendant requests that Request No. 16 be amended as follows to eliminate bias and inaccurate statements.

## REQUEST NO. 16.

### Cooperating Witnesses

You have heard testimony from Jason Katz and Chris Cummins, witnesses who are cooperating with the government.  Mr. Katz and Mr. Cummins pleaded guilty to criminal charges.[48]  ~~You have heard witnesses who testified that they committed crimes and that they were actually involved in the crime charged in the indictment.~~ The government must sometimes rely on the testimony of witnesses who admit to participating in crimes and who agreed to cooperate with the government in the hope of receiving leniency at sentencing. There is nothing wrong with the government's use of cooperating witnesses. Were it not permitted, there would be occasions when crimes might go undetected or unproven. So, you may consider the testimony of such a witness and, indeed, in federal courts the testimony of a single cooperating witness may be enough to satisfy you of a defendant's guilt beyond a reasonable doubt.

However, cooperating witness testimony should be scrutinized by you with great care and viewed with particular caution as you decide how much of it to believe. You are allowed to consider the fact that a witness is cooperating with the government, and is hoping for leniency, as you decide whether or not you believe that witness.

It doesn't necessarily follow that a person who has admitted to participating in crimes is incapable of giving truthful testimony. Like the testimony of any other witness, a cooperating witness's testimony should be given such weight as it deserves in light of all the facts and circumstances, taking into account the witness's demeanor and candor, the strength and accuracy of his recollection, his background, and the extent to which the testimony is or is not corroborated by other evidence.

---

[48] *United States v. Stern*, Final Jury Instructions at 204:25-205:8, 1:16-cr-00525-JGK (S.D.N.Y. June 15, 2017), Dkt. 110 (Koeltl, J.) (modified based on plea agreements).

You also heard testimony about agreements that have been reached between the government and the cooperating witnesses. It is no concern of yours why the government made an agreement with anyone. Your sole concern is whether the witness has given truthful testimony here in the courtroom. That said, when you're determining a cooperating witness's credibility, you may consider the existence of the agreement and any effect you think it had on the witness's truthfulness.  In evaluating the testimony of a cooperating witness, you should ask yourself whether that person would benefit more by lying or by telling the truth. Was the witness's testimony made up in any way because the witness believed or hoped that he or she would somehow receive favorable treatment by testifying falsely, or did the witness believe that his interests would be best served by testifying truthfully? If you believe that a witness was motivated by the hope of personal gain, was the motivation one that would cause the witness to lie or was it one that would cause him or her to tell the truth? And did this motivation actually color the witness's testimony?

If you find that the testimony a cooperating witness was false, you should reject it.

However, if after cautious and careful examination of a cooperating witness's testimony and the witness's demeanor on the stand, you are satisfied that the witness told the truth, you are free to accept his testimony as credible and act on it accordingly.[49]

---

[49] Trial Tr. at 2878–80, *United States v. Connolly*, No. 16-cr-370 (CM) (S.D.N.Y. Oct. 16, 2018) (McMahon, J.), ECF No. 384.

**Defendant's Objections To Request No. 17**

Defendant objects to Request No. 17 in its entirety and requests that the Court adopt

Defense Proposed Jury Instruction No. 25 (Leniency Agreements) instead of Request No. 17.

Defense Proposed Jury Instruction No. 25 is preferable given that it is adapted from the ABA

Model Instruction, which is specifically tailored to address cooperating witnesses who testify

pursuant to Nonprosecution and Cooperation Agreements.  Defendant adapted the ABA Model

Instruction to apply to the leniency agreement pursuant to which Nicholas Williams will be

testifying.

To the extent, however, that the Court adopts Request No. 17, Defendant requests that

Request No. 17 be amended as follows to conform to the leniency agreement involved in this

case.

## REQUEST NO. 17.

### Agreements Not to Prosecute Government Witnesses

You have also heard testimony from Nicholas Williams.  Mr. Williams's employer,

Barclays, has entered into a leniency agreement with the government.  This agreement provides

that covered employees, who are required to provide "full, continuing and complete

cooperation," will not be prosecuted criminally by the government for any defined act or offense

committed prior to the date of the leniency agreement.  A covered employee who "fails to

comply fully with his obligations" under the leniency agreement loses his guarantee of

nonprosecution.[50] You have also heard the testimony of a witness whom the government has

---

[50] *See* Defense Proposed Jury Instruction No. 25 (tailoring the ABA model instruction on nonprosecution and cooperation agreements to the leniency agreement in this case).

promised—in exchange for testifying truthfully, completely and fully—will not be prosecuted for any crimes in which he may have participated.

The fact that the government has agreed not to prosecute a witness does not disqualify him from testifying and does not preclude you from accepting that testimony as true.

The government is permitted to make these kinds of promises, called non-prosecution agreements, and is entitled to call as witnesses people to whom such promises are given. The fact that the government has agreed not to prosecute a witness does not disqualify him from testifying, and does not preclude you from accepting that testimony as true. You are instructed that you may convict a defendant on the basis of such a witness's testimony alone, if you find that his testimony proves the defendant guilty beyond a reasonable doubt.

However, it is also the case that this witness's testimony is of such nature that it must be scrutinized with great care and viewed with particular caution when you decide how much of that testimony to believe.

In evaluating the testimony of witnesses testifying pursuant to non-prosecution agreements, you may want to consider whether this witness would benefit more by lying or by telling the truth. Was his testimony made up in any way because he believed or hoped that he would somehow receive favorable treatment by testifying falsely?  Or did he believe that his interests would be best served by testifying truthfully?[51]  If you believe the witness was motivated by personal gain, was the motivation one that would cause him to lie or was it one that would cause him to tell the truth? Again, if you find the testimony is false, you should reject it. If you are satisfied that the witness told the truth, you should accept it.

---

[51] Sand, *Modern Federal Jury Instructions-Criminal* ¶ 7.01, Instr. 7-5.

One final note in this regard. It is no concern of yours why the government made agreements with the witness. Your sole concern is to decide whether the witness was giving truthful testimony in this case before you. In sum, you should look to all the evidence in deciding what credence and what weight, if any, you will give to a witness's testimony.

As I have previously instructed you, the issue of credibility need not be decided in an all or nothing fashion. Even if you find that a witness testified falsely in one part, you still may accept his testimony in other parts, or may disregard all of it. Credibility is a determination entirely for you, the jury.[52]

---

[52] *Adapted from*: Sand, *Modern Federal Jury Instructions-Criminal* ¶ 7.01, Instr. 7-5; *see also United States v. Gleason*, 616 F.2d 2, 15 (2d Cir. 1979); *United States v. Projansky*, 465 F.2d 123, 136–37 n.25 (2d Cir. 1972).

---

**Defendant's Objections To Request No. 18**

Defendant objects to Request No. 18 in its entirety and requests that the Court adopt Defense Proposed Jury Instruction No. 24 (Plea Agreements), which is adapted from the instruction given in *United States v. Stern*, instead of Request No. 18.

Request No. 18 improperly states that jurors have heard testimony from government witnesses "who pled guilty to charges arising out of the same facts as this case."  That statement is prejudicial for the same reasons noted in Defendant's Objections To Request No. 16 (Cooperating Witnesses).  *See supra* p. 45.

To the extent, however, that the Court adopts Request No. 18, Defendant requests that Request No. 18 be amended as follows to eliminate bias and inaccurate statements.

---

## REQUEST NO. 18.

### Government Witness – Not Proper to Consider Guilty Plea

You have heard testimony from Jason Katz and Chris Cummins, witnesses who are cooperating with the government.  Mr. Katz and Mr. Cummins pleaded guilty to criminal charges.[53]

~~You have heard testimony from government witnesses who pled guilty to charges arising out of the same facts as this case.~~ You are instructed that you are to draw no conclusions or inferences of any kind about the guilt of the defendant on trial from the fact that prosecution witnesses pled guilty to similar charges. Each witness's decision to plead guilty was a personal

---

[53] *United States v. Stern*, Final Jury Instructions at 204:25-205:8, 1:16-cr-00525-JGK (S.D.N.Y. June 15, 2017), Dkt. 110 (Koeltl, J.) (modified based on plea agreements).

decision about his own guilt. It may not be used by you in any way as evidence against or

unfavorable to the defendant on trial here.[54]

---

[54] *Adapted from*: Sand, *Modern Federal Jury Instructions-Criminal* ¶ 7-10, Instr. 7-10 (2019).

<div style="border:1px solid black">

**Defendant's Objections To Request No. 19**

Defendant objects to Request No. 19 in its entirety.  Request No. 19 is unnecessary,

unless a factual predicate is established at trial that would make this instruction necessary.  *See*

Sand, *Modern Federal Jury Instructions*, Comment to Instr. 6-7 (noting that a "number of

courts" and "all of the pattern instructions that address this issue" "recommend" that no

instruction on uncalled witnesses equally available to both parties be given).

To the extent, however, that the Court adopts Request No. 19, Defendant requests that

Request No. 19 be amended as follows to eliminate an inaccurate statement.

</div>

### REQUEST NO. 19.

### Uncalled Witnesses: Equally Available

[If applicable]

There are several persons whose names you have heard during the course of the trial but

who did not appear here to testify. ~~I instruct you that each party had an equal opportunity or lack~~

~~of opportunity to call any of these witnesses. Therefore, you~~ You should not draw any inferences

or reach any conclusions as to what they would have testified to had they been called. Their

absence should not affect your judgment in any way.

You should, however, remember my instruction that the law does not impose on a

defendant in a criminal case the burden or duty of calling any witnesses or producing any

evidence.[55]

---

[55] Trial Tr. at 1300–01, *United States v. Stern*, No. 16-cr-525 (JGK) (S.D.N.Y. May 25, 2017) (Koeltl, J.), ECF No. 110; *see also* Sand, *Modern Federal Jury Instructions-Criminal* ¶ 6.04, Instr. 6-7 (2019).

---

**Defendant's Objections To Request No. 20**

*No objection.*

---

### REQUEST NO. 20.

### Persons Not on Trial

You may not draw any inference, favorable or unfavorable, towards the government or the defendant from the fact that certain persons were not named as defendants in the indictment. You also may not speculate as to the reasons why other persons are not on trial. The circumstances why any persons were not indicted must play no part in your deliberations.

Whether a person should be indicted as a defendant is a matter within the sole discretion of the United States Attorney and the grand jury. Therefore, you may not consider it in any way in reaching your verdict as to the defendant on trial. As to all of these matters concerning persons not on trial before you, those matters are wholly outside your concern and have no bearing on your function.[56]

---

[56] *Adapted from*: Trial Tr. at 1301–02, *United States v. Stern*, No. 16-cr-525 (JGK) (S.D.N.Y. May 25, 2017) (Koeltl, J.), ECF. No. 110; *see also* Jury Instrs. at 27, *United States v. Bonventre*, No. 10-cr-228 (LTS) (S.D.N.Y. Mar. 17, 2014) (Swain, J.), ECF No. 773.

---

**Defendant's Objections To Request No. 21**

Defendant objects to Request No. 21 in its entirety and requests that the Court adopt Defense Proposed Jury Instruction No. 30 (Expert Witnesses), which quotes the Sand instruction on the subject, instead of Request No. 21.

To the extent, however, that the Court adopts Request No. 21, Defendant requests that Request No. 21 be amended to include the basis for relevant expert testimony.

---

## REQUEST NO. 21.

### Expert Witness (Generally)

You have heard testimony from persons who, because of education or experience, were permitted to state opinions, and the reasons for their opinions. Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.[57]

Such opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.[58]

---

[57] Sand, *Modern Federal Jury Instructions*, Instr. No. 7-21 (Expert Witness (Generally)).

[58] *Adapted from*: ABA Section of Antitrust Law, *Model Criminal Antitrust Jury Instructions*, 142, Instr. 4-C-13 (2009); *see also* Trial Tr. at 4713, *United States v. AU Optronics Corp.*, No. 09-cr-00110-SI (N.D. Cal. Feb. 27, 2012) (Illston, J.), ECF No. 822.

---

**Defendant's Objections To Request No. 22**

Defendant objects to Request No. 22 in its entirety and requests that the Court adopt Defense Proposed Jury Instruction No. 32 (Law Enforcement Witnesses), which quotes the Sand instruction on the subject and is also in accordance with the instruction given in *United States v. Stern*, instead of Request No. 22.

To the extent, however, that the Court adopts Request No. 22, Defendant requests that Request No. 22 be amended to include text from the *United States v. Stern* instruction that provides a more neutral instruction.

---

### REQUEST NO. 22.

### Law Enforcement Witness

You have heard the testimony of law enforcement officials. The fact that a witness may be employed by the federal, state or local government as a law enforcement official does not mean that the witness's testimony is deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.[59]

At the same time, it is quite legitimate for defense counsel to try to attack the credibility of a law enforcement witness on the grounds that the witness's testimony may be colored by a personal or professional interest in the outcome of the case.

It is your decision, after reviewing all the evidence, whether to accept the testimony of any law enforcement witness and to give to that testimony whatever weight, if any, you find it deserves.[60]

---

[59] *Adapted from:* Trial Tr. at 1293, *United States v. Stern*, No. 16-cr-525 (JGK) (S.D.N.Y. May 25, 2017) (Koeltl, J.), ECF. No. 110.

[60] Sand, *Modern Federal Jury Instructions*, Instr. 7-16; *accord United States v. Stern*, Final Jury Instructions at 205:10-18, No. 1:16-cr-00525-JGK (S.D.N.Y. June 15, 2017), Dkt. 110 (Koeltl, J.).

---

**Defendant's Objections To Request No. 23**

*No objection.*

---

REQUEST NO. 23.

**Preparation of Witnesses**

You have heard evidence during the trial that witnesses have discussed the facts of the case and their testimony with the lawyers before the witness appeared in court.

Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying so that the witness can be aware of the subjects he or she will be questioned about, focus on those subjects and have the opportunity to review relevant exhibits before being questioned about them. Such consultation helps conserve your time and the court's time. In fact, it would be unusual for a lawyer to call a witness without such consultation.

Again, the weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.[61]

---

[61] Trial Tr. at 1297–98, *United States v. Stern*, 16-cr-525 (JGK) (S.D.N.Y. Jun. 15, 2017) (Koeltl, J.), ECF No. 110.

---

**Defendant's Objections To Request No. 24**

*No objection.*

---

**REQUEST NO. 24.**

**Defendant's Right Not to Testify**

[If Requested by Defense]

Under our constitution, the defendant has no obligation to testify or to present any other evidence because it is the government's burden to prove the defendant guilty beyond a reasonable doubt. That burden remains with the government throughout the entire trial and never shifts to the defendant. A defendant is never required to prove that he is innocent.

The defendant did not testify in this case. You may not attach any significance to the fact that the defendant did not testify. You may not draw any adverse inference against the defendant because the defendant did not take the witness stand. You may not consider this against the defendant in any way in your deliberations in the jury room.[62]

---

[62] Trial Tr. at 1297, *United States v. Stern*, 16-cr-525 (JGK) (S.D.N.Y. Jun. 15, 2017) (Koeltl, J.), ECF No. 110.

> **Defendant's Objections To Request No. 25**
>
> *No objection.*

**REQUEST NO. 25.**

**Defendant's Testimony**

[If applicable]

The defendant in a criminal case never has any duty to testify or come forward with any evidence. This is because, as I have told you, the burden of proof beyond a reasonable doubt remains on the government at all times, and the defendant is presumed innocent. In this case, the defendant did testify and was subject to cross-examination like any other witness. You should examine and evaluate the defendant's testimony just as you would the testimony of any witness.[63]

---

[63] *Adapted from*: Sand, *Modern Federal Jury Instructions-Criminal* ¶ 7.01, Instrs. 7-4, 7-13 (2019); *United States* v. *Prince Gaines*, 457 F.3d 238, 249 n.9 (2d Cir. 2006).

<div style="border: 1px solid black;">

**Defendant's Objections To Request No. 26**

*No objection.*

</div>

**REQUEST NO. 26.**

**Stipulations of Fact**

A stipulation is an agreement among the parties that a certain fact is true. You should regard such agreed facts as true.[64]

---

[64] Sand, *Modern Federal Jury Instructions-Criminal* ¶ 5.02, Instr. 5-6 (2019); *see also* Trial Tr. at 1288, *United States v. Stern*, No. 16-cr-525 (JGK) (S.D.N.Y. May 25, 2017) (Koeltl, J.), ECF. No. 110.

<div style="border:1px solid black;">

**Defendant's Objections To Request No. 27**

***No objection.***

</div>

REQUEST NO. 27.

**Stipulations of Testimony**

[If applicable]

In this case, you have heard evidence in the form of stipulations. A stipulation of testimony is an agreement among the parties that, if called as a witness, the person would have given certain testimony. You must accept as true the fact that the witness would have given that testimony. However, it is for you to determine the effect to be given that testimony.

---

**Defendant's Objections To Request No. 28**

*No objection.*

---

**REQUEST NO. 28.**

**Audio Recordings**

You have heard evidence in the form of audio recordings. These recordings were made by the employers of the defendant and his co-conspirators in the ordinary course of business. The use of recorded conversations is perfectly lawful, and parties are entitled to use the recordings in this case.  Whether you approve or disprove of the recording of conversations or meetings may not enter into your deliberations. You must, therefore, regardless of any personal opinions, give this evidence full consideration, along with all of the other evidence in the case, in determining whether the government has proved beyond a reasonable doubt the guilt of the defendant.[65]

---

[65] *Adapted from:* Trial Tr. at 2871, *United States v. Connolly*, No. 16-cr-370 (CM) (S.D.N.Y. Oct. 16, 2018) (McMahon, J.), ECF. No. 384.

---

**Defendant's Objections To Request No. 29**

*No objection.*

---

### REQUEST NO. 29.

### Audio Transcripts Not Evidence

In connection with the recordings that you have heard, you were given transcripts of the conversations to assist you. I told you then, and I remind you now, that the transcripts are not evidence. It is the recordings that are evidence. The transcripts were provided as an aid to you while you listened to the tapes. It is for you to decide whether the transcripts correctly present the conversations as they are heard on the tapes you have listened to. If you perceive any difference between the recording and the transcript, it is what you hear on the recording that controls.[66]

---

[66] *Adapted from:* Trial Tr. at 2871–72, *United States v. Connolly*, No. 16-cr-370 (CM) (S.D.N.Y. Oct. 16, 2018) (McMahon, J.), ECF. No. 384.

---

**Defendant's Objections To Request No. 30**

Defendant objects to Request No. 30 in its entirety as inapplicable.

---

**REQUEST NO. 30.**

**Particular Investigative Techniques Not Required**

[If applicable]

You have heard reference, in the arguments of defense counsel in this case, to the fact that certain investigative techniques were used by the government and certain other investigative techniques were not used. There is no legal requirement that the government prove its case through any particular means. While you are to consider carefully the evidence adduced by the government, you need not speculate as to why they used the techniques they did, or why they did not use other techniques. The government is not on trial, and law enforcement techniques are not your concern.

Your concern is to determine whether or not, on the evidence or lack of evidence, the defendant's guilt has been proved beyond a reasonable doubt.[67]

---

[67] *Adapted from*: Jury Instrs. at 27–28, *United States v. Bonventre*, 10-cr-228 (LTS) (S.D.N.Y. Mar. 17, 2014) (Swain, J.), ECF No. 773.

+-----------------------------------------------------------------------+
| **Defendant's Objections To Request No. 31**                          |
|                                                                       |
| ***No objection.***                                                   |
+-----------------------------------------------------------------------+

## REQUEST NO. 31.

### Charts and Summaries: Admitted as Evidence

Some of the exhibits that were admitted into evidence were in the form of charts and summaries.  I decided to admit these charts and summaries in place of, or in addition to, the underlying documents that they represent in order to save time and avoid unnecessary inconvenience. You should consider these charts and summaries as you would any other evidence.[68]

---

[68] *Adapted from*: Sand, *Modern Federal Jury Instructions-Criminal* ¶ 5.05, Instr. 5-12 (2019).

---

**Defendant's Objections To Request No. 32**

***No objection.***

---

REQUEST NO. 32.

**Summary Charts: Not Admitted as Evidence**

[If applicable]

Some summary charts and exhibits were shown to you but not admitted into evidence. At the time they were shown to you, I noted this fact to you. For these charts and exhibits that were not admitted into evidence, they serve merely as summaries and analyses of testimony and documents in the case and are here to act as visual aids for you. It is the underlying evidence and the weight which you attribute to it that gives value and significance to these charts. To the extent that the charts conform to what you determine the underlying facts to be, you should accept them. To the extent that the charts differ from what you determine the underlying evidence to be, you may reject them.[69]

---

[69] *Adapted from*: Sand, *Modern Federal Jury Instructions-Criminal* ¶ 5.05, Instr. 5-13 (2019).

---

**Defendant's Objections To Request No. 33**

*No objection.*

---

### REQUEST NO. 33.

### Redaction of Evidentiary Items

Among the exhibits received in evidence, there are some documents that are redacted. "Redacted" means that part of the document or tape was taken out. You are to concern yourself only with the part of the item that has been admitted into evidence. The omitted portion of material was appropriately redacted, and you should not worry about why that might have been done.[70]

---

[70] *Adapted from:* Trial Tr. at 2872, *United States v. Connolly*, No. 16-cr-370 (CM) (S.D.N.Y. Oct. 16, 2018) (McMahon, J.), ECF. No. 384.

<table>
<tr><td>

**Defendant's Objections To Request No. 34**

***No objection.***

</td></tr>
</table>

---

## REQUEST NO. 34.

### Punishment is Not to be Considered by the Jury

I caution you that under your oath as jurors you are not to consider the punishment that may be imposed upon the defendant if he is convicted. The duty of imposing a sentence in the event of conviction rests exclusively upon me. Your function is to weigh the evidence in the case and to determine the guilt or nonguilt of the defendant solely upon the evidence and the law which I have given to you and you must apply.[71]

---

[71] Trial Tr. at 1303, *United States v. Stern*, 16-cr-525 (JGK) (S.D.N.Y. Jun. 15, 2017) (Koeltl, J.), ECF No. 110; *see also* Sand, *Modern Federal Jury Instructions-Criminal* ¶ 9.01, Instr. 9-1 (2019).

**Defendant's Objections To Request No. 35**

Defendant objects to Request No. 35 in its entirety and requests that the Court adopt Defense Proposed Jury Instruction No. 4 (Evidence and Inferences), which is adapted from the instruction given in *United States v. Stern*, instead of Request No. 35.

Request No. 35 is redundant, as Defense Proposed Jury Instruction No. 4 includes an instruction regarding reprimand of counsel.

To the extent, however, that the Court adopts Request No. 35, Defendant requests that Request No. 35 be amended as follows.

## REQUEST NO. 35.

### Reprimand of Counsel for Misconduct

[If Applicable]

During the course of the trial, I have ~~had to~~ admonished or reprimanded an attorney because I did not believe what he or she was doing was proper. You should draw no inference against the attorney or his or her client. It is the duty of attorneys to offer evidence and press objections on behalf of their clients. It is my function to cut off counsel from an improper line of argument or questioning, to strike offending remarks and to reprimand counsel when I think it is necessary. But you should draw no inference from that. It is irrelevant whether you like a lawyer or whether you believe I like a lawyer. The issue before you is not which attorney is more likeable or the better attorney—the issue is whether or not the government has sustained its burden of proof.

In fact, in this case, I would like to express my gratitude to each of the attorneys for their conscientious efforts on behalf of their clients and for work well done.

Your verdict should be based upon the facts as found by you from the evidence and the law contained in these instructions.[72]

---

[72] *Adapted from*: Sand, *Modern Federal Jury Instructions-Criminal* ¶ 2.01, Instr. 2-9 (2019).

69

**Defendant's Objections To Request No. 36**

Defendant objects to Request No. 36 in its entirety and requests that the Court adopt Defense Proposed Jury Instruction No. 3 (Improper Considerations – Matters The Jury May Not Consider) instead of Request No. 36.

To the extent, however, that the Court adopts Request No. 36, Defendant requests that Request No. 36 be given as a preliminary general instruction and not as the penultimate instruction, in accordance with the placement of the Sand model instruction used by the Government.

### REQUEST NO. 36.

### Sympathy: Oath as Juror

Under your oath as jurors you are not to be swayed by sympathy. You are to be guided solely by the evidence in this case, and the crucial question that you must ask yourselves as you sift through the evidence is: Has the government proved the guilt of the defendant beyond a reasonable doubt?

It is for you and you alone to decide whether the government has proved that the defendant is guilty of the crime charged, solely on the basis of the evidence and subject to the law as I have instructed you. It must be clear to you that once you let fear or prejudice, or bias or sympathy interfere with your thinking there is a risk that you will not arrive at a true and just verdict.

If you have a reasonable doubt as to the defendant's guilt with respect to the crime charged, you should not hesitate to render a verdict of not guilty. But, on the other hand, if you should find that the government has met its burden of proving the defendant's guilt beyond a

reasonable doubt, with respect to the crime charged, you should not hesitate because of sympathy or any other reason to render a verdict of guilty.[73]

---

[73] *Adapted from*: Sand, *Modern Federal Jury Instructions-Criminal* ¶ 2.01, Instr. 2-12 (2019).

---

**Defendant's Objections To Request No. 37**

Defendant objects to Request No. 37 in its entirety and requests that the Court adopt

Defense Proposed Jury Instruction No. 36 (Concluding Instructions: Punishment, Duty To

Deliberate, Communications With Court, And Unanimous Verdict) instead of Request No. 37.

Defense Proposed Jury Instruction No. 36 is taken from *United States v. Stern*, while Request

No. 37 is loosely adapted from Sand.

To the extent, however, that the Court adopts Request No. 37, Defendant requests that

Request No. 37 be amended as follows for clarity and to conform more closely to the model

instruction used by the Government.

---

### REQUEST NO. 37.

### Conclusion

The government, to prevail, must prove the essential elements beyond a reasonable

doubt, as already explained in these instructions.  If it succeeds, your verdict should be guilty; if

it fails, it should be not guilty.  To report a verdict, it must be unanimous.[74]

Your function now is to weigh the evidence in this case and to determine the guilt or

nonguilt of the defendant with respect to the count of the indictment with which he is charged.

~~You must base your verdict solely on the evidence and these instructions as to the law,~~

~~and you are obliged under your oath as jurors to follow the law as I have instructed you, whether~~

~~you agree or disagree with the particular law in question.~~

The verdict must represent the considered judgment of each juror. In order to return a

verdict, it is necessary that each juror agree to it. Your verdict must be unanimous.

---

[74] Sand, *Modern Federal Jury Instructions-Criminal* ¶ 9.07, Instr. 9-7 (2019).

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can possibly do so without violence to individual judgment. Each of you must decide the case for him or herself, but do so only after an impartial discussion and consideration of all the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views, and change an opinion if convinced it is erroneous. ~~But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors.~~ However, if, after carefully considering all the evidence and the arguments of your fellow jurors, you entertain a conscientious view that differs from the others, you are not to yield your conviction simply because you are outnumbered.[75]

~~Remember at all times, you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.~~

~~If you are divided, do not report how the vote stands, and if you have reached a verdict do not report what it is until you are asked in open Court.~~

In conclusion, ladies and gentlemen, I am sure that if you listen to the views of your fellow jurors and if you apply your own common sense you will reach a fair verdict here.[76]

Your final vote must reflect your conscientious conviction as to how the issues should be decided.  Your verdict, whether guilty or not guilty, must be unanimous.[77]

---

[75] Sand, *Modern Federal Jury Instructions-Criminal* ¶ 9.07, Instr. 9-7 (2019).
[76] *Adapted from*: Sand, *Modern Federal Jury Instructions-Criminal* ¶ 9.07, Instr. 9-7 (2019).
[77] Sand, *Modern Federal Jury Instructions-Criminal* ¶ 9.07, Instr. 9-7 (2019).

Dated: October 10, 2019
       New York, New York


By:    /s/ Martin Klotz_____
       WILLKIE FARR & GALLAGHER LLP
       Martin Klotz
       Joseph T. Baio
       Jocelyn M. Sher
       Samuel M. Kalar
       787 Seventh Avenue
       New York, New York 10019
       T: (212) 728-8000

       *Attorneys for Defendant Akshay Aiyer*