UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

UNITED STATES OF AMERICA     :     18 Cr. 333 (JGK)

          v.                  :

AKSHAY AIYER,                   :

              Defendant.       :

---------------------------------------------------------x


**DEFENDANT'S SUPPLEMENTAL SUBMISSION REGARDING
<u>JURY INSTRUCTIONS</u>**

WILLKIE FARR & GALLAGHER LLP
Martin Klotz
Joseph T. Baio
Jocelyn M. Sher
Samuel M. Kalar
787 Seventh Avenue
New York, New York 10019
T: (212) 728-8000

*Attorneys for Defendant Akshay Aiyer*

# TABLE OF CONTENTS

Page

I.    A Supplemental Jury Instruction Is Necessary To Prevent Juror Confusion Regarding The Legal Standard Necessary For Conviction Of Mr. Aiyer ...........................................1

II.   The Court Should Adopt Defense Proposed Jury Instruction No. 21 (Statute Of Limitations)...........................................................................................................5

    a.    The Overt Act Requirement Is Supported by Numerous Cases Addressing Criminal Conspiracies Under the Sherman Act........................................6

    b.    The Government's Second Circuit Authorities Are RICO Cases, and Its Other Authorities Are Not Persuasive ................................................8

III.  The Government's Proposed Jury Instruction No. 19 (Uncalled Witnesses: Equally Available) Should Not Be Given ..................................................................10

# TABLE OF AUTHORITIES

Case                                                                 Page(s)

*United States v. A-A-A Electrical Co., Inc.*,
    788 F.2d 242 (4th Cir. 1986) ................................................................7, 9

*United States v. Abdur-Razzaaq*,
    372 F. App'x 212 (2d Cir. 2010) ..............................................................9

*United States v. Anderson*,
    326 F.3d 1319 (11th Cir. 2003) ...............................................................7

*United States v. Brown*,
    936 F.2d 1042 (9th Cir. 1991) .............................................................7, 10

*United States v. Caccia*,
    122 F.3d 136 (2d Cir. 1997)....................................................................14

*United States v. Chong Lam*,
    677 F.3d 190 (4th Cir. 2012) ....................................................................4

*United States v. Finnerty*,
    474 F. Supp. 2d 530 (S.D.N.Y. 2007), *aff'd*, 533 F.3d 143 (2d Cir. 2008) .......................3

*United States v. Forlorma*,
    94 F.3d 91 (2d Cir. 1996) .........................................................................4

*United States v. Garcia*,
    282 F. App'x 14 (2d Cir. 2008) ...............................................................9

*United States v. Gaskin*,
    364 F.3d 438 (2d Cir. 2004)....................................................................13

*United States v. Hayter Oil Co.*,
    51 F.3d 1265 (6th Cir. 1995) ....................................................................9

*United States v. Inryco, Inc.*,
    642 F.2d 290 (9th Cir. 1981), *cert. dismissed,* 454 U.S. 1167 (1982)............................7, 8

*United States v. Kemp & Associates, Inc.*,
    907 F.3d 1264 (10th Cir. 2018) ................................................................6

*United States v. Kissel*,
    218 U.S. 601 (1910).................................................................................8

*United States v. Morales*,
    577 F.2d 769 (2d Cir. 1978).....................................................................2

*United States v. Myerson,*
    18 F.3d 153 (2d Cir. 1994)........................................................................12

*United States v. Ogando,*
    547 F.3d 102 (2d Cir. 2008)........................................................................2

*United States v. Pierce,*
    785 F.3d 832 (2d Cir. 2015)......................................................................14

*United States v. Sorrentino,*
    72 F.3d 294 (2d Cir. 1995), *overruled on other grounds by*
    *United States v. Abad*, 514 F.3d 271 (2d Cir. 2008)........................................12

*United States v. Spero,*
    331 F.3d 57 (2d Cir. 2003)..........................................................................9

*United States v. Therm-All, Inc.,*
    373 F.3d 625 (5th Cir. 2004) ...............................................................7, 8, 9

*United States v. U.S. Gypsum Co.,*
    438 U.S. 422 (1978)....................................................................................2


Other Authorities

2d Cir. R. 32.1.1....................................................................................................9

Hovenkamp & Areeda, Antitrust Law: An Analysis of Antitrust Principles and Their
    Application, at ¶ 320(c)(1)......................................................................8

Sand's Model Federal Jury Instruction No. 58-11 ..........................................6

Defendant Akshay Aiyer respectfully submits this memorandum to 1) request two supplemental jury instructions regarding the legal standard applicable to this case; 2) provide additional support for Defense Proposed Jury Instruction No. 21 (Statute of Limitations); and 3) supplement Defendant's Objections to the United States' Proposed Jury Instruction No. 19 (Uncalled Witnesses: Equally Unavailable).

## I. A Supplemental Jury Instruction Is Necessary To Prevent Juror Confusion Regarding The Legal Standard Necessary For Conviction Of Mr. Aiyer

Mr. Aiyer has been charged with a very particular crime: violating the Sherman Act by entering into a price fixing and bid rigging conspiracy. The Government, however, has obscured this standard by repeatedly eliciting testimony from its cooperating witnesses that the conduct at issue was "wrong," "manipulative," likely to make customers "angry," or improper because the cooperating witnesses believed they were "supposed" to be "trading independently" and not "working together." All of this testimony misrepresents the precise nature of the charges against Mr. Aiyer—price fixing and bid rigging—and presents a clear risk of prejudicing Mr. Aiyer by confusing the jury about the correct legal standard in this case. A jury instruction is necessary to address this prejudice.

At trial, much of the Government's case consisted of walking their cooperating witnesses, Christopher Cummins and Jason Katz, through a series of trading episodes, having them explain their conduct's intended purpose in supply and demand terms, and then asking whether Mr. Cummins and Mr. Katz believed their behavior was "wrong." (*See* Tr. at 166:19, 196:1, 205:16, 212:7, 225:13, 235:22, 251:12, 255:8; 259:7, 267:9, 272:6, 723:5, 725:12, 848:15, 855:19, 861:6, 940:24, 964:10, 1016:7, 1042:8-9, 1424:8.) The Court noted the extensiveness—and nonspecific nature of—this testimony at a sidebar during the testimony of Mr. Cummins. (Tr. at 385:10-16 ("The witness has testified extensively that he knew that what he was doing was wrong. That

raises the question of what does he mean when he says: I knew that what I was doing was wrong? Now, things can be wrong under many different matrices. They could be wrong because they violate a corporate policy. They could be wrong because they violate the law.").)

Mr. Aiyer has not been charged with generic wrongdoing, and whether certain behavior was believed to be "wrong" by Mr. Cummins and Mr. Katz is irrelevant to the charged crime. The Government must prove that Mr. Aiyer entered into a conspiracy with the intent to fix prices and rig bids, not that he engaged in trading behavior that he or the cooperating witnesses believed to be "wrong." *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 443 n.20 (1978) ("In a conspiracy, two different types of intent are generally required—the basic intent to agree, which is necessary to establish the existence of the conspiracy, and the more traditional intent to effectuate the object of the conspiracy."); *see also United States v. Morales*, 577 F.2d 769, 773 n.3 (2d Cir. 1978) (in a drug possession case that centered around defendant's knowledge, ordering a new trial after the government emphasized evidence and argument of "a vague awareness of wrongdoing," thereby confusing the jury as to the proper legal standard). The Government's consistent use of this refrain—that certain behavior was "wrong"—presents a clear danger of misleading the jury about the actual legal elements of the crime with which Mr. Aiyer was charged. *See United States v. Ogando*, 547 F.3d 102, 107 (2d Cir. 2008) ("[I]n order to prove conspiracy … the Government must show more than evidence of a general cognizance of criminal activity, suspicious circumstances, or mere association with others engaged in criminal activity.") (internal citation and quotation marks omitted).

Similarly, at trial the Government repeatedly emphasized the concept of "manipulation." This began during opening statements, when the Government stated that Mr. Aiyer and his alleged coconspirators "manipulated prices by entering into a secret agreement" (Tr. at 41:8-9),

"manipulated the supply and demand of currency" (Tr. at 41:25-42:1), and used chat rooms to "manipulate the market" (Tr. at 41:16-18). Then, on direct examination, the Government used this precise term to question Mr. Katz, asking him when he began "manipulating the market" with Mr. Aiyer (Tr. at 868:10-11), asking how he "manipulated the market to the way you wanted it to go" (Tr. at 872:20-21), and explicitly describing—without any use of the term by Mr. Katz—the "manipulation that you're doing with" Mr. Aiyer (Tr. at 950:8-9).

With respect to specific trading activity, the Government also consistently elicited testimony that the alleged coconspirators were "supposed" to be "trading independently" and/or not "working together" (Tr. at 166:22-23, 196:4-5, 203:22, 205:19, 212:10, 225:16, 249:15-18, 251:15, 254:19-22, 255:11, 258:3, 259:2-3, 259:10, 264:20, 267:12, 271:1, 272:9, 314:7, 319:17, 327:17, 712:22-25, 714:5-7, 718:18-21, 724:3, 879:4-9, 1425:20), and that this lack of independence would have made customers "angry" or "upset" (Tr. at 259:15, 712:17). Perhaps most egregiously, during its cross examination of Professor Richard Lyons, the Government deliberately implied that spoofing as a general practice is illegal, asking—followed by a sustained objection—whether Professor Lyons was "aware if spoofing is legal or illegal in other markets." (Tr. at 1790:14-15.)

Mr. Aiyer has not been charged with generic wrongdoing, and he has not been charged with "market manipulation." *United States v. Finnerty*, 474 F. Supp. 2d 530, 542 (S.D.N.Y. 2007), *aff'd*, 533 F.3d 143 (2d Cir. 2008) ("'Manipulation' … is a term of art[.]"). Neither has Mr. Aiyer been charged with failing to act "independently," or engaging in spoofing. He has been charged with price fixing and bid rigging, and these terms have precise meanings under the law. (*See, e.g.*, The United States' Proposed Jury Instruction No. 5, ECF No. 122 at 6 ("A price-fixing conspiracy is an agreement or mutual understanding among competitors about the prices

for which they will buy or sell products or services.").)  By repeatedly highlighting and eliciting

testimony about conduct and concepts that fall outside these meanings, the Government has

prejudiced Mr. Aiyer by obscuring the legal standard the jury must ultimately apply.

The jury cannot be left with any doubt about the correct legal standard, and the arguments

and testimony emphasized by the Government create a clear danger of confusion.  *See, e.g.*,

*United States v. Forlorma*, 94 F.3d 91, 95 (2d Cir. 1996) (noting "the prejudicial effect on the

jury of a misleading argument").  Because of this, an instruction is necessary to clarify for the

jury that certain behavior does not constitute price fixing or bid rigging.  *See United States v.*

*Chong Lam*, 677 F.3d 190, 204 (4th Cir. 2012) (affirming the use of "curative instructions" to

address "improper and prejudicial" statements of the law).  Pursuant to Rule 30 of the Federal

Rules of Criminal Procedure, Mr. Aiyer respectfully submits the following proposed jury

instruction, which supplements Defendant's Proposed Jury Instructions (ECF No. 123):

## Defense Proposed Supplemental Jury Instruction No. 37
### Wrongful Or Manipulative Conduct

You heard testimony that the Defendant engaged in conduct that the witnesses believed

was "wrong," or was designed to help other participants in the Rand Chat Room, or was likely to

make customers "angry," or was otherwise improper or "manipulative," or involved "failing to

act independently."  Such conduct does not constitute the charged conspiracy or crime.  You may

not return a verdict of guilty unless you find that the Defendant knowingly joined the charged

conspiracy with the intent to fix prices and rig bids, as those terms have been defined by me.

\*       \*       \*

In addition to the above supplemental jury instruction, an unequivocal instruction

regarding spoofing should also be given.  By the Government's own admission, spoofing and

cancelled trades do not constitute the charged crime, and both the Government and Mr. Aiyer

have proposed jury instructions to this effect.  (*See* The United States' Proposed Jury

Instructions, ECF No. 122, at 20; Defendant's Proposed Jury Instructions, ECF No. 123, at 24-

25.)  However, at trial the Government not only attempted to characterize spoofing as "illegal"

and "a form of market manipulation" through its cross examination of Professor Lyons (Tr. at

1790:7-15), it also elicited testimony from Dr. David DeRosa that spoofing "is a bad thing" (Tr.

at 119:22) and it consistently described spoof bids and offers as "phony" (Tr. at 42:25, 44:23,

303:25-304:1, 720:20).  Given the clear risk that jurors may now be confused as to the propriety

of spoofing and its significance in this case, an even more direct jury charge is appropriate.  Mr.

Aiyer respectfully submits the following proposed jury instruction, which replaces Defense

Proposed Alternative Instruction No. 16B:

**Defense Proposed [Replacement] Alternative Instruction No. 16B**[1]
**Spoofing And Cancelled Trades**

"Spoofing" conduct and cancelled trades are not illegal, and do not constitute the charged

criminal conspiracy.  You may not return a verdict of guilty solely because you find the

Defendant, alone or in combination with others, engaged in spoofing or trades that were

subsequently cancelled.

## II. The Court Should Adopt Defense Proposed Jury Instruction No. 21 (Statute Of Limitations)

Mr. Aiyer's Proposed Jury Instruction No. 21 (Statute of Limitations) (ECF No. 123 at

34) reads as follows:

The Indictment in this case was returned on May 10, 2018. The period of limitations for
the conspiracy charged in the Indictment is five years.  This means that you cannot find

---

[1] As detailed in Defendant's Proposed Jury Instructions (ECF No. 123), Proposed Alternative
Instruction No. 16B is an alternative to Proposed Jury Instruction No. 16A.  (*See id.* at 24-25.)  If
Proposed Jury Instruction No. 16A is given, neither Mr. Aiyer's original Proposed Jury
Instruction No. 16B nor this Proposed [Replacement] Alternative Instruction No. 16B are
necessary.

the Defendant guilty unless the government proves, beyond a reasonable doubt, that the charged conspiracy continued to exist some time after May 10, 2013.

In order to find that the conspiracy continued to exist after May 10, 2013, you must find that one or more of the members of the conspiracy performed some act in furtherance of the conspiracy after May 10, 2013. Evidence of acts committed before May 10, 2013 is not evidence that any acts in furtherance of the charged conspiracy were committed after that date.

This instruction is based on Judge Sand's Model Federal Jury Instruction No. 58-11 (Statute of Limitations; Conspiracy). Judge Sand's instruction requires the jury to find that "one or more of the members of the conspiracy *performed some act in furtherance of the conspiracy*" after the statute of limitations date. *Id.* (emphasis added). Judge Sand cited *United States v. Therm-All, Inc.*, 373 F.3d 625 (5th Cir. 2004), *United States v. Brown*, 936 F.2d 1042 (9th Cir. 1991), and *United States v. Anderson*, 326 F.3d 1319 (11th Cir. 2003) in support of his instruction, each of which is discussed below.

The Government's proposed jury instruction on the statute of limitations departs from Judge Sand's instruction. It fails to instruct the jury that it must find that one or more of the members of the alleged conspiracy performed some act in furtherance of the conspiracy after May 10, 2013. (*See* The United States' Proposed Jury Instruction No 14 (Statue of Limitations), ECF No. 122, at 21 (footnote omitted).) For the reasons noted below, we submit that the Government's proposed Instruction No. 14 should be rejected and Mr. Aiyer's proposed Instruction No. 21 should be given to the jury.

        a.   The Overt Act Requirement Is Supported by Numerous Cases Addressing Criminal Conspiracies Under the Sherman Act.

As the Tenth Circuit stated last year when addressing the issue of the statute of limitations under the Sherman Act: "The operative question here … is whether, on the face of the indictment we can conclude that no overt act occurred [during the limitations period]." *United States v. Kemp & Associates, Inc.*, 907 F.3d 1264, 1270 (10th Cir. 2018). Although we

- 6 -

do not believe that the Second Circuit has addressed whether, under the Sherman Act, an overt act in furtherance of a criminal antitrust conspiracy within the limitations period is required for timeliness, numerous cases from other circuits have required such an overt act to establish the timeliness of a criminal antitrust conspiracy. *See, e.g.*, *United States v. Therm-All, Inc.*, 373 F.3d 625, 633 (5th Cir. 2004) ("The statute of limitations runs from the last overt act. Stated another way, an overt act must occur within a certain time period—as defined in the statute of limitations—prior to the date on which the indictment is brought."); *United States v. Anderson*, 326 F.3d 1319, 1328 (11th Cir. 2003) (finding a criminal antitrust charge timely on the ground that an overt act in furtherance of the conspiracy occurred within limitations period); *United States v. Brown*, 936 F.2d 1042, 1048 (9th Cir. 1991) (noting that "the law was correctly stated" in jury instructions that informed the jury that "a finding of an overt act is not necessary to a finding that a Sherman Act conspiracy has been formed" but that "it had to find that a member committed an overt act in furtherance of the conspiracy" within the limitations period); *United States v. A-A-A Electrical Co., Inc.*, 788 F.2d 242, 245 (4th Cir. 1986) ("[T]he statute of limitations begins to run, not from the date of the legally cognizable harm, but from the date of the last overt act."); *United States v. Inryco, Inc.*, 642 F.2d 290, 293 (9th Cir. 1981), *cert. dismissed,* 454 U.S. 1167 (1982)) ("While a Sherman Act conspiracy is technically ripe when the agreement to restrain competition is formed, it remains actionable until its purpose has been achieved or abandoned, and the statute of limitations does not run so long as the co-conspirators engage in overt acts designed to accomplish its objectives.") (footnote omitted) (citing *United States v. Kissel*, 218 U.S. 601, 607-608 (1910)).

Both *Therm-All* and *Inryco* cited the Supreme Court's decision in *Kissel* in support of

their holding that an overt act within the limitations period is necessary. *Therm-All, Inc.*, 373 F.

3d at 633; *Inryco, Inc.*, 642 F.2d at 293. *Therm-All* describes the relevance of *Kissel* as follows:

> The facts and reasoning of *Kissel* compel the … interpretation [requiring proof of an
> overt act within the limitations period] … The [*Kissel*] Court … reasoned that because
> the overt acts (1) occurred within three years of the indictment (the limitations period),
> and (2) denoted efforts to carry out the conspiracy, the original antitrust conspiracy
> continued into that period. *Kissel* thus implies that if conspirators commit overt acts in
> furtherance of a conspiracy, the statute of limitations period resets from the commission
> of those acts. The statute of limitations runs from the last overt act. Stated another way,
> an overt act must occur within a certain time period—as defined in the statute of
> limitations—prior to the date on which the indictment is brought.

*Therm-All*, 373 F.3d at 632-33 (footnotes omitted). *Kissel* indeed found, as noted by *Therm-All*,

that the conspiracy there continued into the limitations period because "[t]he overt acts relied

upon coming down to within three years of the indictment are alleged to have been done in

pursuance of the conspiracy[.]" *Kissel*, 218 U.S. at 609-10.

In addition, Professor Hovenkamp agrees that an overt act is required within the

limitations period: "The idea of the continuing conspiracy or violation is [] that the defendant

continues to commit acts in furtherance of the violation and each of these acts causes additional

injury. The statute is said to be tolled as long as such qualifying acts continue to be

committed." Hovenkamp & Areeda, Antitrust Law: An Analysis of Antitrust Principles and

Their Application, at ¶ 320(c)(1).

> b. The Government's Second Circuit Authorities Are RICO Cases, and Its Other
> Authorities Are Not Persuasive.

The Government argues that it is not required to prove an overt act in furtherance of the

conspiracy during the limitations period because the alleged conspiracy is presumed to continue

until it is terminated or the defendant withdraws. (Government's Objections to Defendant's

Proposed Jury Instructions, ECF No. 131, at 9.) Although the Government cites three Second

Circuit cases, each case addresses a RICO claim, not an antitrust claim.[2]  While the Government

cites three criminal antitrust cases from other jurisdictions, the Fourth Circuit case, *United States*

*v. Portsmouth Paving Corp.*, 694 F. 2d 312 (4th Cir. 1982), preceded another Fourth Circuit case

to the contrary, *United States v. A-A-A Electrical Co., Inc.*:  "The statute of limitations begins to

run, not from the date of the legally cognizable harm, but from the date of the last overt act."

788 F. 2d 242, 245 (4th Cir. 1986).

As for the Government's Sixth Circuit case, *United States v. Hayter Oil Co.*, the facts

there included overt acts within the limitations period:  "There is also sufficient evidence in the

record that the conspiracy continued past the relevant statute of limitations date of July 21, 1988.

For example, Leonard testified that the regular price-fixing activity continued 'all of the way

through the biggest part of '88.'"  51 F.3d 1265, 1271 (6th Cir. 1995)  In determining not to

follow *Hayter*, *Therm-All* similarly observed that *Hayter* involved overt acts within the

limitations period.  *Therm-All, Inc.*, 373 F.3d at 635.

---

[2] The Government cites:  *United States v. Abdur-Razzaaq*, 372 F. App'x 212, 214, (2d Cir. 2010) ("[Defendant] does not deny the existence of a conspiracy, but instead admits 'that he was a member of the narcotics and RICO conspiracy from the time of his arrival in Ithaca, New York during the summer of 1998."); *United States v. Garcia*, 282 F. App'x 14, 22 (2d Cir. 2008) ("[Defendant] argues the government failed to prove his membership in the narcotics conspiracy beyond November 1996, or within five years of when the initial indictment was handed down against him, and therefore he should have been acquitted on the narcotics conspiracy count (Count 11), the substantive racketeering count (Count 1), the racketeering conspiracy count (Count Two), and the firearms count (Count 12)"); and *United States v. Spero*, 331 F.3d 57, 59 (2d Cir. 2003) ("[Defendant] contends that the lone RICO count under which he was tried and convicted was barred by the five-year statute of limitations governing RICO prosecutions.").

*Abdur-Razzaaq* and *Garcia* are summary orders that have no precedential force.  2d Cir. R. 32.1.1 ("Rulings by summary order do not have precedential effect.").  The cases cited in the text above demonstrate that the law governing the limitations period under the Sherman Act differs from that cited by the Government.

Finally, the Government also cites *United States v. Miller*, 771 F. 2d 1219, 1226 (9th Cir.

1985) and quotes the following sentence from *Miller*:  "We discussed [in *United States v. Inryco,*

*Inc.*, 642 F.2d 290, 293 (9th Cir. 1981), *cert. dismissed*, 454 U.S. 1167 (1982)] the use of

evidence of the commission of overt acts … as a means of proving that the conspiracy had not

expired, rather than as a necessary element of the *corpus delicti* of a conspiracy to violate the

Sherman Act."  (Government's Objections to Defendant's Proposed Jury Instructions, ECF No.

131, at 9-10 (quoting *Miller*, 771 F. 2d at 1226).)

The Government's quotation from *Miller* makes two important points:  (1) *Miller*

addressed the substantive sufficiency, not timeliness, of the charge in the indictment of an

antitrust conspiracy; and (2) although an overt act may not be necessary to establish the existence

of an antitrust conspiracy, it is necessary to establish that the conspiracy continued within the

limitations period.  Another Ninth Circuit decision subsequent to *Miller* confirmed the necessity

of an overt act within the limitations period for timeliness.  *See United States v. Brown*, 936 F. 2d

1042 (9th Cir. 1991).

In light of the foregoing, Mr. Aiyer respectfully requests that the Court use his proposed

jury instruction, Request No. 21 (Statute of Limitations), instead of the Government's Request

No. 14 (Statute of Limitations).

### III. The Government's Proposed Jury Instruction No. 19 (Uncalled Witnesses: Equally Available) Should Not Be Given

The Government has requested an "Uncalled Witness" jury instruction that would state:

"I instruct you that each party had an equal opportunity or lack of opportunity to call any of these witnesses.  Therefore, you should not draw any inferences or reach any conclusions as to what they would have testified to had they been called."

(The United States' Proposed Jury Instruction No. 19, ECF No. 122, at 28.)  At the time

objections to proposed jury instructions were submitted, the defense argued that such a charge

was unnecessary.  (Defendant's Objections to the United States' Proposed Jury Instructions, ECF No. 133, at 52.)  Now, it has become clear that the Government will seek this charge with respect to Nicholas Williams, a cooperating witness and the alleged fourth member of the charged conspiracy.  In light of all the facts and circumstances bearing on Mr. Williams' relationship with the Government, his refusal to meet with defense counsel, and the Government's failure to call him as a witness, we respectfully submit that the Government's Proposed Jury Instruction No. 19 should not be read, and no related charge should be given to the jury.  In addition, the defense should be permitted to comment in summation on Mr. Williams' relationship with the Government and the Government's failure to call him as a witness despite that relationship.

The Indictment identifies Mr. Aiyer's alleged coconspirators as Mr. Cummins, Mr. Katz, and "cooperating witness one" ("CW1").  (Indictment ¶¶ 13-17.)  The Government has since made it clear that Mr. Williams is CW1, and both the electronic communications introduced as trial exhibits and the testimony of Mr. Cummins and Mr. Katz identify Mr. Williams as the fourth member of the charged conspiracy.  (*See, e.g.*, Tr. at 175:5-12, 237:23-24, 241:2-7, 706:5-8, 822:7-9, 860:3-5, 861:2-5, 862:3-5, 870:18-20.)

According to material provided by the Government to the defense in discovery, Mr. Williams was protected from prosecution under the terms of a leniency agreement entered into between the Government and Barclays PLC, his former employer.  Moreover, Mr. Williams actively cooperated with the Government in pursuit of this case, meeting on at least eight separate occasions over the course of more than five years, including as recently as two weeks before trial.

During the presentation of its case, the Government did not call Mr. Williams to testify, despite his presence in this jurisdiction during trial.  The defense also did not call Mr. Williams

to testify, although his counsel agreed to accept service of a subpoena for his attendance.  (*See* Tr. at 147:6-9.)  Through his counsel, however, Mr. Williams refused to meet with defense counsel in advance of any potential testimony.

As the Court is aware from prior proceedings, on June 26, 2019, the Government provided the defense a *Brady* disclosure regarding a call between prosecutor Katherine Calle and Mr. Williams' attorney, Sharon McCarthy, related to an interview of Mr. Williams conducted by the Government as part of his ongoing cooperation in this case.  As stated by the *Brady* disclosure:  "Prior to the interview, Ms. Calle had a telephone conversation with Ms. McCarthy to schedule the aforementioned interview.  During that call, Ms. McCarthy related that Mr. Williams would not say that there was an 'agreement,' and suggested that he expressed the same to South African regulators."

The Government's proposed uncalled witness instruction relies on the argument that Mr. Williams was equally available to both parties, and that Mr. Aiyer could have called Mr. Williams to testify via subpoena.  But, as the Second Circuit has held, whether a cooperating witness is equally available to both parties is a question that requires a more nuanced inquiry:  "This court has observed that the availability of a witness depends on all the facts and circumstances bearing upon the witness's relation to the parties, rather than merely on physical presence or accessibility."  *United States v. Myerson*, 18 F.3d 153, 158 (2d Cir. 1994) (internal citation and alterations omitted).[3]

In *United States v. Sorrentino*, for example, a confidential informant ("CI") tape recorded the defendant engaging in inculpatory conduct with the CI.  72 F.3d 294, 296 (2d Cir. 1995),

---

[3] As the Court recognized at a recent sidebar, "the Court of Appeals has said that the simple absence of a charge is also an acceptable alternative."  (Tr. at 1825:9-11.)

*overruled on other grounds by United States v. Abad*, 514 F.3d 271 (2d Cir. 2008).  The government did not call the CI as a witness at trial, relying instead on the tape recording.  *Id.*  On the second day of trial the CI was made available to the defense, but he refused to meet with defense counsel.  *Id.*

The trial judge, Judge Reena Raggi, who was then a district court judge for the Eastern District of New York, denied the defendant's request for a "missing witness" charge instructing the jury that it could draw the inference that, as a result of the government's failure to call the CI as a witness, the jury could infer that the CI's testimony would be adverse to the government and favorable to the defendant.  *Id.*  At the same time, Judge Raggi ruled that defense counsel was permitted to "comment in closing upon the CI's failure to testify and upon his special relationship with the government."  *Id.* at 298.

On appeal to the Second Circuit, the unanimous court held that Judge Raggi's decision to refuse to give the "missing witness" charge requested by the defendant did not constitute reversible error, expressly noting the fact that "Judge Raggi allowed [defense counsel] to comment in closing upon the CI's failure to testify and upon his special relationship with the government."  *Id.*; *accord United States v. Gaskin*, 364 F.3d 438, 463 (2d Cir. 2004) (stating that the Second Circuit is "particularly disinclined to second-guess [such] decisions where, as in this case, a judge refrains from commenting on the inference to be drawn on the facts before the jury and allows counsel instead to argue the inference.") (internal citations and quotation marks omitted).

Here, as in *Sorrentino* and *Gaskin*, the absence of a charge relating to Mr. Williams is appropriate and defense counsel should be permitted to point out the special relationship between the Government and Mr. Williams, his purported role as the fourth participant in the alleged

conspiracy, and the Government's failure to call him as a witness.  *United States v. Caccia*, 122 F.3d 136, 139 (2d Cir. 1997) ("[T]he court has discretion to … give no instruction and leave the entire subject to summations[.]"); *see also United States v. Pierce*, 785 F.3d 832, 843 (2d Cir. 2015) (holding that there was no abuse of discretion when the district court delivered an uncalled witness instruction rather than a missing witness instruction but allowed defense counsel to make arguments about a cooperating witness's absence during summation).

Dated: November 17, 2019
New York, New York

By:    /s/ Martin Klotz_____
WILLKIE FARR & GALLAGHER LLP
Martin Klotz
Joseph T. Baio
Jocelyn M. Sher
Samuel M. Kalar
787 Seventh Avenue
New York, New York 10019
T: (212) 728-8000

*Attorneys for Defendant Akshay Aiyer*