

**U.S. Department of Justice**

Antitrust Division

*New York Office*
26 Federal Plaza, Room 3630
New York, New York 10278

November 17, 2019

**BY ECF**

The Honorable John G. Koeltl
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

      Re:    *United States v. Aiyer*, 18-cr-00333 (JGK)

Dear Judge Koeltl,

    The government writes in response to Defendant's Supplemental Submission Regarding Jury Instructions (ECF No. 144). The government objects to Defendant's requests (1) regarding wrongful or manipulative conduct and (2) regarding spoofing and cancelled trades. The government proposes a hybrid instruction as to request (3) regarding statute of limitations. Finally, the government requests more time to respond to request (4) regarding uncalled witnesses and will be prepared to address this request at the charging conference.

### I.    Legal Standard for Proving Price-Fixing and Bid-Rigging Conspiracy

#### A.  Wrongful or Manipulative Conduct

    The government objects to Defendant's proposed instruction to address alleged "wrongful or manipulative conduct." The jury will be sufficiently instructed as to what the charged conspiracy is and what the government must prove as to Defendant's intent. For example, the government has proposed that the Court instruct the jury as to the nature of price fixing and bid rigging, (ECF No. 122 at 6–8), as well as the requisite intent of Defendant (ECF No. 122 at 10.) With respect to Defendant's intent, the government must prove that Defendant "knowingly joined the conspiracy," namely, he agreed to it "with knowledge of its purpose – here, price fixing and bid rigging – and with the intent of furthering that purpose." (ECF No. 122 at 10.) These instructions make clear the legal standard that must be met. Juries are presumed to follow instructions, *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), and the government sees no reason why the jury would not follow the Court's instruction as to the legal standard in this case.

Defendant's proposed instruction would confuse, rather than clarify, the legal standard in this case. Defendant's proposed instruction is as follows:

> You heard testimony that the Defendant engaged in conduct that the witnesses believed was "wrong," or was designed to help other participants in the Rand Chat Room, or was likely to make customers "angry," or was otherwise improper or "manipulative," or involved "failing to act independently." Such conduct does not constitute the charged conspiracy or crime. You may not return a verdict of guilty unless you find that the Defendant knowingly joined the charged conspiracy with the intent to fix prices and rig bids, as those terms have been defined by me.

(ECF No. 144 at 4.) Mr. Cummins repeatedly testified that he believed his behavior was wrong and offered explanations as to why he thought it was wrong including, *inter alia*, because he was "supposed to be working independently; pricing independently, trading independently." Trial Tr. 195:24–196:5. Mr. Cummins didn't simply "fail to act independently"; he coordinated with his competitors to affect price. Pricing in concert with a competitor or manipulating prices with a competitor (or manipulating supply and demand with a competitor to affect price) goes to the essence of an antitrust conspiracy. *See United States v. Socony-Vacuum Oil. Co.*, 310 U.S. 150, 223 (1940) (Regardless of "the machinery employed[,] . . . . a combination formed for the purpose and with the effect of raising, depressing, fixing, pegging, or stabilizing the price of a commodity in interstate or foreign commerce is illegal *per se*."). Likewise, Mr. Cummins's testimony as to conduct that would make customers angry or upset also goes to the heart of antitrust law:

> Q. Mr. Cummins, the conduct in this chat, did you know whether you were doing something wrong?
> A. Yes.
> Q. And was it wrong?
> A. Yes.
> Q. Why?
> A. Because I was not pricing independently with the other guys.
> Q. And did you tell the customer what were you doing here?
> A. No.
> Q. Why not?
> A. The customer would be angry.
> Q. Why?
> A. Because they thought they were receiving independent prices.

Tr. at 259:4-18.

> Q. And did you tell the customer about any of this?
> A. We did not.
> Q. Why not?
> A. The customer would be upset.
> Q. Why?
> A. The customer expected the prices to be given in a competitive environment, and this was not a competitive environment.

Tr. at 712:14-21.

To instruct the jury that the conduct referenced above does not constitute the charged conspiracy would confuse the issues, mislead the jury, and cause unfair prejudice to the government.

### B. Spoofing and Cancelled Trades

Defendant's proposed instruction as to spoofing is inaccurate as a matter of law. The government does not contend that spoofing conduct or fake trades, by themselves, constitute the conspiracy charged in this case. However, the government does not concede that "spoofing" conduct or fake trades are never criminal acts. Defendant himself has previously noted the illegality of spoofing in other contexts. (*See* ECF No. 97 at 2.) To address the very concerns he raises now, the government proposed to preclude *any* expert testimony as to the propriety of spoofing or fake trades. (*See* ECF No. 103 at 10.) However, Defendant was unwilling to enter into such an agreement so as to avoid the exact issue about which he now cries foul.

The government maintains that its initial proposed instruction adequately addresses Defendant's concerns as to inferences the jury may draw from spoofing conduct or fake trades. Based on the testimony at trial, however, the government offers a proposed revised instruction substituting the term "cancelled trades" with "fake trades." Cancelled *orders* (i.e., pulled bids or offers) do constitute, in part, the crime charged as a form of suppressed competition. Accordingly, to more accurately identify the type of trades contemplated by this instruction (i.e., fictious trades or wash trades) and reduce the risk of any confusion, the government proposes the following instruction:

> Spoofing conduct or fake trades do not, by themselves, constitute the charged criminal conspiracy. Such evidence is admitted solely to complete the story of the charged conspiracy—to demonstrate the relationship between defendant and his co-conspirators, his motive for joining the conspiracy, and his knowledge of, and intent to advance its purpose.

## II.  Statute of Limitations

Regarding the statute of limitations, the government maintains that its instruction is consistent with Second Circuit case law. As explained in the government's objections to Defendant's proposed jury instructions, under Second Circuit law, "[w]here a conspiracy contemplates a continuity of purpose and a continued performance of acts, it *is presumed to exist* until there has been an affirmative showing that it has been terminated[,] and its members continue to be conspirators until there has been an affirmative showing that they have withdrawn." *United States v. Spero*, 331 F.3d 57, 60 (2d Cir. 2003). This same presumption was applied in *United States v. Hayter Oil Co.*, where the Court of Appeals for the Sixth Circuit held that "[b]ecause the price-fixing agreement itself constitutes the crime, the government is only required to prove that the agreement existed during the statute of limitations period and that the defendant knowingly entered into that agreement. . . . Proof of an overt act taken in furtherance of the conspiracy within the statute of limitations period would clearly demonstrate the continued

existence of the conspiracy. However, once a conspiracy has been established, it is presumed to continue until there is an affirmative showing that it has been abandoned." 51 F.3d 1265, 1270–71 (6th Cir. 1995) (citations omitted).

Nonetheless, the government would not object to the following instruction:

In regard to the timing of the alleged conspiracy, the indictment charges that the alleged conspiracy began at least as early as October 2010 and continued until at least July 2013. It is not necessary that the government prove that the conspiracy started or ended on a particular date, as long as it proves beyond a reasonable doubt that the conspiracy was formed and existed at some point during the period covering October 2010 until July 2013.

But, the government must prove that the conspiracy was in existence for some period from and after May 10, 2013. If the government fails to so prove, you must find the defendant not guilty. In order to find that the conspiracy was in existence from and after May 10, 2013, you must find that one or more of the members of the conspiracy performed some act in furtherance of the conspiracy after May 10, 2013.

In determining whether the alleged conspiracy continued to exist after May 10, 2013, you may consider proof of acts and statements of the defendant and his alleged conspirators both before May 10, 2013 and after May 10, 2013.

### III.   Uncalled Witnesses: Equally Available

At this point, the government requests additional time to address this issue. The government will be prepared to address this issue during the charging conference.


Respectfully submitted,

/s/ Katherine Calle

Kevin Hart
Katherine Calle
David Chu
Eric Hoffmann

U.S. Department of Justice
Antitrust Division
New York Office
26 Federal Plaza, Room 3630
New York, NY 10278
212-335-8000