**WILLKIE FARR & GALLAGHER** LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

August 28, 2020

**VIA ECF**

The Honorable John G. Koeltl
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *United States v. Akshay Aiyer*, 1:18-CR-00333 (JGK)

Dear Judge Koeltl:

We respectfully submit this letter on behalf of defendant Akshay Aiyer to request that his sentencing proceed as currently scheduled on September 17, 2020.[1]  On July 6, 2020, the United States District Court for the Southern District of New York entered Phase II of its Phased Re-Entry Plan and reopened the doors of the courthouse to the public.  As part of Phase II, "[s]ubject to the discretion of individuals judges, courtrooms will be opened for conferences, … [including] sentencings."  (SDNY 2020 Phased Re-Entry Plan (COVID-19) at 12.)  Despite the courthouse being open, the Coronavirus Aid, Relief, and Economic Security Act, enacted on March 27, 2020, permits the use of video teleconferencing and telephone conferencing by federal courts for certain criminal proceedings during the current unprecedented and continually evolving public health crisis.  Pursuant to SDNY's June 24, 2020 Amended Standing Order, the use of video teleconferencing is permitted for sentencing proceedings if the Court determines that sentencing "cannot be conducted in person without seriously jeopardizing public health and safety."  (June 24, 2020 SDNY Amended Standing Order at 2-3.)

Mr. Aiyer's priority is to proceed with his sentencing on the scheduled date.  Although he prefers an in-person sentencing as permitted under Phase II of SDNY's plan, he formally consents to proceed with his sentencing by video teleconferencing if the Court prefers to proceed in that manner.  The Government consents to proceeding as scheduled and in-person.

In addition to our request to proceed with sentencing as scheduled, we also write to inform the Court of recent developments that are relevant to Mr. Aiyer's sentencing.  Since Mr. Aiyer submitted

---

[1] Attached hereto as Exhibit 1 are two additional letters in support of Mr. Aiyer.  Defense counsel received these letters after Mr. Aiyer submitted his Sentencing Memorandum and his Response to the Government's Sentencing Memorandum.

his Sentencing Memorandum on April 6, 2020, the number of COVID-19 cases in the United States has grown from over 300,000 to over 5.8 million and more than 180,000 individuals have died from the virus. This pandemic has brought to the forefront the question of whether it is necessary and productive to give a first-time, non-violent offender like Mr. Aiyer an incarceratory sentence—especially given the significant threat that COVID-19 poses to the prison population and the special considerations applicable to Mr. Aiyer as a non-citizen.

In two recent sentencing decisions involving defendants similarly situated to Mr. Aiyer, judges in the Southern District of New York concluded that a sentence of incarceration was neither warranted nor necessary. In *United States v. Bryan Cohen*, 19-CR-741 (WHP), the defendant pleaded guilty to insider trading and faced a sentence with a Guidelines range of 30-37 months. The government requested that the court sentence the defendant to 37 months in prison, the probation office recommended that the defendant serve 24 months in prison, and the defendant requested home confinement. In early June, Judge Pauley sentenced the defendant to 12 months of home confinement. In rendering this sentence, the court acknowledged that the defendant, a 34 year old French citizen, "unlike similarly situated U.S. citizens, [would be] unable to serve [any] term[ ] of imprisonment in a camp or minimum security facility. And when foreign nationals complete a term of imprisonment they are transferred to ICE detention where they can wait for an indefinite period to be returned to their home country." (Sentencing Transcript at 42:7-12, *United States v. Cohen*, 19-CR-741 (S.D.N.Y. June 9, 2020) ("Cohen Sentencing Tr."), attached hereto as Exhibit 2.)

Mr. Aiyer and the defendant in *United States v. Cohen* are similarly situated in several respects, including their Guidelines ranges and the collateral consequences they face as a result of their immigration status. As Mr. Aiyer explained in his Sentencing Memorandum, as a non-citizen prisoner, Mr. Aiyer will face disparate treatment compared to his citizen counterparts. He will be ineligible to serve any incarceratory sentence in a minimum-security prison, and he will be ineligible to serve any part of such a sentence in a halfway house.

If Mr. Aiyer is given an incarceratory sentence of one year or more, as distinct from a sentence of less than one year, he also is far more likely to be held without bail in ICE detention during the pendency of any removal proceedings, which he would contest. *See* 8 U.S.C. § 1226(c)(1)(C) ("The Attorney General shall take into custody any alien who … is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been *sentence[d] to a term of imprisonment of at least 1 year*.") (emphasis added). In the immigration context, "a term of imprisonment" has been interpreted by some courts not in this circuit to include home confinement. *See Ilchuk v. Att'y Gen.*, 434 F.3d 618, 623 (3d Cir. 2006) (holding that house arrest with electronic monitoring qualifies as imprisonment); *Herrera v. U.S. Att'y. Gen.*, 811 F.3d 1298, 1300-01 (11th Cir. 2016) (same). We therefore request that the Court, in determining Mr. Aiyer's sentence, take into consideration the fact that the potential immigration consequences detailed in Mr. Aiyer's sentencing submission will be implicated if he is sentenced to a year or more of imprisonment, *including home confinement*. *See United States v. Roy*, 16-cr-847 (JGK), 2020 WL 3268666, at *2 (S.D.N.Y. June 16, 2020) ("The Court explained that it was 'prepared – and I did – accept the proposition that if the sentence could be reduced, as I did reduce it, to increase the defendant's chances of remaining in the United States, ... the answer to that is clear, that I ought to reduce the sentence.'") (Koeltl, J.).

The current global health crisis also factored into the sentence Judge Pauley imposed on Mr. Cohen and should be taken into consideration here. The court noted:

> [T]he COVID-19 pandemic presents a host of unique challenges. Mr. Cohen has certain medical conditions [asthma] that puts him at a higher risk and more susceptible to getting COVID-19. The government's notion that Mr. Cohen should continue in home detention indefinitely to await a time when it's safe for him to surrender to the Bureau of Prisons is in my view unfair and undermines the need for certainty of punishment. It's impossible to predict when the COVID-19 pandemic will abate and when the Bureau of Prisons could safely designate Mr. Cohen to a facility.

(Cohen Sentencing Tr. at 42:17-43:1.)

In *United States v. Morgan*, 19-CR-209 (RMB), Judge Berman sentenced two non-citizens[2] who pleaded guilty to bank fraud to time served, with one of the defendants, Mr. Morgan, also receiving three months of home confinement. The Guidelines range for Mr. Morgan was 41 to 51 months, although pursuant to his plea agreement, the parties agreed to a Guidelines range of 33 to 41 months. The second defendant, Mr. Kamara, faced a sentence with a Guidelines range of 33 to 41 months. For both defendants, the government recommended a sentence within the 33 to 41 months Guidelines range. In fashioning Mr. Morgan's sentence of home confinement, Judge Berman considered the "unacceptable" conditions at the Metropolitan Detention Center "particularly during this difficult coronavirus time." (Sentencing Transcript at 13:13, 37:15-18, *United States v. Morgan*, 19-CR-209 (S.D.N.Y. May 5, 2020) ("Morgan Sentencing Tr."), attached hereto as Exhibit 3.)

Just as the *Cohen* and *Morgan* courts took into consideration the risks posed by COVID-19 in determining the defendants' non-incarceratory sentences, courts in this jurisdiction and across the country have granted compassionate release motions due to the "extraordinary and compelling" circumstances presented by the pandemic and the vulnerability of inmates to the virus—especially those with certain health conditions, including asthma—while confined in prison. *See, e.g., United States v. Park*, No. 16-CR-473 (RA), 2020 WL 1970603, at *2, 5 (S.D.N.Y. Apr. 24, 2020) (releasing the defendant, whose asthma put her at increased risk of severe illness if exposed to coronavirus, and noting that "[t]he nature of prisons – crowded, with shared sleeping spaces and common areas, and often with limited access to medical assistance and hygienic products – put those incarcerated inside a facility with an outbreak at heightened risk"); *United States v. Williams-Bethea*, No. 18-CR-78 (AJN), 2020 WL 2848098, at *4 (S.D.N.Y. June 2, 2020) (releasing the defendant, who was convicted of fraud and bribery-related charges, because "the COVID-19 pandemic presents an extraordinary and unprecedented threat to incarcerated individuals" and the defendant's hypertension and obesity put her at increased risk); *Woodard v. United States*, No. 2:12-CR-105, 2020 WL 3528413, at *3 (E.D. Va. June 26, 2020) (highlighting the "growing evidence of the BOP's chronic mismanagement of its

---

[2] Both defendants in *United States v. Morgan* pled guilty to an aggravated felony, which renders them subject to deportation. *See* 8 U.S.C. § 1227(a)(2)(A)(iii). Mr. Morgan did not consent to a judicial order of removal and plans to contest his deportation. (*See* Morgan Sentencing Tr. at 28:14-15.)

3

vulnerable population during the COVID-19 pandemic" in granting the defendant's motion for compassionate release).

The press continues to report that the prison system is being disproportionately impacted by COVID-19. The heightened vulnerability of inmates is evident from the fact that cases of the coronavirus in prisons and jails across the United States have soared this summer. (*See* Timothy Williams, Libby Seline and Rebecca Griesbach, *Coronavirus Cases Rise Sharply in Prisons Even as They Plateau Nationwide*, The New York Times (June 16, 2020, updated June 24, 2020), at 1, attached hereto as Exhibit 4.) In late June 2020, "the five largest known clusters of the virus in the United States [we]re not at nursing homes or meatpacking plants, but inside correction institutions, according to data." (*Id*.) "New cases among prisoners reached an all-time high as of Aug. 14." (Andrew Welsh-Huggins, *CDC study suggests inmates should have been tested in mass*, The Washington Post (Aug. 20, 2020), at 2, attached hereto as Exhibit 5.) These numbers are likely understated due to lack of testing and underreporting. (*See* Timothy Williams, Libby Seline and Rebecca Griesbach, The New York Times, at 2; Andrew Welsh-Huggins, The Washington Post, at 1.)

The risks and complications that this country faces from COVID-19 are likely not subsiding anytime soon. In August, "the country has averaged more than 1,000 deaths per day, more than twice as many as in early June." (*U.S. Coronavirus Death Toll Reflects Sun Belt Outbreaks*, The New York Times (Aug. 12, 2020, updated Aug. 14, 2020), at 2, attached hereto as Exhibit 6.) With "sizeable coronavirus outbreaks" occurring at college campuses across the country, colleges that have prepared for months to reopen "have abruptly suspended in-person classes." (*Covid-19 Live Updates: Outbreaks at U.S. Colleges Force Sudden Change and Send Students Scrambling*, The New York Times (Aug. 21, 2020), at 2, attached hereto as Exhibit 7.) And with the impending onset of the flu season, "the director of the Centers for Disease Control and Prevention warned … that … the country could be facing 'the worst fall, from a public health perspective, we've ever had.'" (Rachel Treisman, *CDC Director Warns This Fall Could Be The Worst Ever for Public Health*, National Public Radio (Aug. 13, 2020), at 4, attached hereto as Exhibit 8.) Experts are predicting that "the length of the pandemic will likely be 18 to 24 months." (Kristin A. Moore, Marc Lipsitch, John M. Barry, Michael T. Osterholm, *COVID-19: The CIDRAP Viewpoint, Part 1: The Future of the COVID-19 Pandemic: Lessons Learned from Pandemic Influenza*, Center for Infectious Disease Research and Policy (Apr. 30, 2020), at 5, attached hereto as Exhibit 9.)

For the additional reasons set forth in this letter, we respectfully request that the Court sentence Mr. Aiyer to probation, with a special condition of a period of home confinement not to exceed 364 days.

Respectfully submitted,

/s/ Martin Klotz
Martin Klotz

cc:   Kevin Hart, Esq.
      Eric Hoffmann, Esq.
      Department of Justice, Antitrust Division (by e-mail)