UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
                                          |
UNITED STATES OF AMERICA                  |
                                          |
        v.                                |
                                          |         Case No. 1:18-cr-00333  (JGK)
AKSHAY AIYER,                             |
                                          |
        Defendant.                        |
                                          |
-----------------------------------------------------------------x

# MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN OPPOSITION TO DEFENDANT'S MOTION FOR BAIL PENDING APPEAL

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT…………………………………………………………….1

LEGAL STANDARD…………………………………………………………………….2

I.      Defendant Fails To Prove He Is Not A Flight Risk By Clear And Convincing Evidence…………………………………………………………………………….3

II.     Defendant Fails To Demonstrate A "Substantial Issue" On Appeal…………………5

    A.  This Court's Correct Determination That The Government Charged A Per Se Illegal Conspiracy Follows Established, Binding Precedent……………………5

    B.  This Court's Exclusion Of Certain Evidence Regarding Defendant's State Of Mind And The Supposed Absence Of Anticompetitive Effects Was Compelled By Binding, Established Precedent……………………………………12

    C.  This Court's Decision To Limit Its Post-Verdict Inquiry Into Possible Juror Misconduct Was Compelled By Binding, Established Precedent………………17

III.    Other Considerations Do Not Weigh In Favor Of Bail Pending Appeal…………25

CONCLUSION………………………………………………………………………….28

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Pages(s)**

*Affinity LLC v. GfK Mediamark Research & Intelligence, LLC,*
   547 F. App'x 54 (2d Cir. 2013) ........................................................15

*Am. Needle, Inc. v. Nat'l Football League,*
   560 U.S. 183 (2010)..........................................................................10

*Am. Tobacco Co. v. United States,*
   328 U.S. 781 (1946)........................................................................... 7

*Bibbins v. Dalsheim,*
   21 F.3d 13 (2d Cir. 1994)..................................................................25

*Broadcast Music, Inc. v. Columbia Broadcasting Sys., Inc.,*
   441 U.S. 1 (1979) .............................................................................11

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.,*
   509 U.S. 209 (1993)..........................................................................15

*FTC v. Sup. Ct. Trial Lawyers Ass'n,*
   493 U.S. 411 (1990)..........................................................................11

*Gelboim v. Bank of America Corp.,*
   823 F.3d 759 (2d Cir. 2016) ............................................................. 6

*In re Publ'n Paper Antitrust Litig.,*
   690 F.3d 51 (2d Cir. 2012) ...............................................................15

*In re Sulfuric Acid Antitrust Litig.,*
   703 F.3d 1004 (7th Cir. 2012) ..........................................................10

*Leegin Creative Leather Prod., Inc. v. PSKS, Inc.,*
   551 U.S. 877 (2007)........................................................................6, 7

*Major League Baseball Props., Inc. v. Salvino, Inc.,*
   542 F.3d 290 (2d Cir. 2008) .............................................................11

*Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986)....................................................................14, 15

*NYNEX Corp. v. Discon, Inc.,*
   525 U.S. 128 (1998)......................................................................... 6

*Ohio v. Am. Express Co.,*
   138 S. Ct. 2274 (2018) ..................................................................... 7

ii

*Palmer v. BRG of Georgia, Inc.*,
   498 U.S. 46 (1990) ................................................................................. 7

*United States v. Abuhamra*,
   389 F.3d 309 (2d Cir. 2004) .............................................................. 2, 3

*United States v. Amanat*,
   454 F. Supp. 3d 358 (S.D.N.Y. 2020) ................................................. 3

*United States v. Apple, Inc.*,
   791 F.3d 290 (2d Cir. 2015) ........................................................ passim

*United States v. Bailey*,
   759 F. Supp. 685 ................................................................................. 4

*United States v. Brandt*,
   196 F.2d 653 (2d Cir. 1952) .............................................................. 14

*United States v. Castiello*,
   878 F.2d 554 (1st Cir. 1989) ............................................................... 3

*United States v. Collorafi*,
   876 F.2d 303 (2d Cir. 1989) .............................................................. 14

*United States v. Cox*,
   324 F.3d 77 (2d Cir. 2003) ................................................... 19, 22, 23

*United States v. Gen. Motors Corp.*,
   384 U.S. 127 (1966) ............................................................................ 7

*United States v. Giancola*,
   754 F.2d 898 (11th Cir. 1985) ............................................................ 3

*United States v. Han*,
   230 F.3d 560 (2d Cir. 2000) .............................................................. 17

*United States v. Harris*,
   192 F. Supp. 3d 337 (W.D.N.Y. 2016) ............................................... 4

*United States v. Ianniello*,
   866 F.2d 540 (2d Cir. 1989) .............................................................. 20

*United States v. Kachkar*,
   701 F. App'x 744 (11th Cir. 2017) ...................................................... 3

*United States v. Kenney*,
   603 F. Supp. 936 (D. Me. 1985) ......................................................... 4

*United States v. Khanu*,
   675 F. Supp. 2d 69 (D.D.C. 2009) ...................................................... 4

*United States v. Koppers Co.*,
   652 F.2d 290 (2d Cir. 1981) ...................................................... passim

*United States v. Lindsay*,
   138 F. App'x 344 (2d Cir. 2005) ...................................................... 26

*United States v. Litvak*,
   808 F.3d 160 (2d Cir. 2015) ...................................................... 14

*United States v. Miller*,
   753 F.2d 19 (3d Cir. 1985) ...................................................... 2, 3

*United States v. Moon*,
   718 F.2d 1210 (2d Cir. 1983) ...................................................... 18, 20, 25

*United States v. Randell*,
   761 F.2d 122 (2d Cir. 1985) ...................................................... 2, 3

*United States v. Sabhnani*,
   529 F. Supp. 2d 377 (E.D.N.Y. 2007) ...................................................... 4

*United States v. Sabhnani*,
   599 F.3d 215 (2d Cir. 2010) ...................................................... 20, 25

*United States v. Socony-Vacuum Oil Co.*,
   310 U.S. 150 (1940) ...................................................... passim

*United States v. Stewart*,
   433 F.3d 273 (2d Cir. 2006) ...................................................... 18, 20, 25

*United States v. U.S. Gypsum Co.*,
   438 U.S. 422 (1978) ...................................................... 10

*United States v Harris*,
   942 F.2d 1125 (7th Cir. 1991) ...................................................... 26

*United States v Jackson*,
   32 F.3d 1101 (7th Cir. 1994) ...................................................... 26

**Statutes**

15 U.S.C. § 1 ............................................................................................................. 1

18 U.S.C. § 3143(b)(1) ................................................................................. 2, 25, 28

18 U.S.C. § 3143(b)(1)(A) ................................................................................ 1, 3, 4

18 U.S.C. § 3143(b)(1)(B) ..................................................................................... 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

UNITED STATES OF AMERICA                  :

   -v.-                                                    :          Case No. 1:18-cr-00333  (JGK)

  AKSHAY AIYER,                                     :


                              Defendant.          :
--------------------------------------------------------------x

## MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN OPPOSITION TO DEFENDANT'S MOTION FOR BAIL PENDING APPEAL

The United States respectfully submits this memorandum of law in opposition to

Defendant's motion for bail pending appeal dated October 7, 2020 ("Def. Bail Mot.").

### PRELIMINARY STATEMENT

On November 20, 2019, after a three-week trial, the jury returned a guilty verdict against

Defendant for one count of conspiracy in restraint of trade in violation of Section 1 of the

Sherman Act, 15 U.S.C. § 1. Defendant moved for judgment of acquittal and, in the alternative,

for a new trial, raising numerous objections that were all denied by this Court on July 6, 2020

(ECF No. 230). On September 17, 2020, this Court imposed an eight-month term of

imprisonment, two years of supervised release, and a $150,000 fine, and ordered Defendant to

surrender on December 4, 2020 (ECF No. 256). Defendant now moves for bail pending appeal,

asserting that he is neither a danger to the community nor likely to flee and that he has

substantial issues to raise on appeal. Def. Bail Mot. 1-3.

Defendant's motion for bail pending appeal should be denied. First, Defendant has not

met his burden to demonstrate that he is not a flight risk. *See* 18 U.S.C. § 3143(b)(1)(A).

Second, Defendant fails to demonstrate that there are "substantial issues" for appeal, *see* 18 U.S.C. § 3143(b)(1)(B), but instead attempts to resurrect arguments that have already been rejected by binding, established precedent or are refuted by the record. Third, Defendant identifies what he calls "other considerations" ostensibly weighing in favor of bail pending appeal, but those considerations are irrelevant to the statutory factors that govern whether his request for bail may be granted, and several have already been rejected by this Court. Simply put, Defendant cannot carry his burden to demonstrate that he is entitled to release pending appeal.

## LEGAL STANDARD

After a guilty verdict and sentencing, there is a "presumption in favor of detention." *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004). Under the Bail Reform Act of 1984, a court "*shall* order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal . . . be detained," *unless* the defendant demonstrates (A) "by clear and convincing evidence that [he] is not likely to flee or pose a danger to the safety of any other person or the community if released" and (B) "that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in" reversal, a new trial, or, in specified circumstances, a new sentence. 18 U.S.C. § 3143(b)(1) (emphasis added). This provision reflects Congress's view that, "once a person has been convicted and sentenced to jail, there is absolutely no reason for the law to favor release pending appeal or even permit it in the absence of exceptional circumstances." *United States v. Miller*, 753 F.2d 19, 22 (3d Cir. 1985) (alteration omitted) (quoting H. Rep. No. 91-907, 2d Sess., at 186-87 (1970)); *see United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985) (following section 3143(b) analysis enunciated by Third Circuit in *Miller*).

A "substantial question" is "a close question or one that very well could be decided the other way." *Randell*, 761 F.2d at 125 (quotation marks omitted) (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985)). The substantial question must also be of a particular type: It must be "so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial." *Id.* (quoting *Miller*, 753 F.2d at 23). On all these issues, "the burden of persuasion rests on the defendant." *Id.*

## I.   Defendant Fails To Prove He Is Not A Flight Risk By Clear And Convincing Evidence.

In contrast to the standard applied in pretrial bail determinations, there is a statutory presumption against release after a defendant is found guilty. *Abuhamra*, 389 F.3d at 319 (noting there is "no general expectation of post-verdict liberty" and the Bail Reform Act of 1984 "establishes a presumption in favor of detention"). A defendant "found guilty of an offense and sentenced to a term of imprisonment" must be detained pending appeal *unless* he proves "by clear and convincing evidence" that he is unlikely to flee if released. 18 U.S.C. § 3143(b)(1)(A).

Courts consistently find defendants pose a flight risk when they (1) have extensive foreign ties, (2) have access to financial resources, and (3) face significant prison sentences. *See, e.g.*, *United States v. Castiello*, 878 F.2d 554, 556 (1st Cir. 1989) (affirming district court's denial of release when "court indicated that in view of the potential sentence defendant faced and defendant's lack of United States citizenship, there was a strong inducement to flight"); *United States v. Kachkar*, 701 F. App'x 744, 747 (11th Cir. 2017) (holding district court did not err in concluding defendant's "'significant ties and travel to foreign countries' weighed in favor of a finding that he was a flight risk"); *United States v. Amanat*, 454 F. Supp. 3d 358, 362 (S.D.N.Y. 2020) (finding defendants were a flight risk based on their "significant international travel" and

3

"substantial connections with Dubai"); *United States v. Khanu*, 675 F. Supp. 2d 69, 71 (D.D.C. 2009) (finding defendant was a flight risk based on the likelihood of his deportation and "his access to significant amounts of cash"), *aff'd*, 370 F. App'x 121 (D.C. Cir. 2010).  While a defendant's previous court appearances are relevant to this inquiry, a history of compliance with court orders is not outcome determinative, especially under the more stringent postconviction standard.  *See, e.g.*, *United States v. Harris*, 192 F. Supp. 3d 337, 347 (W.D.N.Y. 2016) ("Notwithstanding Defendant's family ties and prior record of making court appearances, this does not counterbalance the significant and serious flight risk that he presents given his convictions in this case and penalties that he faces."); *United States v. Sabhnani*, 529 F. Supp. 2d 377, 381 (E.D.N.Y. 2007) (denying release "to prevent flight in a case involving multiple counts of conviction for serious crimes; a prospective lengthy term of imprisonment; considerable financial resources; and significant ties to various countries throughout the world"); *United States v. Kenney*, 603 F. Supp. 936, 939 (D. Me. 1985) (rejecting defendant's request for postconviction release over his assertions that he appeared in court when ordered, had no prior criminal record, owned a home in the United States, and had close family ties); *United States v. Bailey*, 759 F. Supp. 685, 687 (D. Colo.) ("Reliance on presentence compliance with bond conditions, alone, does not meet the statutory burden."), *aff'd*, 940 F.2d 1539 (10th Cir. 1991).

Defendant has not met his burden to prove he is unlikely to flee if granted bail pending appeal.  *See* 18 U.S.C. § 3143(b)(1)(A).  Despite Defendant's previous compliance with bail conditions, Defendant is a heightened flight risk after his felony conviction and sentencing to a term of imprisonment for three reasons.  First, Defendant is not a United States citizen and has demonstrated substantial lifelong ties with family in India.  Presentence Report (PSR) ¶¶ 62, 63-68 (ECF No. 215).  Second, Defendant has access to significant financial resources.  *Id.* ¶¶ 85-

88.  Third, Defendant's expressed concerns about his prison placement highlight his potential motivation to flee the country to avoid any term of imprisonment.  Although Defendant does not face the lengthy prison sentences often facing defendants denied postconviction release, he has repeatedly emphasized his fears of being incarcerated—specifically, his belief that he would suffer harsher conditions at a privately run facility, and his belief that, at any institution, he would be at increased risk of becoming severely ill with COVID-19.  *See, e.g.*, Defendant's Sentencing Submission 66-67, 74-75 (ECF No. 220); Defendant's August 28, 2020 Letter (ECF No. 232) 1-4; Def. Bail Mot. 23.  These fears—though speculative at best, *see infra* at 26-28 & n.8—demonstrate Defendant's heightened motivation to flee the United States to India where he has citizenship and extended family in order to avoid a prison sentence resulting from his conviction.  In light of Defendant's strong ties to India, financial resources, and his expressed fear of any prison sentence, there is not clear and convincing evidence to support his contention that he would not be a flight risk if released pending appeal.

## II.     Defendant Fails To Demonstrate A "Substantial Issue" On Appeal.

Even if Defendant could sustain his burden to demonstrate by clear and convincing evidence that he is not likely to flee, his motion still would have to be denied, because he fails to demonstrate any substantial issues on appeal within the meaning of Section 3143(b).  Defendant points to three alleged issues.  None meets the standard.

### A.     This Court's Correct Determination That The Government Charged A Per Se Illegal Conspiracy Follows Established, Binding Precedent.

Defendant's first argument—that this Court "erred as a matter of law in refusing to decide whether the charged antitrust violation was governed by the per se rule or the rule of reason"—is insubstantial.  *See* Def. Bail Mot. 1.  It is contrary to long-established law and refuted by the record.

Beginning with the law: Defendant describes his first supposedly substantial appellate question as "whether, in the criminal context, a court should make the same determination that it does in the civil context that the conduct should be judged under the per se rule or the rule of reason." Def. Bail Mot. 14. This question is neither novel, nor unresolved, nor even implicated because this Court applied the standard used in both civil and criminal cases to categorize the charged antitrust conspiracy.

For both civil and criminal cases, when actual or potential competitors agree to a category of conduct that the law classifies as naked price fixing or bid rigging, they have entered a conspiracy with a per se illegal objective. *See, e.g.*, *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 218 (1940) (criminal case); *Gelboim v. Bank of America Corp.*, 823 F.3d 759, 771 (2d Cir. 2016) (civil case); *United States v. Koppers Co.*, 652 F.2d 290, 294 (2d Cir. 1981) (criminal case). For both civil and criminal cases, the per se rule treats such "categories of restraints as necessarily illegal" and thereby "eliminates the need to study the reasonableness of an individual restraint in light of the real market forces at work." *Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007) (civil case); *see also NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 133 (1998) (civil case) ("[C]ertain kinds of agreements will so often prove so harmful to competition and so rarely prove justified that the antitrust laws do not require proof that an agreement of that kind is, in fact, anticompetitive in the particular circumstances."); *Socony-Vacuum*, 310 U.S. at 224 n.59 (criminal case) (noting that "a conspiracy to fix prices violates § 1 of the Act though no overt act is shown" and "it is not established that the conspirators had the means available for accomplishment of their objective"; per se illegal price-fixing agreements "are all banned because of their actual *or potential* threat to the central nervous system of the economy" (emphasis added)). Finally, for both civil and criminal cases,

"[i]t is not of importance whether the means used to accomplish the unlawful objective are in themselves lawful or unlawful" because it is not "the particular means used but the result to be achieved that the [antitrust] statute condemns." *Am. Tobacco Co. v. United States*, 328 U.S. 781, 809 (1946) (civil case); *see* June 3, 2019 Hr'g Tr. 42:20-43:1 (quoting *Am. Tobacco*); *see also Socony-Vacuum*, 310 U.S. at 223 (criminal case) ("[T]he machinery employed by a combination for price-fixing is immaterial.").

Following this black-letter law, in *United States v. Apple, Inc.*, 791 F.3d 290 (2d Cir. 2015) (civil case), the Second Circuit held that Apple participated in a per se illegal horizontal price-fixing conspiracy even though Apple had effectuated the conspiracy in part through vertical agreements that, in isolation, would have been evaluated under the rule of reason. *See also generally Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018) ("[N]early every . . . vertical restraint . . . should be assessed under the rule of reason."). In such circumstances, "the court need not consider whether the vertical agreements restrained trade because all participants agreed to the horizontal restraint, which is 'and ought to be, per se unlawful.'" *Apple*, 791 F.3d at 325 (quoting *Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*, 551 U.S. 877, 893 (2007)). Accordingly, "[h]ow the law might treat Apple's vertical agreements in the absence of a finding that Apple agreed to create the horizontal restraint is irrelevant." *Id.*; *see* June 3, 2019 Hr'g Tr. 43:5-10 (citing *Apple*); *see also, e.g.*, *Palmer v. BRG of Georgia, Inc.*, 498 U.S. 46, 47, 49-50 (1990) (civil case) (holding agreement between two competitors to divide market was per se illegal, even when aspect of parties' relationship was vertical because one party also became other's licensee); *United States v. Gen. Motors Corp.*, 384 U.S. 127, 132-38, 140-41, 144-46 (1966) (civil case) (holding conspiracy per se illegal when, through vertical restraints, manufacturer enforced restraint agreed upon by competing distributors).

The decision in *Apple* followed the same rule that the Supreme Court and the Second Circuit have followed for decades in criminal cases. In *Socony-Vacuum*, for example, competing U.S. oil companies agreed to a "buying program" whereby they coordinated their purchase of distressed gasoline from designated independent refiners. 310 U.S. at 220. Through the buying program, the oil companies removed "a part of the supply which but for the buying programs would have been a factor in determining the going prices on" the spot markets for gasoline, *id.* at 220, and in this way maintained "a floor under the market," *id.* at 223. Notwithstanding that the individual transactions may have been legal if viewed in isolation, the Court concluded that the buying program as a whole was "a species of price-fixing." *Id.* The individual vertical purchases were merely "the machinery employed by a combination for price-fixing" and thus "immaterial" to the Court's characterization of the conspiracy. *Id.* As the Court explained, the per se rule applies categorically to "agreements to raise or lower prices whatever machinery for price-fixing was used." *Id.* at 222; *see id.* at 223-24 & n.59 (explaining same).

The Second Circuit applied a similar analysis in *Koppers* when it affirmed a corporate defendant's conviction for per se illegal bid rigging and customer allocation. *See* 652 F.2d at 291, 299. The agreement between Koppers and its co-conspirator, Dosch-King, "originated as an agreement among competing retailers," both of which sold road tar. *Id.* at 297. The parties' relationship had a vertical component—Dosch-King purchased some and eventually all of its road tar from Koppers—which Koppers relied upon to argue that the agreement was "a vertical allocation of territories or customers, which would properly be subject to the rule of reason." *Id.* at 296. The Second Circuit disagreed because the vertical component of the parties' relationship furthered the objective of the horizontal conspiracy "to raise prices and deceive state and local officials into the belief that Koppers and Dosch-King were bona fide competitors when in fact, as

the evidence conclusively showed, they were not." *Id.* at 296-97. Accordingly, the Court ruled, the conspiracy "should be treated throughout as a per se violation of the Sherman Act." *Id.* at 297.

*Apple*, *Socony-Vacuum*, and *Koppers*, among other decisions, foreclose Defendant's argument that this Court had to separately and in isolation characterize each individual behavior that made up the charged conspiracy. As this Court recognized in the hearing on Defendant's motion to dismiss, without any refutation from his counsel: "[W]e have an indictment that alleges a course of conduct, the ends of which is undisputed are per se violations of the law." June 3, 2019 Hr'g Tr. 7:1-3. This Court then stated the relevant legal principle under both the general law of conspiracy and antitrust law: "All of the conduct alleged by the government doesn't have to be unlawful. A conspiracy can be furthered by means which are not unlawful." *Id.* at 6:10-12. This statement of the law is uncontroversial and based on common sense. The objectives of an unlawful conspiracy may be served by otherwise innocuous conduct such as phone calls, meetings, or sales and purchases in the normal course of commerce. And a conspirator may agree to otherwise legal conduct as a quid pro quo for illegal conduct. Understandably then, Defendant's counsel expressly agreed with this Court's statement of the law. *See id.* at 6:13 ("Mr. Klotz: For sure."). Now, however, Defendant offers no acknowledgment of, or explanation for, his reversal of position in his argument that there is uncertainty in the law concerning whether "a court must review and analyze the different means and methods alleged in an indictment to determine whether they are governed by the per se rule or the rule of reason." Def. Bail Mot. 14. There is no uncertainty; precedent conclusively establishes that no such requirement exists.

None of the cases that Defendant cites detract from settled law. Some decisions are simply mischaracterized. For instance, Defendant claims that *United States v. U.S. Gypsum Co.*, 438 U.S. 422 (1978), supports his view that a court must determine whether each specific behavior introduced into evidence is subject to the per se rule or the rule of reason. *See* Def. Bail Mot. 14 n.1. He is incorrect. *Gypsum* singled out a particular behavior—interseller price verification—for analysis because it was the "focus" of the Government's case and the defendant's defense. *Gypsum*, 438 U.S. at 429. Moreover, the entire case was prosecuted under the rule of reason and, therefore, as the Second Circuit recognized in *Koppers*, it is inapplicable to cases charged under the per se rule. *See Koppers*, 652 F.2d at 295 (distinguishing *Gypsum* from a case involving a per se illegal agreement).

Other decisions relied on by the defense rest on the "narrow" line of cases where courts have considered procompetitive justifications even when there was a price-fixing agreement between competitors. *Apple*, 791 F.3d at 325.[1] "The Supreme Court has characterized these decisions as limited to situations where the 'restraints on competition are essential if the product is to be available at all.'" *Id*. at 326 (quoting *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 203 (2010)); *see* Sept. 24, 2019 Hr'g Tr. 12:23-13:4 (quoting same language). Moreover, such an analysis occurs only "when the restraint at issue was imposed in connection with some kind of potentially efficient joint venture." *Apple*, 791 F.3d at 326 (citing 11 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 1908b (3d ed. 2010); *In re Sulfuric Acid Antitrust Litig.*,

---

[1] This type of case tends to arise only in the civil context because the challenged conduct is not clearly a naked restraint of trade, as this Court effectively recognized when it distinguished this line of cases as arising in the context of "civil antitrust case law." *See* July 6, 2020 Order 26 n.20.

703 F.3d 1004, 1013 (7th Cir. 2012)).[2]  If a defendant could invoke procompetitive justifications

outside of the joint venture context, "the per se rule would lose all benefits of being per se."

*Apple*, 791 F.3d at 326 (citing *Broadcast Music, Inc. v. Columbia Broadcasting Sys., Inc.*, 441

U.S. 1, 8 & n.11 (1979)).

Defendant describes his conduct as "incidental to a broader, pro-competitive

relationship," Def. Bail Mot. 15, but he has not "attempted to argue, as he could not, that the

price fixing here was essential to make the products at issue available at all," Sept. 24, 2019 Hr'g

Tr. 13:9-11.  The cases he cites to prove uncertainty concerning how to characterize conspiracies

are thus inapposite and do not demonstrate a substantial appellate issue.

Now, to the record: Defendant contends that this Court "declined to engage in an

economic analysis or to characterize the challenged conduct." Def. Bail Mot. 13.  The first point

is true, but irrelevant.  This Court did not have to engage in economic analysis and would have

committed legal error if it had done so.  The per se rule "'reflects a longstanding judgment' that

case-by-case analysis is unnecessary for certain practices." *Apple*, 791 F.3d at 321 (alterations

omitted) (quoting *FTC v. Sup. Ct. Trial Lawyers Ass'n*, 493 U.S. 411, 433 (1990)).  "Congress

has not left with [courts] the determination of whether or not particular price-fixing schemes are

wise or unwise, healthy or destructive," *Socony-Vacuum*, 310 U.S. at 221, and thus "the law does

not permit an inquiry into" the "economic justification" for per se illegal restraints, *id.* at 224

n.59.

---

[2] When a joint venture imposes a restraint on the non-venture activity of its members, the per se rule applies if the restraint "is not reasonably necessary to achieve any of the efficiency-enhancing benefits of [the] joint venture." *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 338 (2d Cir. 2008) (Sotomayor, J., concurring in judgment).

The second point is inaccurate. This Court characterized the challenged conduct as per se illegal when it correctly denied Defendant's motion to dismiss. It ruled that "[t]he indictment alleges that the defendant conspired to suppress and eliminate competition by fixing prices of and rigging bids and offers for CEEMEA currencies. That is sufficient to state a per se violation of the Sherman Act." June 3, 2019 Hr'g Tr. 43:10-14. This Court also recognized, correctly, that it did not have to go any further: "It is irrelevant that certain activity set forth in the indictment may not alone constitute a per se crime. What is relevant is that those acts enable Defendant and his coconspirators to carry out an unlawful conspiracy." *Id.* at 43:3-7.

Defendant quotes language from this Court's denial of his post-trial motions to suggest that this Court erroneously treated characterization as an issue of fact. *See* Def. Bail Mot. 13-14 (quoting July 6, 2020 Order 26-27 & n.20). Yet the quoted language on its face demonstrates that his suggestion is wrong. This Court declined to resolve the factual question of whether the charged conspiracy actually existed. *See* July 6, 2020 Order 26 (stating "whether a conspiracy to fix prices actually existed is a question of fact"). This Court also explained, correctly, that there is no pretrial procedural mechanism in the criminal context—analogous to summary judgment in the civil context—that would allow the court to resolve whether there was a "material dispute of fact" concerning the existence of the charged conspiracy. *Id.* at 26-27. Far from demonstrating any kind of substantial appellate question, this language shows that this Court acted in a manner that was fully consistent with binding precedent and the rules of criminal procedure.

### B. This Court's Exclusion Of Certain Evidence Regarding Defendant's State Of Mind And The Supposed Absence Of Anticompetitive Effects Was Compelled By Binding, Established Precedent.

Defendant's second purportedly substantial appellate question concerns "th[is] Court's exclusion at trial of evidence demonstrating the lack of anticompetitive effects of the conduct at issue." Def. Bail Mot. 16. According to Defendant, "it is at least arguable that the jury should

have been permitted to hear evidence regarding whether that conduct could plausibly have impacted the markets and thus evidenced criminal intent." *Id*. Defendant's position is not arguable, and thus does not raise a substantial question, because it was rejected by the Second Circuit almost 40 years ago in *Koppers*, 652 F.2d 290—a case that he does not cite a single time in his motion.[3]

In *Koppers*, the defendant challenged "the district court's charge on intent, which permitted the jury to convict if it found that the defendant had known the objective of the conspiracy to rig bids and had intentionally become a member of it." 652 F.2d at 296 n.6. The defendant argued that the jury should have been required to find he "had also intended that the conspiracy result in anticompetitive effects." *Id*. The Second Circuit squarely "reject[ed] this contention," however, explaining that "the per se rule makes certain conspiracies illegal without regard to their actual effects on trade" and therefore "it would be illogical" to "require [the jury] to find the specific intent to produce those effects." *Id*. Instead, the Second Circuit held, "[w]here per se conduct is found, a finding of intent to conspire to commit the offense is sufficient." *Id*. This holding is a straightforward application of the per se rule, which recognizes that a per se illegal agreement is one that is "by its very nature a restraint on competition within the meaning of § 1 of the Sherman Act." *Id*. at 295.

Defendant's motion ignores this on-point, binding precedent and instead refers vaguely to "white collar cases" describing the admissibility of certain evidence bearing on intent. *See* Def. Bail Mot. 16. The cited decisions are readily distinguishable. They are cases in which the

---

[3] The Defendant's repeated assertion that this Court believed that "the complex question of whether the charged conduct was per se unlawful was a factual question for the jury," Def. Bail Mot. 16, is inaccurate and contradicted by the record, as explained in the prior section, *see* p. 12, *supra*.

charged offense required the government to prove "[c]ulpable intent or lack of good faith," *United States v. Brandt*, 196 F.2d 653, 657 (2d Cir. 1952); an "intent to defraud," *United States v. Litvak*, 808 F.3d 160, 190 (2d Cir. 2015); or that "acts were done willfully, i.e., in bad faith or with evil intent," *United States v. Collorafi*, 876 F.2d 303, 305 (2d Cir. 1989). Because of these particular standards of intent, the Second Circuit ruled that, in such cases, "trial courts should follow a liberal policy in admitting evidence directed towards establishing the defendant's state of mind." *Id.*

These decisions create no substantial appellate question because Section 1 of the Sherman Act does not contain an analogous requirement that the government prove evil intent or an absence of good faith. *See, e.g.*, *Socony-Vacuum*, 310 U.S. at 221-22 ("[Congress] has no more allowed genuine or fancied competitive abuses as a legal justification for such schemes than it has the good intentions of the members of the combination."); *Koppers*, 652 F.2d at 296 n.6 (stating government is not required to prove the defendant "intended that the conspiracy result in anticompetitive effects"). Rather, the government must prove that "the conspiracy to fix prices and rig bids alleged in the indictment actually existed and that the defendant knowingly joined that conspiracy." July 6, 2020 Order 27. The discussion of admissible evidence in the Defendant's cited "white collar cases" has no bearing on this distinct standard of intent.

Defendant attempts to buttress his argument that this Court should have allowed him to introduce evidence of the absence of anticompetitive effects by quoting *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). *See* Def. Bail Mot. 16. *Matsushita*, however, involved an "alleged conspiracy to monopolize . . . through predatory pricing" in violation of Sections 1 and 2 of the Sherman Act. 475 U.S. at 586. Unlike price-fixing and bid-rigging conspiracies, "[a] predatory pricing conspiracy is by nature speculative." *Id.* at 588. To

14

prove the existence of a predatory-pricing scheme, therefore, a plaintiff must establish that (i) the defendants priced their products or services below "some appropriate measure of cost," *id.* at 584 n.8, and (ii) they "have a reasonable expectation of recovering, in the form of later monopoly profits, more than the losses suffered," *id.* at 589. *Accord Affinity LLC v. GfK Mediamark Research & Intelligence, LLC*, 547 F. App'x 54, 56 (2d Cir. 2013) (quoting *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 222 (1993)). The actual or probable effects of the conspiracy are thus an essential element of the underlying claim. Accordingly, in *Matsushita*, "[t]he alleged conspiracy's failure to achieve its ends in the two decades of its asserted operation [was] strong evidence that the conspiracy [did] not in fact exist." 475 U.S. at 592; Def. Bail Mot. 16 (quoting same).[4]

No such requirement to prove actual or probable effects exists for per se illegal price fixing or bid rigging. As explained above, and as correctly recognized by this Court: "The categorical ban on price fixing and bid rigging follows from the determination by the Supreme Court that those practices are per se illegal without a consideration of their anticompetitive effects under the rule of reason." Sept. 24, 2019 Hr'g Tr. 14:9-13; *see also* July 6, 2020 Order 25 ("The per se rule removes from the jury the question whether the alleged unlawful conspiracy had anticompetitive effects."). Such agreements "are all banned because of their actual or potential threat to the central nervous system of the economy," regardless of their "effectiveness" or "economic justification." *Socony-Vacuum*, 310 U.S. at 224 n.59.

This Court acted well within its discretion when it excluded certain of Defendant's effects evidence, recognizing the distinction between admissible evidence offered to dispute

---

[4] Moreover, in a civil case but not a criminal case, a plaintiff must prove antitrust injury—for example, by showing that the conspiracy "caused injury to the plaintiff in the form of artificially inflated prices." *In re Publ'n Paper Antitrust Litig.*, 690 F.3d 51, 61 (2d Cir. 2012).

whether he in fact engaged in the coordinated trading activity as charged, and inadmissible evidence offered to show his particular motivation for, or the effectiveness of, the trading activity. For example, this Court correctly excluded in part evidence Defendant offered to show that he was "attempting to stimulate activity in the market" instead of "trying to push the price down." Nov. 15, 2019 Trial Tr. 1694:23-24 (Klotz). The difference between these two motivations is irrelevant because, either way, Defendant knowingly agreed with a competitor to engage in the type of trading conduct that falls into "a category that the Supreme Court has instructed is per se unlawful." July 6, 2020 Order 24. As a matter of law, then, the factfinder could not consider whether the coordinated trading was "wise or unwise, healthy or destructive," *Socony-Vacuum*, 310 U.S. at 221, nor could it consider the alleged "good intentions of the members of the combination," *id.* at 222. Because the evidence in question was directed at these impermissible considerations, it was correctly excluded.

Similarly, this Court correctly excluded certain opinions by Defendant's experts, Professors Lyons and Carlton. The excluded opinions were offered for purposes foreclosed by the per se rule: to provide an "economic justification" for the conspiracy or to challenge its "effectiveness." *Socony-Vacuum*, 310 U.S. at 224 n.59; *see also id.* ("Price-fixing agreements may or may not be aimed at complete elimination of price competition. The group making those agreements may or may not have power to control the market."). They included Professor Lyons's opinions that "the activities of the coconspirators did not 'have a durable impact on supply and demand,'" Nov. 14, 2019 Trial Tr. 1599:22-24, resulted in "cost savings," *id.* at 1600:17, did not harm customers, or "had no discernible impact on the bids, offers, or transaction prices reported on Reuters," *id.* at 1601:6-9. They also included Professor Carlton's opinions that the conspirators "did not have sufficient market power to move prices 'for a substantial

period of time,'" *id.* at 1604:5-6, or that they had a "a pro-competitive rationale" for their trading behavior, *id.* at 1604:21.

On the other hand, when Defendant offered effects evidence to refute the existence of the coordinated trading activity, or his knowledge of it, this Court allowed the evidence. For instance, because the government offered testimony from one of his co-conspirators, Mr. Katz, "about the purpose of the alleged conspirators, in taking the actions they took," this Court permitted expert testimony for "impeachment" purposes, to aid "in assessing the credibility of Mr. Katz on the issue of whether the conspirators were attempting to move the market." Nov. 14, 2019 Trial Tr. 1603:1-8; *see also* Nov. 12, 2019 Trial Tr. 1288:10-1289:14 (similar analysis for exhibit used to cross Katz).

This Court's careful treatment of this evidence comported entirely with binding precedent and fell well within its "wide discretion" to determine what evidence is admissible at trial. *See United States v. Han*, 230 F.3d 560, 564 (2d Cir. 2000). Defendant argues that "the issue of the admissibility of evidence concerning his intent could very well be decided the other way," Def. Bail Mot. 18, but that argument falls short of demonstrating a substantial question likely to result in a new trial. Defendant identifies no legal error; offers no basis to conclude that even if admissibility could have been decided a different way, this Court's decision was an abuse of discretion; and fails even to argue that any such abuse of discretion would be sufficiently prejudicial to warrant a new trial.

C.     **This Court's Decision To Limit Its Post-Verdict Inquiry Into Possible Juror Misconduct Was Compelled By Binding, Established Precedent.**

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

















### III.     Other Considerations Do Not Weigh In Favor Of Bail Pending Appeal.

Because Defendant has not met his burden to demonstrate the existence of the

requirements for bail pending appeal, he "shall . . . be detained" pursuant to statute.  18 U.S.C.

§ 3143(b)(1).  Ignoring this statutory mandate, Defendant alleges three other "considerations"

that he claims entitle him to bail pending appeal.  Defendant asserts that (1) he is likely to serve

his entire sentence before his appeal is resolved; (2) any jail time will be "harsher" for him than

for a U.S. citizen because he is ineligible to serve any sentence in a minimum-security camp and thus will be at great risk of being assigned to a low quality, privately run prison for aliens; and (3) it is inappropriate to sentence a first-time, non-violent offender to any imprisonment before his appeal is resolved, given the COVID-19 pandemic. Def. Bail Mot. 22-23. None of these considerations makes up for the absence of the required statutory factors, and several have already been considered and rejected by this Court.

In support of his argument that the Court should consider the length of his sentence as a factor weighing in favor of bail pending appeal, Defendant cites a trio of non-binding cases, each of which is distinguishable. Unlike here, a substantial appellate question existed in each case that permitted the defendants' release pending appeal under the statute. In *United States v. Lindsay*, 138 F. App'x 344, 346 (2d Cir. 2005), a recently decided Supreme Court decision "cast doubt on the constitutionally of the United States Sentencing Guidelines" under which the defendant had been sentenced. In *United States v Jackson*, 32 F.3d 1101, 1104 (7th Cir. 1994), the defendant's "sentence was enhanced on a legal ground different from that noticed in the PSR, or the prosecutor's recommendation," and the Court "agree[d] with the defendant's position that there [wa]s a notice problem." And in *United States v Harris*, 942 F.2d 1125, 1128, 1135 n.7 (7th Cir. 1991), "the unique nature" of the prosecutions for tax evasion "under the prevailing tax cases" was such a departure from precedent that neither defendant had "fair warning that her conduct might subject her to criminal tax liability." No similar substantial appellate questions exist here that would justify this Court's consideration of the length of Defendant's sentence in ruling on his motion.

Defendant's second argument—concerning the allegedly unique harshness of any imprisonment due to his alien status—is irrelevant to the statutory factors that determine whether

Defendant is permitted bail pending appeal.  It is also a repeat of an argument he already made in

his sentencing memorandum (at 65-67), which this Court already rejected in sentencing him to a

term of imprisonment.   As the Court stated at Defendant's sentencing hearing, "hypothetical

considerations about future circumstances are insufficient to avoid a sentence that is otherwise

called for." Sept. 17, 2020 Hr'g Tr. 50:9-10.   Moreover, as the Government explained in its

sentencing memorandum (at 49-50), Defendant's concern about being placed in a privately run

facility is uncertain and speculative.   For example, in a recent case in this District, Paul

Thompson, an Australian national who pleaded guilty to manipulating the LIBOR exchange rate,

was designated to FMC Terminal Island, which is not a private prison.   *See United States v.*

*Robson*, No. 1:14-cr-272-JSR (S.D.N.Y.).   At sentencing in that case, Judge Rakoff

recommended to the Bureau of Prisons (BOP) that Thompson be "[i]ncarcerat[ed] in Terminal

Island, California or any NON-PRIVATE facility."   Nov. 22, 2016 Judgment 2, *United States v.*

*Robson*, No. 1:14-cr-272-JSR (S.D.N.Y.) (ECF No. 268).   Here, Defendant requested, and the

Court recommended, that Defendant be incarcerated at a minimal security camp in the New York

City area.   *See* Sept. 17, 2020 H'rg. Tr. 52:6-8, 56:14-16.   The BOP gives weight to judicial

recommendations in making designation recommendations.   *See* Inmate Security Designation

and Custody Classification, BOP Program Statement 5100.08, Ch. 5, at p.3.   Thus, even if the

facility to which Defendant might be designated were a relevant consideration, there is currently

no basis to find that Defendant will be designated to a privately run facility.

      Finally, Defendant advances a variation of the same argument he raised in several filings,

including his sentencing memorandum (at 71-75)—namely, that it would be "particularly

inappropriate to insist that a first-time, non-violent offender serve a sentence of imprisonment

before his appeal is resolved" given the COVID-19 pandemic.  Def. Bail Mot. 23.[8]  Once again,

Defendant's argument has no bearing on the statutory factors set forth in 18 U.S.C. § 3143(b)(1).

And once again, this Court has already considered, and rejected, COVID-19 as a reason for

Defendant to avoid imprisonment.   At sentencing, the Court recognized that "it does not appear

that the defendant is a particularly high-risk category.  He is a relatively young person and his

physical problems are minimal."  Sept. 17, 2020 Hr'g. Tr. 49:22-50:3.   Moreover, this Court

explained, "it is unclear what institution the defendant could be sentenced to and what the

conditions of that institution may be.  To the extent that circumstances may change, the

defendant can always make subsequent applications such as an application for compassionate

release; but those hypothetical considerations about future circumstances are insufficient to avoid

a sentence that is otherwise called for to accomplish the purposes of Section 3553(a)(2)."  *Id*. at

50:4-11.  Defendant's hypothetical considerations are likewise insufficient to secure bail pending

appeal.  Thus, Defendant's third "consideration" likewise should be afforded no weight in this

Court's analysis.

## CONCLUSION

To overcome the presumption of detention pending appeal, Defendant must demonstrate

by clear and convincing evidence that he is not a risk of flight and raise a substantial question of

law.  He fails in both endeavors.  Defendant is a non-citizen who has access to significant

financial resources and a heightened motivation to flee to India to avoid a prison sentence.  And

none of the issues presented by Defendant's motion calls into question the soundness of his

conviction; Defendant merely retreads ground already found to be lacking in merit based on

---

[8] As the Government has already explained, the BOP has taken significant measures to protect the health of the inmates in its charge from COVID-19.  *See, e.g.*, U.S. Sentencing Mem. 53-54; Sept. 11, 2020 U.S. Amended Letter Reply 4-5 (ECF No. 234-1).

established precedent. For these reasons, the United States respectfully requests that Defendant's

motion be denied.

Dated: October 21, 2020
        New York, New York


                                        Respectfully submitted,

                                        *[signature]*

                                        Kevin B. Hart
                                        Mary Helen Wimberly
                                        Eric C. Hoffmann

                                        U.S. Department of Justice
                                        Antitrust Division
                                        26 Federal Plaza, Room 36060
                                        New York, New York 10278
                                        (212) 335-8000
                                        kevin.hart@usdoj.gov