```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
---

UNITED STATES OF AMERICA

        - against -                     18 Cr. 333 (JGK)

AKSHAY AIYER,                           MEMORANDUM OPINION
                                            AND ORDER
                Defendant.

---

JOHN G. KOELTL, District Judge:

    The defendant, Akshay Aiyer, has filed a motion pursuant to 18 U.S.C. § 3143(b) for bail pending appeal of his conviction. For the reasons explained below, the motion is denied.

I.

    On November 20, 2019, after a three-week jury trial, the jury returned a verdict of guilty against the defendant for one count of conspiracy in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. More particularly, the Indictment charged that the defendant and his co-conspirators, "knowingly entered into and participated in a combination and conspiracy to suppress and eliminate competition by fixing prices of, and rigging bids for, [Central and Eastern European , Middle Eastern, and African Emerging Markets ("CEEMEA")] currencies traded in the United States and elsewhere." Indictment, ECF No. 1, ¶ 20.[1] The defendant filed a motion for judgment of acquittal or, in the alternative for a

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

new trial, which the Court denied on July 6, 2020. See United States v. Aiyer, 18-CR-333, 2020 WL 3636048 (S.D.N.Y. July 6, 2020). The Court had previously denied a motion to dismiss the Indictment on June 3, 2019, finding that the Indictment adequately alleged "that the defendant conspired to suppress and eliminate competition by fixing prices and rigging bids and offers for CEEMEA currencies," which "is sufficient to state a per se violation of the Sherman Act." June 3, 2019 Conf. Tr., ECF No. 66, at 43. On September 17, 2020, the Court sentenced the defendant principally to an eight-month term of imprisonment, to be followed by two years of supervised release. The Court permitted the defendant to voluntarily surrender on December 4, 2020. The defendant now moves for bail pending appeal.

II.

In relevant part, section 3143(b) provides that a district court "shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal . . . be detained" unless certain conditions are met. 18 U.S.C. § 3143(b). The Second Circuit Court of Appeals has summarized those conditions as follows:

> (1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released; (2) that the appeal is not for the purpose of delay; (3) that the appeal raises a substantial question of law or fact; and (4) that if the substantial question is determined favorably to defendant on appeal, that decision

2

is likely to result in reversal or an order for a new trial on all counts on which imprisonment has been imposed.

United States v. Randell, 761 F.2d 122, 125 (2d Cir. 1985). A "substantial question" is "one of more substance than would be necessary to a finding that it was not frivolous. It is a close question or one that very well could be decided the other way." Id.; see also United States v. Rittweger, No. 02-CR-122, 2005 WL 3200901, at *1 (S.D.N.Y. Nov. 30, 2005).

III.

The parties agree that the defendant does not pose a danger to the safety of any other person or the community if released. However, the Government argues that the defendant has failed to show by clear and convincing evidence, as required by the statute, that he is not likely to flee. The Government stresses the defendant's alien status, financial resources, and concern over incarceration. However, the Court is convinced by clear and convincing evidence that the defendant is not likely to flee. The defendant has been afforded voluntary surrender because he is not likely to flee. He has longstanding ties to this country and sought a sentence of imprisonment that would afford him the opportunity to remain in this country. The defendant has always attended court hearings and there is nothing about the length of his sentence that would cause a change in conduct now.

However, the defendant has failed to raise a substantial question of law or fact for appeal. The defendant raises three issues, none of which are substantial, and each of which the Court has previously denied based on well-settled precedent.

First, the defendant argues that "prior to trial, the Court was required to examine the particular behaviors actually at issue and to rule whether they were governed by the per se rule or the rule of reason. Only behavior governed by the per se rule should have been submitted to the jury as a basis for a criminal conviction." Def. Br., ECF No. 261, at 12. The Court properly rejected the argument that the Court should analyze each of the overt acts in furtherance of the conspiracy on the motion to dismiss. The Indictment had properly alleged a conspiracy among horizontal competitors to fix prices and rig bids for CEEMEA currencies. That sufficiently alleged a per se violation of the Sherman Act. See United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 218 (1940); United States v. Koppers Co., 652 F.2d 290, 294 (2d Cir. 1981). A motion to dismiss was not the proper forum to analyze the evidence that would be presented to substantiate the per se violation alleged. June 3, 2019 Conf. Tr., ECF No. 66, at 39-42. There is also no provision for a motion for summary judgment in a criminal case.

Ultimately, the defendant argues that the question of whether the conduct alleged is a per se violation of the Sherman

Act is a question of law that the Court must decide. Def. Reply Br., ECF No. 270, at 7. But the defendant entirely ignores the trial record, the charge to the jury, and the findings that the Court made in its opinion denying the defense motion for a judgment of acquittal or a new trial. The defendant has not disputed that the Court properly instructed the jury on what the jury would be required to find as a matter of fact to find that the government had proved beyond a reasonable doubt that the defendant conspired to fix prices and rig bids as alleged in the Indictment. Thereafter, based on all of the evidence, the Court concluded that the overwhelming evidence proved that the defendant participated in the conspiracy to fix prices and rig bids as alleged in the Indictment. Aiyer, 2020 WL 3636048, at *2-*8, *11-*15. The evidence included testimony by co-conspirators about the existence of the agreement and about transactions in furtherance of the agreement, and statements by the defendant in furtherance of the conspiracy -- all of which the defendant ignores on the current motion.

In his post-trial motions, the defendant argued that a "sophisticated economic inquiry of the trading conduct at issue" would show that there was no per se violation of the Sherman Act. Id. at *9. In its decision on the post-trial motions, the Court rejected that argument in view of the evidence that the defendant and his co-conspirators conspired to fix prices and

5

rig bids in the Foreign Exchange market for CEEMEA currencies. See Arizona v. Maricopa Cnty. Med. Soc'y, 457 US 332, 351 (1982) ("The anticompetitive potential inherent in all price-fixing agreements justifies their facial invalidation even if procompetitive justifications are offered for some"). The Court concluded, and the defendant ignores, that the activities of the defendant and his co-conspirators, "constituted classic price fixing and bid rigging because the defendant and his alleged coconspirators agreed to trade, agreed to refrain from trading, and agreed to place bids and offers in certain ways all with the intent and effect of artificially lowering, raising, or stabilizing prices for CEEMEA currencies." Aiyer, 2020 WL 3636048, at *14. While the defense argues that it was important for the Court to determine whether the defendant and his co-conspirators engaged in a classic price fixing and bid-rigging conspiracy, the defendant ignores that the Court found, consistent with the jury verdict, that the defendant did exactly that.

The defendant argues that it was important for the Court to determine whether the conduct of the conspirators constituted per se price fixing and bid rigging, and points to the affirmance of the criminal convictions in Socony-Vacuum and Koppers. Def. Reply Br., ECF No. 270, at 6-7. But the defendant again ignores the fact that in both cases, the courts analyzed

6

the trial record and the jury instructions to determine whether the conspiracies were per se price-fixing or bid rigging conspiracies, which is precisely what the Court did in this case.

Therefore, the defendant's first alleged issue is not a substantial issue for appeal, particularly when the defendant simply ignores the trial record and the Court's reasoning in the post-trial motions.

Second, the defendant argues that "the Court erred in precluding substantial evidence that the conduct in which he engaged had no impact on supply and demand and on price." Def. Br., ECF No. 261, at 1. This is not a substantial issue and is precluded by well-established authority. See, e.g., Socony Vacuum, 310 U.S. at 842 ("Thus for over forty years this Court has consistently and without deviation adhered to the principle that price-fixing agreements are unlawful per se under the Sherman Act and that no showing of so-called competitive abuses or evils which those agreements were designed to eliminate or alleviate may be interposed as a defense."); Koppers, 652 F. 2d at 294 ("In cases involving behavior such as bid rigging, which has been classified by courts as a per se violation, the Sherman Act will be read as simply saying, 'An agreement among competitors to rig bids is illegal.'"); United States v. Guillory, 740 F. App'x 554, 556 (9th Cir. 2018) ("The district

7

court did not preclude any relevant evidence by granting the government's motion in limine to prohibit Guillory from introducing evidence or argument that the bid-rigging agreements were reasonable. Bid-rigging is . . . a per se violation of the Sherman Act.").

Moreover, the Court repeatedly made it clear that if the defendant could proffer a relevant reason for offering specific evidence that was not simply a ruse to offer a pro-competitive justification for price fixing and bid rigging, the court would allow it. See, e.g., September 24, 2019 Conf. Tr., ECF No. 119, at 15 ("The motion to exclude evidence of pro-competitive effects of price-fixing and bid rigging is granted without prejudice to the ability of the parties to raise the issue with respect to specific evidence at trial."); Trial Tr., ECF No. 174, at 1690-92, 1703 (inviting the defense to offer proper purposes for proposed evidence). When the defense offered proper purposes for the evidence, the Court admitted it. See, e.g., Trial Tr., ECF No. 168, at 1287-89 (allowing cross examination of Katz with respect to effects); Trial Tr., ECF No. 172, at 1602-03 (same with respect to defense examination of Professor Carlton). These careful evidentiary rulings do not present a substantial question for appeal. See, Aiyer, 2020 WL 3636048, at *20-21.

Third, the defendant argues that the Court erred in its treatment of post-trial allegations of juror misconduct. The Court conducted an appropriate inquiry, made appropriate credibility findings, and determined that there was no basis to vacate the jury's verdict. The Court's post-trial inquiry and ultimate conclusion were consistent with the controlling decisions of the Supreme Court and the Court of Appeals for the Second Circuit, and were explained at length in this Court's prior opinion. See United States v. Aiyer, 433 F. Supp. 3d 468 (S.D.N.Y. 2020). The defendant's quarrel with this Court's conclusions does not raise a substantial question for appeal. See, e.g., Tanner v. United States, 483 U.S. 107, 119-21 (1987); United States v. Baker, 899 F.3d 123, 130-31 (2d Cir. 2018); United States v. Stewart, 433 F.3d 273, 303 (2d Cir. 2006).

Finally, the defendant contends that there are other considerations that warrant bail pending appeal. The defendant contends that, given the eight-month length of the term of imprisonment, he may serve that sentence before a decision on his appeal. But that is not a factor favoring bail, if the defendant cannot satisfy the factors that are required to be met before bail can be granted pending appeal.

The defendant also contends that his sentence of imprisonment will be harsher than some other sentences because his designated place of confinement is a privately-run facility

9

rather than an institution operated by the Bureau of Prisons. But that also is not an appropriate factor justifying bail pending appeal. To the extent that the defendant has a basis for contending that his place of confinement provides a compelling reason for compassionate release, pursuant to 18 U.S.C. § 3582(c), he can make that application after satisfying the requirements for such release.

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not specifically addressed, the arguments are either moot or without merit. Because the defendant has failed to show that his appeal raises a substantial question of law or fact, the motion for bail pending appeal is **denied**. The Clerk is directed to close Docket No. 260.

**SO ORDERED.**

Dated:     **New York, New York**
             **November 11, 2020**

                                                                 John G. Koeltl
                                           United States District Judge